IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Civ. No. 07-00311 ACK-KSC |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) |
| | ) |
| | ) |
| CHERIE J. BRIGHT and BENJAMIN K. | ) |
| BRIGHT, | ) |
| | ) |
| Respondents. | ) |
| ——————————————————————— | ) |

**ORDER ADOPTING THE MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION
TO GRANT THE UNITED STATES' MOTION FOR CONTEMPT**

On March 12, 2008, the Government filed a Motion for

Contempt ("Motion") against Cherie J. Bright and Benjamin K.

Bright (collectively "Respondents").  On June 2, 2008, Magistrate

Judge Kevin S.C. Chang issued Findings and a Recommendation

("F&R") that this Court grant the Government's Motion.  On June

12, 2008, Magistrate Judge Chang issued a Supplement to the F&R

("Supplemental F&R").  On June 13, 2008, Respondents filed

Objections to the F&R.  The Government filed a Response to the

Objections on June 26, 2008, and Respondents were permitted to

file a Reply on July 30, 2008.

For the reasons set forth below, the Court adopts the

F&R and grants the Government's Motion for Contempt.

**BACKGROUND AND PROCEDURAL HISTORY**

1

On June 19, 2006, IRS Agent Debra Tsuha served an attested copy of IRS summonses to Respondents.  The summonses directed Respondents to appear on July 5, 2006 to provide testimony and fifteen categories of documents relating to their federal income tax liability for 2002 and 2003.  Respondents did not appear before Agent Tsuha on July 5, 2006.  The Government responded by filing a petition to enforce the IRS summonses ("Petition") on June, 9, 2007.[1]

On July 24, 2007, Magistrate Judge Chang issued an F&R that this Court grant the Petition to enforce the IRS Summonses. Respondents filed an Objection to that F&R on August 2, 2007. On September 11, 2007, this Court issued an Order Adopting as Modified the Magistrate Judge's Findings and Recommendation to Grant the United States' Petition to Enforce IRS Summonses ("September 11, 2007 Order").  The Court found that the summonses

---

[1] The Petition stated, inter alia, that the testimony and records sought by the summonses may be relevant to determine the correct federal income tax liabilities of Cherie Bright and Benjamin Bright for 2002 and 2003.  See Petition at ¶ 16.  The Petition further stated that no Justice Department referral is in effect with respect to Respondents for 2002 and 2003.  Id. at ¶ 17.  In a Declaration filed with the Petition, Agent Tsuha listed the records in the possession of the IRS and stated that except for the enumerated documents the records sought by the summonses were not in the possession of the IRS.  See Tsuha Decl. of 6/8/07 at ¶ 8.  Agent Tsuha determined based on the IRS's Offshore Credit Card Project that Respondents had maintained and used two offshore credit cards that may have been used to hide taxable income.  One was a MasterCard ending in digits "55" issued by Hallmark Trust Limited, located in Turks and Caicos Isles, and the other was a MasterCard ending in "96" issued by Bank of N.T. Butterfield & Son, Ltd., located in Bermuda.  Id. at ¶¶ 10-11.

were enforceable, except as they pertained to records of Respondents' accounts at First Hawaiian Bank and Bank of Hawaii.[2]

On September 19, 2007, Respondents moved for reconsideration of the September 11, 2007 Order based on the filing of a civil action to enjoin Cherie Bright and others from acts relating to a tax scheme, United States of America v. Liddell et al., Civ. No. 07-00442 SPK-LEK (Aug. 22, 2007), which Respondents contended was evidence of a potential ongoing criminal investigation.  On October 23, 2007, the Court issued an Order Denying Motion for Reconsideration and Coordinating Timing of Compliance with Summonses to Avoid Conflict with Discovery in Separate Civil Action ("October 23, 2007 Order").  The Court found that the filing of a civil action is neither evidence of a potential criminal investigation nor evidence that the Government is acting in bad faith.  See October 23, 2007 Order at 4-5.  The Court concluded that Respondents had not alleged new material facts that justify reconsideration.[3]

On October 30, 2007, Respondents appealed both the September 11, 2007 Order and the October 23, 2007 Order to the

---

[2] The Court did not enforce the summonses with regard to the bank statements because the IRS already had those records in its possession.  See September 11, 2007 Order at 19.

[3] The Court further ordered that the timing of compliance with the summonses in this case correspond to the timing of the earliest allowable discovery in Civil No. 07-00442 SPK-LEK.  See October 23, 2007 Order at 6-7.  Discovery in the related case commenced on October 22, 2007.

