IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CIVIL NO. 07-00311 ACK-KSC |
| | ) |
| Petitioner, | ) FINDINGS AND |
| | ) RECOMMENDATION REGARDING |
| vs. | ) UNITED STATES' NOTICE OF |
| | ) RESPONDENTS' NON- |
| CHERIE BRIGHT, BENJAMIN | ) COMPLIANCE WITH COURT'S |
| BRIGHT, | ) AUGUST 20, 2008 CONTEMPT |
| | ) ORDER AND REQUEST FOR |
| Respondents. | ) ADDITIONAL SANCTIONS |
| _____ | ) |

FINDINGS AND RECOMMENDATION REGARDING
UNITED STATES' NOTICE OF RESPONDENTS' NON-COMPLIANCE
WITH COURT'S AUGUST 20, 2008 CONTEMPT ORDER AND
<u>REQUEST FOR ADDITIONAL SANCTIONS</u>

Before the Court, pursuant to a referral from

the district court, is Petitioner United States of

America's ("Petitioner") Notice of Respondents' Non-

Compliance with Court's August 20, 2008 Contempt Order

and Request for Additional Sanctions ("Request"), filed

September 23, 2008.  On December 1, 2008, Petitioner

filed a Supplemental Brief.  On December 8, 2008,

Respondents Benjamin Bright ("Mr. Bright") and Cherie

Bright ("Ms. Bright") (collectively "Respondents")

filed separate Responses.  On December 18, 2008, Ms.

Bright filed a Supplement to her Opposition.

This matter came on for hearing on December 19, 2008.  Trial Attorney Jeremy Hendon and AUSA Harry Yee appeared on behalf of Petitioner; Thomas Otake, Esq. appeared on behalf of Mr. Bright; and Michael Green, Esq. appeared on behalf of Ms. Bright.  After carefully considering the Request, the supporting, opposing, and supplemental memoranda, and the arguments of counsel, the Court HEREBY FINDS AND RECOMMENDS that Petitioner's Request be GRANTED.

<u>BACKGROUND</u>

On June 19, 2007, Internal Revenue Service ("IRS") Agent Debra Tsuha served an attested copy of IRS summonses to Respondents.  On September 11, 2007, Senior United States District Judge Alan C. Kay issued an Order Adopting as Modified the Magistrate Judge's Findings and Recommendation to Grant the United States' Petition to Enforce IRS Summonses ("Summons Order").  By way of this Order, Judge Kay determined that the summonses were enforceable, with the exception of the

records relating to Respondents' accounts at First Hawaiian Bank and Bank of Hawaii.[1]   Judge Kay also held the Fifth Amendment poses no bar to enforcing the summonses.   Summons Order at 17.

Respondents sought reconsideration of the Summons Order based on the filing of the civil action seeking to enjoin Cherie Bright and others from acts relating to a tax scheme, United States of America v. Liddell, et al., Civ. No. 07-00442 SPK-LEK (Aug. 22, 2007), which they asserted was evidence of a potential ongoing criminal investigation.   The Court found that the filing of a civil action is not evidence of a criminal investigation nor evidence that the Government is proceeding in bad faith with respect to the summonses.   See Order Denying Motion for Reconsideration and Coordinating Timing of Compliance with Summonses to Avoid Conflict with Discovery in Separate Civil Action ("Reconsideration Order") at 5.

---

[1]   Statements from these banks were in the possession of the IRS, so the summonses as they pertained to these records were not enforced.   Summons Order at 19.

3

Ultimately, Judge Kay concluded that Respondents had not alleged new material facts justifying reconsideration.  Id.

On October 30, 2007, Respondents filed an appeal with the Ninth Circuit.

On January 24, 2008, Agent Tsuha informed Respondents that they must produce the outstanding documents requested in the summonses by no later than February 1, 2008, and appear for an interview on February 8, 2008.

On February 1, 2008, Plaintiffs filed a Motion to Stay the Summons Order.  Judge Kay denied the motion to stay pending appeal, but stayed the enforcement of the summonses for five days after the ruling to permit Respondents to seek a stay from the Ninth Circuit.

On February 14, 2008, the Ninth Circuit denied Respondents' emergency motion to stay the Summons Order.  Petitioner subsequently filed a motion for contempt.  After holding two hearings and allowing the parties to submit supplemental briefing, this Court, on

June 2, 2008, issued a Findings and Recommendation to Grant the Motion for Contempt ("F&R").[2]  As sanctions, the Court recommended a $500 daily fine and $11,593.59 in attorneys' fees and costs to Petitioner.