Ninth Circuit.  On January 24, 2008, Respondents received a letter from Agent Tsuha informing them that they must produce the outstanding documents requested in the summonses by February 1, 2008, and appear for an interview on February 8, 2008.

On February 1, 2008, Respondents moved to stay the Court's September 11, 2007 Order enforcing the IRS's summonses pending the resolution of their appeal to the Ninth Circuit.  On February 7, 2008, the Court denied Respondents' motion for stay pending appeal, but stayed enforcement of the summonses for five days to allow Respondents to seek a stay with the Ninth Circuit. See Order Denying Respondents' Motion for Stay Pending Appeal and Allowing Respondents' Five Days to Request a Stay from the United States Court of Appeals for the Ninth Circuit (Feb. 7, 2008).  On February 14, 2008, the Ninth Circuit denied Respondents' emergency motion to stay the district court's order to enforce the summonses.

The Government filed the instant Motion on March 12, 2008, asking the Court to adjudge Respondents in contempt and order appropriate sanctions.  Magistrate Judge Chang held a hearing on the Motion on April 15, 2008.  In light of the fact that Respondents had secured counsel shortly before the hearing, Magistrate Judge Chang afforded them five additional weeks to comply with the September 11, 2007 Order.  At that time, Magistrate Judge Chang impressed upon Respondents the seriousness

of the situation, their obligation to comply, and the Court's power to impose severe sanctions, including monetary fines and imprisonment.

The hearing reconvened on May 16, 2008, at which time Respondents produced a stack of approximately 354 pages of documents to the Government.[4]  Magistrate Judge Chang asked the Government to review the documents to determine whether the documents were responsive to the summonses.  He further ordered the parties to submit supplemental briefing on the status of Respondents' compliance with the summonses.  The parties filed supplemental briefs on May 29, 2008.

On June 2, 2008, Magistrate Judge Change issued the instant F&R.  Having found that Respondents were in contempt of the September 11, 2007 Order, Magistrate Judge Chang recommended that a daily fine of $500 be imposed until Respondents comply, and that the Government be awarded its reasonable fees and costs incurred in connection with the Motion and efforts to obtain Respondents' compliance.  Per the Magistrate's instructions in the F&R, on June 6, 2008, the Government's counsel, Jeremy Hendon, Esq., submitted a declaration in conformance with Local Rule 54.3(d) to support a request for fees and costs.  On June

---

[4] According to the F&R, only minutes before the hearing on May 16, 2008, Respondents filed a Memorandum in Support of Cherie Bright's Assertion of her Fifth Amendment Privilege Against Self Incrimination.

12, 2008, Magistrate Judge Chang issued the Supplemental F&R, recommending that this Court award $8,882.21 in attorneys' fees and $2,711.38 in costs, for a total amount of $11,593.59.

Respondents filed Objections to the F&R on June 13, 2008, and the Government filed a Response on June 26, 2008.  Over one month later, on July 30, 2008, Respondents moved for leave to file a Reply to the Government's Response to their Objections. That same day, without awaiting a response from the Court, Respondents filed a Reply, which included a request for a hearing.  On July 31, 2008, the Government filed an opposition to Respondents' motion for leave to file a Reply.  On August 1, 2008, the Court issued a Minute Order stating that it would permit Respondents to file their Reply and take into consideration their request for a hearing.  Upon further review, the Court finds that a hearing is not appropriate.  See Local Rule 74.2 of the Local Rules of Practice of the United States District Court for the District of Hawaii ("Local Rules").

### STANDARD OF REVIEW

The court reviews de novo those portions of a Magistrate Judge's F&R to which an objection is made and may accept, reject, or modify, in whole or in part, the findings and recommendation made by the Magistrate Judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Local Rule 74.2.  The district judge may receive further evidence or recommit the matter to the

Magistrate with instructions.  28 U.S.C. § 636(b)(1).  The
district court may consider the record developed before the
Magistrate Judge.  Local Rule 74.2.  The district court must
arrive at its own independent conclusion about those portions of
the Magistrate Judge's report to which objections are made, but a
de novo hearing is not required.  United States v. Remsing, 874
F.2d 614, 618 (9th Cir. 1989).