On June 13, 2008, Respondents filed objections to the F&R.  On August 20, 2008, Judge Kay issued an Order Adopting the Magistrate Judge's Findings and Recommendation to Grant the United States' Motion for Contempt ("Contempt Order").  Judge Kay warned Respondents (as this Court has on a number of occasions) that he was leaving open the possibility of imprisonment and further compensatory sanctions if Respondents persisted in failing to produce the outstanding documents.

On August 27, 2008, Respondents filed a joint

_____

[2]  In light of the fact that Respondents secured counsel shortly before April 15, 2008 hearing, the Court afforded them an additional five weeks to comply with the Summons Order.  However, the Court impressed upon Respondents the seriousness of the situation, their obligation to comply, and the Court's power to impose severe sanctions, including monetary fines and imprisonment.

motion for stay of the contempt order or alternatively for a continuance of the sanction payments with both the district court and the Ninth Circuit.  Judge Kay denied the motion for stay on September 2, 2008 and the Ninth Circuit denied the stay on September 10, 2008.

<u>DISCUSSION</u>

Petitioner requests that the Court impose more severe sanctions upon Respondents for their blatant disregard of the Court's Orders.  Given the Contempt Order, Petitioner proffers that the only remaining issue is whether Respondents have purged their contempt or have a present inability to obey the Summons Order. According to Petitioner, documents requested in the following paragraphs of the summonses still remain outstanding:  1) paragraph 1 - off shore credit cards ending in 7755, 7763, and 0690 and June-October 2003 statements; February and September 2004 statements; and credit card application for the card ending in 0496; 2) paragraph 4 - Colony Mortgage loan applications (subparagraph a); correspondence (subparagraph i); and

documentation to substantiate or otherwise describe transfers of funds from Colony Mortgage to Respondents prior to the May 22, 2002 loan (subparagraph m); 3) paragraph 9 - documents showing payments by any person and/or entity on behalf of respondents with respect to Respondents' American Express accounts; 4) paragraph 10 - documents regarding correspondence or otherwise normally associated with the filing of an insurance claim; and 5) paragraph 11 - scholarships, grants, or other financial aid.

Ms. Bright requests that the contempt be purged because certain documents do not exist, she has taken all reasonable steps to obtain documents, and has produced those documents she has obtained. Mr. Bright, who has retained separate counsel, argues that he has made all reasonable efforts to comply with the Summons Order and should not be held in contempt. He claims that his lack of knowledge of and/or involvement in Ms. Bright's financial activities prevents him from accessing and obtaining the requested documents.

I.  Civil Contempt

        Civil contempt occurs when a party disobeys a specific and definite court order by failing to take all reasonable steps within the party's power to comply.  In re Dual-Deck Video Cassette Recorder Antitrust, 10 F.3d 693, 695 (9th Cir. 1993).  District courts have "wide latitude in determining whether there has been contemptuous defiance of its order."  Hook v. Ariz. Dep't of Corrections, 107 F.3d 1397, 1403 (9th Cir. 1997).  Contempt "'need not be willful,' and there is no good faith exception to the requirement of obedience to a court order."  In re Dual-Deck, 10 F.3d at 695 (quoting In re Crystal Palace Gambling Hall, Inc., 817 F.2d 1361, 1365 (9th Cir. 1987)).  The party moving for a finding of civil contempt must demonstrate by clear and convincing evidence that the alleged contemnor violated the court's order, and "a person should not be held in contempt if his action 'appears to be based on a good faith and reasonable interpretation of the [court's order].'"  Id.

8

(alteration in original) (quotations and citations omitted); <u>Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.</u>, 689 F.2d 885, 889 (9th Cir. 1982).

The Court has already determined that Respondents are in contempt of the Summons Order.  The Court will therefore limit its inquiry to whether Respondents remain in contempt based on their action or inaction and whether they have a present ability to comply with the Summons Order.

Respondents contend that they have taken all reasonable steps to comply with the Summons Order.  The Court disagrees.  "'Substantial compliance" with the court order is a defense to civil contempt, and is not vitiated by 'a few technical violations' where every reasonable effort has been made to comply." <u>In re Dual Deck</u>, 10 F.3d at 695 (citations omitted); <u>Gen. Signal Corp v. Donallco, Inc.</u>, 787 F.2d 1376, 1379 (9th Cir. 1986) (citing <u>Vertex</u>, 689 F.2d at 891-92) (If a defendant has taken "all reasonable steps" to comply with the court order, technical or inadvertent

violations of the order will not support a finding of civil contempt).  "Ability to comply is the crucial inquiry, and 'a court should weigh all the evidence properly before it determines whether or not there is actually a present ability to obey.'"  <u>United States v. Ayers</u>, 166 F.3d 991, 994 (9th Cir. 1999) (quoting <u>United States v. Drollinger</u>, 80 F.3d 389, 393 (9th Cir. 1996)).