## DISCUSSION

### I.   Civil Contempt

District courts have "inherent power to enforce
compliance with their lawful orders through civil contempt."
Cal. Dep't of Social Servs. v. Leavitt, 523 F.3d 1025, 1033 (9th
Cir. 2008) (quoting Shillitani v. United States, 384 U.S. 364,
370 (1966)).  Civil contempt occurs when a party disobeys a
specific and definite court order by failing to take all
reasonable steps within the party's ability to comply.  Reno Air
Racing Ass'n., Inc. v. McCord, 452 F.3d 1126, 1130 (9th Cir.
2006); In re Dual-Deck Video Cassette Recorder Antitrust Litig.,
10 F.3d 693, 695 (9th Cir. 1993).  A person who fails to comply
with an order enforcing an IRS summons may be held in contempt.
See United States v. Rylander, 460 U.S. 752, 753 (1983).

In a thorough and well-reasoned F&R, Magistrate Judge
Chang found that Respondents were in violation of the September
11, 2007 Order enforcing the IRS summonses.  The Magistrate

recommended that this Court impose a fine of $500 per calendar day until all responsive documents are produced or until Respondents satisfactorily explain why they are unable to do so. He further recommended that this Court award the Government its reasonable fees and costs in the total amount of $11,593.59.  See F&R at 34-35; Supplemental F&R at 7-8.

Respondents object to the F&R on the grounds that it (A) is based upon speculation; (B) fails to resolve whether documents related to offshore credit cards must be produced; (C) finds Respondents in contempt for failing to produce documents not specified in the September 11, 2007 Order; (D) fails to recognize that Respondents have produced all remaining outstanding documents in their possession (other than the offshore credit card documents); and (E) finds Benjamin Bright in contempt even though Cherie Bright was solely responsible for complying with the September 11, 2007 Order.  The Court addresses each objection in turn.

A.   **Foundation of the F&R**

Respondents first argue that the Magistrate's finding of civil contempt was erroneously based on mere speculation, not fact.  Specifically, Respondents believe that the Magistrate was speculating as to both the existence of certain documents and the outcome had Respondents requested such documents earlier.  This objection lacks merit.

8

The test for civil contempt is whether the alleged contemnor (1) "violated [a] court order, (2) beyond substantial compliance, (3) not based on a good faith and reasonable interpretation of the order, (4) by clear and convincing evidence." In re Dual-Deck, 10 F.3d at 695; see also In re Chrystal Palace Gambling Hall, Inc., 817 F.2d 1361, 1363 (9th Cir. 1987); Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc., 689 F.2d 885, 889 (9th Cir. 1982).  The moving party bears the initial burden of "showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court."  FTC v. Affordable Media, LLC, 179 F.3d 1228, 1239 (9th Cir. 1999) (quoting Stone v. City and County of San Francisco, 968 F.2d 850, 856 n.9 (9th Cir. 1992)); In re Dual-Deck, 10 F.3d at 695 (quoting Vertex, 689 F.2d at 889).  "The burden then shifts to the contemnors to demonstrate why they were unable to comply."  Affordable Media, 179 F.3d at 1239 (quoting Stone, 968 F.2d at 856 n.9).

In the course of conducting the instant contempt proceedings, the Magistrate held at least two hearings and ordered supplemental briefing.  The resulting F&R reflects specific and careful factual determinations about categories of documents that remain outstanding.  The Court finds that the Magistrate was not engaging in guesswork when he concluded that Respondents "should now have" certain documents in their

9

possession; rather, the Magistrate reached this conclusion after weighing the evidence and determining that Respondents had not met their burden of showing a present inability to comply with the September 11, 2007 Order.  The Court further notes that Respondents' accusation that the F&R is based on speculation rings hollow, given that Respondents openly refuse to produce any documents related to offshore credit card accounts.  <u>See</u> Objections at 10 ("Ms. Bright has the right to rely upon her Fifth Amendment privilege to avoid the production and authentication of any alleged foreign bank records").

Likewise, the Magistrate was not engaging in speculation when he aptly noted that had Respondents made requests for certain documents at an earlier date, "they would have likely obtained more of the yet-unproduced information and documents, thereby eliminating the necessity for this Motion and/or narrowing the scope of outstanding documents." <u>See</u> F&R at 12.  The Magistrate was simply commenting on Respondents' use of multiple tactics to delay and avoid compliance with the summonses.

Moreover, as discussed <u>infra</u>, the Court finds based on its own de novo review that there is ample justification for finding Respondents in contempt.  Therefore, the Court rejects Respondents' argument that the contempt finding in the F&R is based on speculation.