A respondent may not argue, for the first time in a contempt proceeding, that it lacks possession or control of records.  <u>United States v. Rylander</u>, 460 U.S. 752, 757 (1983) (citations omitted).  Neither may respondents use the contempt proceeding as a basis for reconsidering the legal or factual basis of the order alleged to have been disobeyed.  <u>Ayers</u>, 166 F.3d at 955 (quoting <u>Rylander</u>, 460 U.S. at 756-57 (citation omitted)).  However, in a civil contempt proceeding, "a defendant may assert a present inability to comply with the [enforcement] order in question."  <u>Id.</u> (citations omitted).  Where a defendant raises the present

10

inability defense, he or she has the burden of production.  Id. (citations omitted).  In the event compliance with the order is factually impossible, there is no reason to proceed with the civil contempt action.  Id.

Respondents continue to insist that they do not have a present ability to comply with the Summons Order and that they have taken all reasonable steps to obtain the documents requested in the summonses and can do nothing more.  Throughout these proceedings, Respondents have asserted that they do not possess documents.  This argument is flawed and without merit. Possession is not the relevant inquiry.  As the Court has already determined based on established case law, a respondent may not argue, for the first time in a contempt proceeding, that it lacks possession or control of records.  Rylander, 460 U.S. at 757.

In opposition to Petitioner's request for additional sanctions, Respondents have included a number of exhibits, some of which were previously

considered by the Court, and many of which are dated
April 2008.  It is unclear why Respondents failed to
submit these documents at the time the Court
adjudicated the motion for contempt, as Respondents had
ample opportunity to do so.[3]  However, most of these
documents do not assist Respondents.  Rather, they
demonstrate a continued lack of diligence on
Respondents' part to take reasonable steps to comply
with the Summons Order and/or purge the contempt, even
if given explicit instructions on how they could do so.
There remains a question of what actions Respondents
have taken since April 2008, as the evidence tends to
demonstrate that little to nothing has been done, and

_____

   [3]  Respondents attribute the lack of production to
the fact that there remained an issue of Fifth
Amendment privilege with respect to the offshore credit
cards.  However, Judge Kay had already clearly
determined in the Summons Order that the Fifth
Amendment did not serve as a bar to production, and
Respondents had no basis to continue to withhold
documents related to the offshore credit cards.
Moreover, a number of these documents pertained to
other paragraphs in the summonses.  The withholding of
documents and/or evidence of compliance only works to
Respondents' detriment, as the Court and Petitioner are
then unable to properly assess whether Respondents have
complied with the Summons Order.

12

Respondents have not provided a sufficient explanation for their failures. This Court issued the F&R in June 2008, Judge Kay issued the Contempt Order in August 2008, and both Judge Kay and the Ninth Circuit rejected Respondents' requests for a stay of the Contempt Order as of early September 2008. Significantly, the evidence is clear that with the exception of a few request/follow-up letters drafted by Mr. Green in late November/early December, Respondents have taken no action since the issuance of the Contempt Order, or even since the Ninth Circuit denied the request for a stay more than three months ago.

A. <u>Outstanding Documents</u>

The Court shall address each category of documents that remain outstanding and discuss Respondents' failures and/or compliance with respect to each.

1. <u>Paragraph 1 - Off Shore Credit Cards</u>

a. <u>Butterfield Bank Card Ending in 0496</u>

Petitioner reports that Respondents have not

13

produced 1) statements for the periods June-October 2003 and February and September 2004, and 2) the credit card application.  Ms. Bright responds that she does not possess said documents and has taken all reasonable steps to obtain the documents.  See Opp'n, Exs. 1-3. In particular, Ms. Bright notes that the bank will not produce records without authorization from the company that requested the card.  Id., Ex. 2.  She represents that she requested information concerning this card from Colin Chaffe, who initially indicated that he would respond, but who has since failed to communicate with Ms. Bright.[4]  Mr. Bright asserts that he has never been issued an offshore credit card and his name is not attached to any of the cards in question.[5]

By failing to provide all of the information

_____

[4]  According to Ms. Bright, Chaffe has not responded to her since April 25, 2008, the date on which he hung up on U.S. District Judge Susan Oki Mollway in a separate but related case, United States of America v. Liddell, et al., CV 07-00310 SOM-KSC. Decl. of Cherie Bright ("Cherie Decl.") at ¶ 7.