B.   **Offshore Credit Card Records**

Respondents next argue that the F&R fails to resolve the issue of whether Respondents must produce records relating to offshore credit card accounts.  Apparently, Respondents have not produced a single document related to their offshore credit card accounts to date and continue to assert their Fifth Amendment privilege against self-incrimination.  See Objections at 10.  The Court first notes that Respondents' argument is wrong on its face, as the F&R includes a lengthy discussion about Respondents' Fifth Amendment concerns and clearly states that this issue has already been adjudicated.  See F&R at 17-23.

More significantly, however, the Court finds that this objection is a bald attempt to have the Court reconsider its earlier rulings on Respondents' Fifth Amendment claims.  In the September 11, 2007 Order, the Court specifically held that Respondents may not refuse to produce the documents regarding their offshore credit cards on Fifth Amendment grounds.  The Court explained:

> [T]he existence of the offshore credit card accounts is a foregone conclusion, and the production of the records relating to those credit card accounts has no testimonial significance.  To the extent that summonses request production of documents relating to accounts or transactions whose existence is known to the IRS, the Court concludes that the Fifth Amendment poses no bar to enforcing the summonses.

See September 11, 2007 Order at 17.  The Court later determined

11

that reconsideration of its earlier ruling regarding offshore credit card documents was not warranted.  <u>See</u> October 23, 2007 Order at 6.

It is a "long-standing rule that a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy."  <u>United States v. Rylander</u>, 460 U.S. 752, 756 (1983) (quoting <u>Maggio v. Zeitz</u>, 333 U.S. 56, 69 (1948)); <u>United States v. Ayres</u>, 166 F.3d 991, 995 (1998).  Rather, the "only issue open to [a respondent] in defending the contempt proceeding was to show inability to then produce."  <u>Rylander</u>, 460 U.S. at 760; <u>Ayres</u>, 166 F.3d at 995.  The Court will not allow Respondents to use this contempt proceeding to relitigate their claims of Fifth Amendment privilege.

The Court further points out that Respondents have appealed the September 11, 2007 and October 23, 2007 Orders.  As the Magistrate correctly noted, the propriety of the Court's rulings on the Fifth Amendment is now a matter to be decided by the Ninth Circuit.  Finally, the Court agrees with the Magistrate that the fact that the Ninth Circuit granted an emergency stay of the contempt order in a separate case, <u>United States v. Liddell</u>, Civ. No. 07-00310 SOM-KSC, has no bearing on whether Respondents must produce offshore credit card records.  Although <u>Liddell</u> is related, the issues and rulings in <u>Liddell</u> are distinct and do

not control the outcome of this case.   In the instant matter,

neither this Court nor the Ninth Circuit found it necessary to

stay enforcement of the summonses pending appeal.   Accordingly,

the Court rejects Respondents' attempt to challenge the Court's

previous rulings requiring production of records relating to

offshore credit card accounts.

### C.   Additional Offshore Credit Card Records

Respondents argue that the Magistrate erred by

finding Respondents in contempt for failing to produce records

related to two additional offshore credit cards (card numbers

ending in 0690 and 7763) that were not known to the Government at

the time of the September 11, 2007 Order.   According to

Respondents, the Order only addressed the production of documents

related to offshore credit card accounts with numbers ending in

0755 and 0496, not two additional offshore credit cards that

became known to the IRS at a later date.

The Government counters that the summonses specifically

requested documents regarding as well as "<u>any other offshore</u>

<u>credit cards</u>."   <u>See</u> Response at 9.   Therefore, the Government

contends, the additional offshore credit cards were covered by

the summonses and must be produced.   The Court agrees with the

Government.

The September 11, 2007 Order required Respondents to

comply with the summonses and produce all summoned documents,

except for certain records of accounts at First Hawaiian Bank and Bank of Hawaii.[5] The summonses' attachment specifically requested production of "any other offshore credit cards." Therefore, contrary to Respondents' assertions, the Government is not expanding the "scope of [its] request beyond that authorized by the initial order." See Objections at 10.

Moreover, as noted above, Respondents' only defense at this stage of the contempt proceedings is whether they have a present inability to comply. See Ayres, 166 F.3d at 996. Thus, whether or not the documents related to the additional offshore credit card accounts were known to the IRS at the time of the September 11, 2007 Order is irrelevant to the critical inquiry: whether Respondents are presently unable to produce such documents. Respondents do not argue that they are unable to produce documents related to the additional offshore credit card accounts; rather, Respondents continue to assert that the Fifth Amendment bars production of such documents, despite two court rulings to the contrary.