[5]  Despite this claim, he has only provided documentation from the credit card companies for the cards ending in 0496 and 7755.

requested in the summonses, Ms. Bright is still in contempt of the Summons Order.  She has not demonstrated that she has taken all reasonable steps to comply with the Order, or that she lacks a present inability to comply.  Instead, she has submitted her February 2008 request to Butterfield Bank, which she already submitted to the Court (Ex. 1), an April 2008 email from Butterfield (Ex. 2), and an April 11, 2008 email to Chaffe requesting ownership information for the card (Ex. 3).  This falls well short of taking "all reasonable steps."  One request to Butterfield nearly 10 months ago and one documented request to Chaffe more than 8 months ago is grossly inadequate.  See, e.g., United States v. Hayes, 722 F.2d 723, 725-26 (11th Cir. 1984) (finding that failure to do anything other than request records, even including requests involving trips to Switzerland, demonstrates that "all reasonable efforts" were not made).  Ms. Bright claims that her phone calls to Chaffe have gone unreturned, but she does not indicate how many phone calls she made and/or

15

when she made the calls.  Based on Ms. Bright's
transparent delay tactics throughout the course of this
litigation, her representations are given little
weight.  Other than these purported phone calls, Ms.
Bright has not presented any evidence that she has
taken any steps, much less "all reasonable steps,"
since the issuance of the Contempt Order on August 20,
2008.

It is disingenuous for Ms. Bright to now argue,
approximately one year and three months after the
issuance of the Summons Order, that she is unable to
obtain any further documents due to Chaffe's failure to
cooperate since April 25, 2008.  First, while it
appears that Chaffe has no intention of cooperating as
to the Liddell case, there is an absence of evidence to
confirm that he will not cooperate in this matter.
Second, if Ms. Bright had made even the slightest
effort to comply with the summonses at the time they
were enforced instead of repeatedly ignoring her

16

obligations and engaging in delay tactics,[6] it is
likely, based on what attorney Lynne Panagakos was able
to obtain from Butterfield in the Liddell case, that
she would have the requested documents in hand.  The
Court will not permit Ms. Bright to benefit from a
situation she created by blatantly defying the Summons
Order.  United States v. Asay, 614 F.2d 655, 660 (9th
Cir. 1980) ("Inability to comply with an order is
ordinarily a complete defense to a charge of contempt.
An exception exists when the person charged is
responsible for the inability to comply.").  Simply
put, had she devoted even a fraction of the time
expended on avoiding compliance to exploring avenues by
which to obtain the requested documents, she would not
be in her current position.

     Ms. Bright further asserts that *original*
documents do not exist.  Compliance with the summonses
does not require original documents, and Ms. Bright has

---

     [6]  Respondents have forced Petitioner and the Court
to expend countless unnecessary hours to compel their
compliance.

not shown that copies fail to exist or that they cannot be obtained.  Indeed, even Chaffe stated at the April 25, 2008 <u>Liddell</u> hearing that he is willing to provide some statements.  For these reasons, Ms. Bright has not satisfied her burden of showing that she has a present inability to comply with the summons.  On the other hand, it appears that Mr. Bright has no connection to this card and the Court will not require him to produce documents regarding the same.  Response, Ex. E.

     b.  <u>Cards Ending in 7755, 7763, and 0690</u>

    Petitioner argues that Respondents have yet to produce any documents related to the offshore credit cards ending in 7755, 7763, and 0690.  Ms. Bright counters that she lacks the ability to produce any documents with respect to these credit cards.

      i.  <u>7755/0690</u>

    Ms. Bright made requests to the credit card companies for each of these cards, one in February 2008[7] (Opp'n, Ex. 4) and the other in April 2008.  <u>Id.</u>, Ex.

---

    [7] The Court has already seen this letter and found it to be insufficient.

7.  She also requested that Chaffe identify the owner of the card and provide contact information.  <u>Id.</u>, Ex. 3.  Because Chaffe has not responded to her requests, has rescinded authorization previously given to Hallmark Bank with respect to releasing records in the <u>Liddell</u> case (Ex. 24),[8] and she is unaware of whom else to contact, Ms. Bright contends that she lacks the present ability to produce responsive documents.  The Court disagrees.  The evidence demonstrates that Ms. Bright has not taken any steps since April 2008.  Her limited requests, which were submitted <u>before</u> the issuance of the F&R and Contempt Order, are insufficient to show that she made all reasonable efforts to obtain the documents requested in the

---

[8]  As much as Respondents wish to apply and/or rely on events and rulings occurring in the <u>Liddell</u> case, both this Court and the district court have found that <u>Liddell</u>, although related, is not controlling. Similarly, events or comments made by Chaffe in connection with Mr. Liddell are not applicable to Ms. Bright, where, as here, Chaffe has made no specific reference to Ms. Bright.

summonses.[9]  Accordingly, she and Mr. Bright remain in
contempt of the Summons Order with respect to the card
ending in 0690.  The Court finds that Mr. Bright is not
in contempt as to the card ending in 7755, as he
produced evidence verifying his lack of connection to
the card.  See Response, Ex. F.