Finally, the Court notes that even if it were to modify the F&R to exclude the additional offshore credit card documents as a basis for finding contempt, the ultimate finding of contempt

---

[5] As noted above, Respondents were obligated to comply with the summonses starting on October 22, 2007, when discovery began in a related case, Civ. No. SPK-LEK. See October 23, 2007 Order at 6-7.

would remain undisturbed.  Accordingly, the Court finds this objection without merit.

    **D.   Outstanding Documents**

        Respondents further argue that the Magistrate failed to recognize that with respect to the documents (other than the offshore credit card documents) that the Government asserts have not been produced, Respondents have either produced such documents or such documents are not in their possession.  In considering this objection, this Court has conducted a de novo review of the record before this Court and before the Magistrate. The Court finds that the Magistrate had ample justification for finding Respondents in contempt of the September 11, 2007 Order.

        First, the Court finds that the Government has met its initial burden of establishing by clear and convincing evidence that Respondents failed to comply with the September 11, 2007 Order.  See Affordable Media, 179 F.3d at 1239 (quoting Stone, 968 F.2d at 856 n.9).  In its briefs and declarations in support of its Motion for Contempt, the Government carefully outlines the responsive documents that remain outstanding.  Most significantly, the Government has shown - and Respondents do not dispute - that no documents related to offshore credit card accounts, as required by paragraph 1 of the summonses' attachment, have been produced.  See Gov't Supp. Br. at 4, 8; Objections at 10; Res'p Cherie Bright's Memorandum Regarding

Compliance with IRS Summons at 1-2 (May 29, 2008).  The
Government has further established that the following documents
remain outstanding: (1) Documents related to the Colony Mortgage
loan, loan number ending 006 and any other loans (subparagraphs
(a)-(m) of paragraph 4 of the summonses' attachment); (2)
Documents related to third-party payments on American Express
Accounts[6] (paragraph 9 of the summonses' attachment); (3)
Documents relating to the Asia Pacific insurance claims[7]
(subparagraphs (a)-(e) of paragraph 10 of the summonses'
attachment); and (4) Documents regarding scholarships, grants, or
other financial aid (paragraph 11 of the summonses' attachment).
See Response 11-17; Gov't Supp. Br. at 4.

        Respondents argue that except for the offshore credit
card documents, they have either produced the outstanding
documents or such documents do not exist.  See Objections at 11-
15.  As noted above, to avoid a finding of civil contempt, a
party must take "all reasonable steps within the party's power to
comply" with a court order.  See In re Dual-Deck, 10 F.3d at 693.
"'Substantial compliance' with the court order is a defense to

_____

        [6] According to the Government, Respondents have
produced three examples of these types of documents but
have indicated that there may be additional similar
documents that have not yet been produced.  See Gov't Supp. Br.
at 4.

        [7] Respondents apparently submitted a written narrative
instead, which the Government determined was not responsive to
the request in paragraph 10.  See Gov't Supp. Br. at 4.

civil contempt, and is not vitiated by 'a few technical violations where every reasonable effort has been made to comply.'"  Id. (quoting Vertex Distrib., Inc., 689 F.2d at 891. In the instant case, Respondents appear to be making every reasonable effort to avoid and delay compliance with the September 11, 2007 Order, rather than comply with it.  This is particularly evident in Respondents' staunch refusal to produce the documents related to offshore credit card accounts based on Fifth Amendment privilege, in defiance of the September 11, 2007 Order.

Respondents analogize their case to United States v. Drollinger, 80 F.3d 389, 393 (9th Cir. 1996), and argue that they have done far more than the respondent in Drollinger to comply with the court order, and therefore should not be held in contempt.  Respondents misconstrue Ninth Circuit's holding in Drollinger.  The Drollinger court held that a respondent who was jailed for failing to comply with IRS summonses did not relinquish his Fifth Amendment claims by failing to appear at enforcement proceedings or appeal the order enforcing the IRS summons; the respondent was entitled to raise and litigate his Fifth Amendment claims when questions were finally asked during purgation hearings.  Id. at 392-93.  Contrary to Respondents' argument, the issue in Drollinger was not whether the respondent had complied with the enforcement order.  In fact, the Drollinger

court remanded for the district court to determine whether the respondent had "purged himself of contempt with respect to documents." Id. at 394 (emphasis added).  In sum, the Court finds that Respondents have neither complied nor substantially complied with the September 11, 2007 Order.