### ii. 7763

Ms. Bright requested the statements for this
account from Asia Pacific Mutual on April 13, 2008.
Opp'n, Ex. 8.  She received a response on April 15,
2008 indicating that the records had been requested.
Id., Ex. 9.  Mr. Green wrote a follow up letter on
November 26, 2008 (Ex. 19) and was informed that
nothing can be done.  Id., Ex. 20.  Although
Respondents apparently believe that this will excuse
their compliance, the Court declines to do so.  As

_____

[9]  Ms. Bright complains that in March of 2008, she
asked IRS Revenue Agent Debra Tsuha whether she has any
contact information for the card ending in 7755, but
Ms. Tsuha did not provide any information.  It is not
the IRS' responsibility to provide Respondents with
information related to documents which Respondents have
the burden of producing.

discussed above, Respondents shall not benefit from a situation that they have created.  The only documented effort made by Respondents is the one April 13, 2008 letter and very recent November 26, 2008 letter drafted by Mr. Green.  Requests alone are not sufficient. Based on the evidence before the Court, Ms. Bright did not take any steps, besides making some follow-up calls, to obtain the documents following her April letter.  Indeed, until Mr. Green's letter, it appears that no action was taken, and certainly nothing that would come close to satisfying the "all reasonable steps" requirement.  Thus, the Court finds that Respondents remain in contempt of the Summons Order. Mr. Bright is equally responsible as Ms. Bright, as he has not submitted any documentation, other than his bald conclusory assertion, that he has no connection to this particular card.

   2. <u>Paragraph 4 - Colony Mortgage and Other Loans</u>

   Petitioner submits that Respondents have yet to produce loan applications (subparagraph a);

correspondence (subparagraph i); and documentation to substantiate or otherwise describe transfers of funds from Colony Mortgage to Respondents prior to the May 22, 2002 loan (subparagraph m).

Ms. Bright contends that the Court did not find her in contempt for failing to produce the loan application because she stated that it does not exist. Additionally, she asserts that she does not possess correspondence and Colony Mortgage has advised her that it is company policy not to maintain correspondence. Finally, she claims to have produced all documents in her possession concerning the pre-May 2002 payments and has requested all such documents.  Mr. Bright admits to being named on both the Colony Mortgage promissory note and mortgage, but disclaims having any documents or having ever received correspondence.  He represents that he merely provided his signature on the application that he did not complete.

This Court previously found that the loan application purportedly did not exist.  Ms. Bright has

now provided a letter from Chaffe verifying that it was
unnecessary for her to fill out a formal application.
<u>Id.</u>, Ex. 10.  As such, the Court finds that
subparagraph a is satisfied.  Likewise, subparagraph i
is satisfied by Chaffe's letter, which states that it
is corporate policy not to maintain correspondence.
<u>Id.</u>

As for the transfers of funds prior to the May
22, 2002 loan, the Court finds that Respondents are
still in contempt of the Summons Order.  Ms. Bright has
included some copies of checks for the Court's
consideration (Ex. 11) and contends that she has no
further documents and is unaware of who to contact
other than Chaffe.  This is an insufficient response
and does not meet the "all reasonable steps" standard.
As already established, lack of possession and
unanswered requests do not excuse Respondents'
compliance.  There is no evidence that Respondents have
attempted to identify or communicate with other
individuals at Colony Mortgage who might be able to

assist in obtaining the information requested in the summons.  Consistent with her other "efforts," Ms. Bright has taken little to no action since April.  As noted previously, Chaffe was very cooperative and responsive in April.  If Respondents had timely made reasonable efforts, they would not likely be faced with identifying a contact person other than Chaffe, even though it is unclear that they have truly made an effort to communicate with someone at Colony Mortgage besides Chaffe.  For these reasons, Respondents[10] remain in contempt of the Summons Order with respect to paragraph 4(m), but are no longer in contempt as to

---

[10]   Mr. Bright attempts to distance himself from this case so as to purge the contempt against him.  The mere fact that he is not involved in the family's finances does not exonerate him from responsibility. He admits to signing the promissory note and mortgage. Thus, he is equally as liable for the mortgage and note as Ms. Bright.  He has no basis to argue that he is relying on Ms. Brights efforts (or lack thereof in this case), when his legal obligation on the note and mortgage clearly entitles him to make inquiries and efforts to obtain documents.  Particularly in this instance, the Court declines to distinguish between Mr. Bright and Ms. Bright's respective involvement.  They are both clearly responsible and equally able to take the steps necessary to comply with the Summons Order.

paragraph 4(a) and (i).