Moreover, the Court finds that Respondents have failed to meet their burden to "demonstrate why they were unable to comply." See Affordable Media, 179 F.3d at 1239 (quoting Stone, 968 F.2d at 856 n.9).  "Ability to comply is the crucial inquiry, and 'a court should weigh all the evidence properly before it determines whether or not there is actually a present ability to obey.'" Ayres, 166 F.3d at 994 (quoting United States v. Drollinger, 80 F.3d 389, 393 (9th Cir. 1996) (per curiam)). "Where compliance is impossible, neither the moving party nor the court has any reason to proceed with the civil contempt action." Rylander, 460 U.S. at 757.

With respect to the offshore credit card documents, Respondents have not asserted that they are unable to produce such documents, just that they refuse to do so on Fifth Amendment grounds.  Regarding the other outstanding documents, the Court emphasizes Respondents cannot meet their burden by simply declaring that they have produced all documents that they possess or have been able to locate.  Rather, the summonses required Respondents to produce all documents not only within their

possession, but also within their custody and control.  See First Nat. City Bank of N.Y. v. Internal Revenue Service, 271 F.2d 616, 618 (2d Cir. 1959).  Lack of possession or control of documents may not be raised for the first time during a contempt proceeding.  Rylander, 460 U.S. at 757; Maggio, 333 U.S. at 75. The Court finds no error in the Magistrate's comprehensive analysis regarding each category of outstanding documents, and incorporates the Magistrate's conclusions herein.  See F&R 23-31. The Court determines that Respondents have not sufficiently established that they are unable to comply with the summonses. In sum, the Court finds that there is ample justification for finding that Respondents are in contempt of the September 11, 2007 Order.

> **E.   Benjamin Bright**

Finally, Respondents argue that the Magistrate erred by holding Benjamin Bright in contempt because Cherie Bright is solely responsible for complying with court orders in this case. Respondents rely on Cherie Bright's declaration that Benjamin Bright was "not involved in any of the activities related to Asia Pacific or Colony or any other activities relevant to this enforcement action" and "never had or used any foreign credit card issued by Hallmark Trust or Butterfield Bank."  See Declaration of Cherie Bright ¶ 14 (June 13, 2008); Objections at 15.

As the Magistrate noted, up until May 16, 2008, Respondents had been jointly filing papers with the Court.  It was only with the appearance of new counsel Michael Jay Green, Esq., that Respondents began attempting to distinguish between their respective involvement and abilities to comply.  On May 29, 2008, Mr. Green filed a supplemental brief on behalf of Benjamin Bright stating only that Mr. Bright "has produced all documents in his possession and has complied with the summons to the best of his ability.  He is not in contempt."  <u>See</u> Resp't Benjamin Bright's Mem. of Compliance Regarding IRS Summons at 1.

The Court agrees with the Magistrate's decision to treat Respondents collectively in analyzing the Government's Motion for Contempt.  Based on this Court's review, Respondents have failed to submit any evidence establishing that Mr. Bright was somehow less involved with or responsible for the requested documents than his wife.  Mr. Bright's conclusory statement is insufficient.[8]  Therefore, the Court upholds the Magistrate's finding that Respondents were equally responsible for complying with the September 11, 2007 Order.

## II.  Sanctions

---

[8]  The Court is likewise unmoved by Respondents' argument that Mr. Bright should not be held in contempt in this case because in the related case of <u>United States v. Liddell</u>, Civ. No. 07-00310 SOM-KSC, the Court did not hold Mr. Liddell's wife, Delia Valentin, in contempt.  As noted above, the rulings in <u>Liddell</u> are not controlling in this case.

Because Respondents are in contempt of the September 11, 2007 Order, the Court finds that the coercive and compensatory sanctions recommended by the Magistrate are proper in this case.

## A.   Coercive Sanctions

Respondents have been obligated to comply with the summonses since October 22, 2007 - nearly 11 months ago.  Since then, Respondents have engaged in myriad tactics to avoid and/or delay compliance, such as bringing a motion for reconsideration; seeking stays with this Court and the Ninth Circuit, which were unsuccessful; repeatedly asserting Fifth Amendment privilege where the Court has clearly ruled otherwise; and providing the Government with a stack of mostly unresponsive and duplicative documents at the May 16, 2008 hearing.