    3.   <u>Paragraph 9 – Third Party Payment for Respondents' American Express Accounts</u>

    Petitioner maintains that it would be satisfied if Respondents declared under oath that they had identified and produced all third-party payments, but Respondents had yet to do so.[11]  Ms. Bright has declared that she "did not receive any payments from Colony Mortgage and Asia Pacific to my American Express accounts in addition to the ones that I have already identified."  Cherie Decl. at ¶ 27.  Mr. Bright has disclaimed any knowledge of any third-party payments made on any credit cards.

    Although Ms. Bright has now declared that she did not receive any payments other than those already identified, the Court agrees with Petitioner that Ms. Bright has not provided any information about what

--------

[11]  At the hearing, Mr. Hendon expressed his reservation with accepting Ms. Bright's statement in her Declaration as satisfying paragraph 9 of the summons because she failed to explain what steps she took between her previous declaration and the present to confirm the accuracy of her statement.

steps she took to verify that her representation is accurate.  If she is able to do so, the Court may find that paragraph 9 is satisfied.  Until such time, the Court concludes that Respondents remain in contempt of paragraph 9.

      4.   <u>Paragraph 10 - Payments Received from Asia Pacific Mutual Insurance Company, Ltd.</u>

      Petitioners argue that Respondents have not produced any documents such as correspondence or those otherwise normally associated with the filing of an insurance claim.  Ms. Bright responds that she believes she filled out an application but does not have a copy, she does not have any other documents other than those produced, and has requested documents from Asia Pacific.  She produced a letter dated April 15, 2008 from Asia Pacific which stated that 1) it did not have a copy of the insurance application; 2) there is no relevant correspondence; 3) a check was written as an advance on a claim for Respondents' roof leak and related damages; 4) the written claim has been expected since the issuance of the check, but none has been

submitted; 5) a settlement report does not exist because the claim is still open pending receipt of the written claim and receipts for expenses.  Opp'n, Ex. 9. Mr. Bright represents that he did not participate in securing the insurance policy and left such matters to Ms. Bright, that he does not possess any documents, and has relied on Ms. Bright's efforts.[12]

In light of the April 15, 2008 letter from Asia Pacific,[13] the Court finds that paragraph 10 is partially satisfied.  Specifically, Respondents have satisfied paragraph 10 as to the insurance application and correspondence.  Neither Respondents nor Asia Pacific have a copy of the insurance application or

---

[12]  Again, his purported lack of involvement does not excuse him from taking all reasonable steps to comply.  He cannot simply shift all responsibility to Ms. Bright in order to purge himself of contempt where he has the power to obtain documents.  It appears that he is also a named insured on the Asia Pacific policy. Thus, it does not matter that he was not involved with obtaining the insurance because he has equal power and ability to make relevant inquiries of the company concerning the policy.

[13]  The Court admonishes Respondents for failing to produce this and all of the other documents dated April 2008 in connection with the motion for contempt.

correspondence.  However, Respondents should have, and Asia Pacific has been long awaiting, submission of the written claim.  Respondents' failure to complete and submit a written claim in order to settle the claim demonstrates that, as with all of the other outstanding documents, they have not taken all reasonable steps to comply with the Summons Order.  Asia Pacific has been waiting for a written claim even prior to April 2008, and Ms. Bright is only now assembling a claim because Asia Pacific's dissolution has necessitated such action.  Cherie Decl. at ¶ 32.

At the hearing, Mr. Hendon informed the Court that he received a fax containing documents the evening before the hearing.  Understandably, he was unable to verify whether the produced documents satisfy the paragraph 10.  Ms. Bright also filed a copy of the documents with the Court after hours on December 18, 2008, but the Court was not aware of the filing or provided with courtesy copies of the same until after the hearing.  Respondents have made it a regular

28

practice to submit documents on the eve of hearings, which diminishes the effectiveness of the hearing and does not afford Petitioner and the Court reasonable opportunity to review the same.  In the future, Respondents, namely Ms. Bright, should provide relevant documents to Petitioner and/or the Court in a timely manner and well in advance of the hearing.  Until Petitioner informs the Court that this late submission fully or partially satisfies all or any part of paragraph 10 as yet responded to, the Court finds that with the exception of the application and correspondence, Respondents have failed to comply with paragraph 10 and they continue to violate the Summons Order.

  5. <u>Paragraph 11 - Scholarship, Grant,</u>
    <u>Financial Aid Documents</u>

  Petitioner argues that Respondents have not met their burden because all they have done since the issuance of this Court's F&R is send a letter to Chaffe, and they have not submitted a response nor any other evidence demonstrating that additional documents

do not exist or that they have attempted to contact other parties listed in the summonses to obtain responsive documents.  Ms. Bright counters that she has provided documentation of her attempts to obtain documents from Chaffe, Wealthshare Foundation, Maestro Management, and the International Society of Business Professionals.  Mr. Bright asserts that he was not involved in securing scholarships for his son and is not in possession of documents related to the scholarships.