The Court agrees with the Magistrate that coercive sanctions are both appropriate and necessary to ensure that Respondents comply with the summonses.  "[C]ivil contempt sanctions, or those penalties designed to compel future compliance with a court order, are considered to be coercive and avoidable through obedience."  International Union, United Mine Workers of America v. Bagwell, 512 U.S. 821, 827 (1994); Ayres, 166 F.3d at 995; see also Koninklijke Philips v. KXD Technology, Inc., No. 07-15310, slip op. at 2 (9th Cir. Aug. 20, 2008).  To determine the size and duration of coercive sanctions, the court

must consider the "character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." Whittaker Corp. v. Execuair Corp., 953 F.2d 510, 517 (9th Cir. 1992) (quoting United States v. United Mine Workers of America, 330 U.S. 258, 303-04 (1947)) (internal quotations omitted).

        "One of the paradigmatic civil contempt sanctions 'is a per diem fine imposed for each day a contemnor fails to comply with an affirmative court order.'" Ayres, 166 F.3d at 995 (quoting Bagwell, 512 U.S. at 827). Magistrate Judge Chang recommended that this Court impose a $500, due per calendar day, until Respondents either fully comply with the summonses or sufficiently establish that they are unable to do so. A satisfactory response would include a more definitive declaration by Respondents that documents do not exist, or documentation showing that despite making all reasonable efforts to comply, they have a present inability to do so.

        The Court notes that although Respondents object to the Magistrate's finding of contempt, Respondents do not challenge the recommended imposition or amount of the coercive sanction. Accordingly, the Court adopts the Magistrate's recommendation and imposes a daily fine of $500 per calendar day, which the Court finds reasonable and appropriate considering the circumstances, until Respondents purge their contempt. Respondents are to begin

22

paying this fine starting seven (7) days after this Order is issued, on August 27, 2008.

**B.    Compensatory Sanctions**

Magistrate Judge Chang recommended that the Government be awarded its reasonable fees and costs incurred in connection with the Motion and efforts to obtain Respondents' compliance. After reviewing Mr. Hendon's declaration in support of his request for fees and costs, the Magistrate issued a Supplemental F&R recommending that this Court award $8,882.21 in attorneys' fees and $2,711.38 in costs, for a total amount of $11,593.59.

A court may award compensatory sanctions "to compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior." Gen. Signal Corp., 787 F.2d at 1380.  The amount of compensatory sanctions is governed by the actual losses sustained by the moving party as a result of the contemptuous resistance.  Id.; see also United States v. United Mine Workers, 330 U.S. 258, 304 (1947) (noting that a compensatory fine must "be based upon evidence of complainant's actual loss").  Respondents did not address the Magistrate's recommendation to award compensatory sanctions in their Objections, filed June 13, 2008.  Nor did Respondents file any additional objections after the Magistrate issued the Supplemental F&R with the total amount of the recommended

23

compensatory award.[9]

Accordingly, the Court adopts the Magistrate's recommendation to award the Government $8,882.21 in attorneys' fees and $2,711.38 in costs, for a total of $11,593.59, which the Court finds reasonable and appropriate under the circumstances. Respondents are ordered to remit payment of said amount to the Government by September 1, 2008.[10]

## CONCLUSION

For all the foregoing reasons and for the reasons set forth in the Magistrate's F&R and Supplemental F&R, the Court adopts the Findings and Recommendation to Grant the United States' Motion for Contempt and the Supplement to Findings and Recommendation to Grant Petitioner's Motion for Contempt.  The Court leaves open the possibility of imprisonment and further compensatory sanctions if Respondents persist in delaying production of the outstanding documents.

---

[9] Although Respondents argue in their Reply that an award of legal fees is unwarranted, the Court finds this argument untimely and will not consider it.  The time to object to Magistrate's recommendation of compensatory sanctions was during the 11-day period following the issuance of the Supplemental F&R.  See Local Rule 74.2.

[10] To the extent the Supplemental F&R recommended that this Court require Respondents to remit payment by July 2, 2008, that deadline is changed to September 1, 2008.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, August 20, 2008.



_____
Alan C. Kay
Sr. United States District Judge

United States v. Bright, Civ. No. 07-00311 ACK-KSC, Order Adopting Findings and Recommendation to Grant the United States' Motion for Contempt.

25