Ms. Bright provided a letter from Chaffe dated April 10, 2008, wherein he informed her that Wealthshare Foundation has dissolved and that no information regarding tuition payments is available. Opp'n, Ex. 13.  She also provided a letter she drafted and sent to Chaffe in June 2008 requesting information. Id., Ex. 14.  This letter was already provided in connection with Respondents' objections to the F&R.[14]

---

[14]  Ms. Bright claims that the district court failed to consider her June 13, 2008 Declaration, but there is no evidence to support this allegation.  It appears that the district court weighed and considered all of

Finally, Mr. Green drafted a letter to Chaffe dated December 5, 2008 to follow up on the earlier request for scholarship documents.  It appearing that no information from Wealthshare Foundation is available, Respondents need not take further steps to obtain such information.

On the other hand, Respondents are still responsible for obtaining information from Chaffe, Maestro Management, and the International Society of Business Professionals.  Consistent with the other evidence of "compliance" that Respondents have submitted, the Court finds that Respondents have not shown that they have a present inability to comply with the summonses.  Again, requests alone are insufficient. Moreover, Respondents failed to take any action since June 2008.  A letter drafted by Mr. Green shortly before the hearing on this Request can hardly be said

---

the evidence before it when it conducted its thorough and well-reasoned de novo review of this Court's F&R, and nevertheless determined that Respondents were in contempt.

31

to constitute "all reasonable steps" to comply with the
Summons Order.  Based on the foregoing, except for
information from Wealthshare Foundation, Respondents
remain in contempt as to paragraph 11.

In sum, Respondents remain in violation of the
Summons Order even though the Court has determined that
certain documents satisfy their obligation under the
summonses.  This is because they have yet to
substantially comply with the Summons Order and they
have not taken all reasonable steps to comply.
Respondents must immediately produce all responsive
documents to Petitioner.  Until they do so, they will
remain in contempt.  To purge the contempt, Respondents
must produce all responsive documents requested in
paragraphs 1, 4, 9, 10, and 11, as detailed above.

Except as noted above, supra section A.1.a,
A.1.b.i, the contempt findings apply equally to both
Mr. and Ms. Bright at this time.  Petitioner has
expressed a willingness to engage in further dialogue
with Mr. Bright to ascertain the degree of his

responsibility and the Court directs Petitioner to do so in good faith.   Until the dialogue between Petitioner and Mr. Bright is completed and a determination can be made regarding Mr. Bright's responsibility, the Court declines to recommend that Mr. Bright be purged of contempt.   In the past, the Court has found that Mr. Bright's responsibility is substantial enough that he, along with Ms. Bright, should have taken all reasonable steps to comply with the Summons Order.

## II. <u>Sanctions</u>

Insofar as the Court has determined that Respondents remain in contempt, and given the multiple written and verbal warnings issued to Respondents if they continued to violate the Summons Order, increased sanctions are necessary and appropriate.   Petitioner requests that the daily fine be increased to $1,000, that Respondents be incarcerated until they comply with the Summons Order or establish that they have a present inability to do so, and that Petitioner be awarded

33

additional and continuing compensatory sanctions to be determined once compliance is obtained.  Ms. Bright argues that the Court should discontinue the current $500 daily fine because it is unduly oppressive and punitive.

Courts employ civil contempt sanctions "for two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained."  Whittaker Corp. v. Execuair Corp., 953 F.2d 510, 517 (9th Cir. 1992) (citing United States v. United Mine Workers of America, 330 U.S. 258, 303-04 (1947)).  If a sanction is imposed for the purpose of coercing the contemnor, "the court must, in determining the size and duration of the sanction, 'consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired.'"  Id. (quoting United Mine Workers, 330 U.S. at 304).

A court may award fines as a compensatory

sanction, but such "awards are limited to 'actual
losses sustained as a result of the contumacy.'" Gen.
Signal Corp. v. Donallco, Inc., 787 F.2d 1376, 1380
(9th Cir. 1986) (citation omitted); see also United
Mine Workers, 330 U.S. at 304 (stating that a
compensatory fine must "be based upon evidence of
complainant's actual loss"). Courts also have the
power to order imprisonment. Yahoo! Inc. v. La Ligue
Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199,
1250 (9th Cir. 2006). "A close analogy to coercive
imprisonment is a per diem fine imposed for each day a
contemnor fails to comply with an affirmative court
order. Like civil imprisonment, such fines exert a
constant coercive pressure." Id. (quoting Int'l Union,
United Mine Workers v. Bagwell, 512 U.S. 821, 829
(1994)) (quotations omitted).

      As an initial matter, the Court will address
Ms. Bright's assertion that the a continuation of the
$500 daily fine is unduly oppressive and punitive.
Although Ms. Bright argues that no coercion is

35

necessary to obtain her compliance, the extensive
history of this case demonstrates otherwise.
Respondents have repeatedly failed to comply with Court
orders and have wasted the Court and Petitioner's time
with the same meritless arguments and excuses, even
when previously rejected.  The Court has set forth
explicit purgation conditions.  Civil contempt
sanctions are necessarily imposed to coerce the
compliance of individuals like Respondents and any
complaint that the $500 fine is unduly oppressive is
not well-taken.  As already determined on multiple
occasions by the Court, Respondents have control over
the documents yet to be produced and/or hold the key to
obtaining the documents/information.  The fine[15] was
imposed to compel Respondents' compliance with the
Summons Order.  Respondents, not the Court or
Petitioner, have the power to purge the contempt by
providing the remaining outstanding documents or

---

[15]  It is worth noting that the district court found
the fine to be reasonable in the Contempt Order and the
Ninth Circuit declined to stay the Contempt Order.

36

providing their present inability to comply with the summonses.  As discussed herein above, Respondents have failed to do so and the sanction is the necessary consequence of their failure.

The Court has repeatedly addressed these issues and dealt with Respondents' refusal, denial, and/or delay.  It is clear that while Respondents complain of the undue burden imposed by the $500 daily fine, the fine is not substantial enough to compel their compliance.  This Court has now twice painstakingly analyzed and explained how Respondents can purge their contempt, but Respondents refuse to take any reasonable steps to comply with the Summons Order.  Because of the current uncertainty as to Mr. Bright's involvement and responsibility, the following finding and recommendation regarding increased sanctions shall apply only to Ms. Bright.  The Court recommends that the district court increase the daily fine to $750, due per <u>calendar</u> day, until Ms. Bright and/or Respondents fully comply with the Summons Order by producing all

37

responsive documents requested in paragraphs 1, 4, 9, 10, and 11, as detailed above, or until they satisfactorily explain why they are unable to do so.  A satisfactory response would include a declaration by Respondents that documents do not exist, with an explanation of how they have verified the same, or documentation showing that despite making all reasonable efforts to comply, they have a present inability to do so.  Requests alone will not suffice.

The Court also finds that a recommendation of imprisonment may be both necessary and appropriate. This recommendation would not be made lightly.  The Court would resort to this drastic sanction because even with the imposition of a substantial daily fine and the repeated threat of imprisonment, Respondents have failed to act.  It is abundantly clear that Respondents do not appreciate and/or recognize the seriousness of this matter.[16]  However, the Court will defer its decision on imprisonment until the further

---

[16]  They have not even managed to timely pay the current $500 daily fine.

38

hearing on this matter.

Finally, the Court finds that Petitioner is entitled to additional continuing compensatory sanctions in the form of attorneys' fees and costs for its considerable efforts to obtain compliance.  Mr. Hendon may either submit a declaration in conformance with Local Rule 54.3(d) to support his request for fees and costs incurred in obtaining compliance from the last award of fees and costs to date, or he may wait until compliance is finally obtained, if ever.

CONCLUSION

In accordance with the foregoing, the Court FINDS and RECOMMENDS that the district court GRANT Petitioner's Notice of Respondents' Non-Compliance with Court's August 20, 2008 Contempt Order and Request for Additional Sanctions, filed September 23, 2008.

Having found that Respondents remain in contempt of the Summons Order, the Court recommends that the daily fine be increased to $750, due each calendar day, as to Ms. Bright until Respondents comply

39

with the Summons Order or satisfactorily explain why they are unable to do so.  This increase takes effect as of the issuance date of this F&R.  Depending on the outcome of the further hearing, to be scheduled in approximately 60 days, the Court may also recommend incarceration as an additional sanction.  Finally, the Court recommends that Petitioner be awarded its reasonable fees and costs incurred in its efforts to obtain Respondents' compliance.

IT IS SO FOUND AND RECOMMENDED.

Dated:  Honolulu, Hawaii, December 23, 2008.



_____
Kevin S.C. Chang
United States Magistrate Judge

CV 07-00311 ACK-KSC; <u>UNITED STATES OF AMERICA V. BRIGHT, et al.</u>; FINDINGS AND RECOMMENDATION REGARDING UNITED STATES' NOTICE OF RESPONDENTS' NON-COMPLIANCE WITH COURT'S AUGUST 20, 2008 CONTEMPT ORDER AND REQUEST FOR ADDITIONAL SANCTIONS