IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Civ. No. 07-00311 ACK-KSC |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CHERIE J. BRIGHT and | ) | |
| BENJAMIN K. BRIGHT, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

ORDER ADOPTING AS MODIFIED THE MAGISTRATE JUDGE'S FINDINGS AND
RECOMMENDATION REGARDING UNITED STATES' NOTICE OF RESPONDENTS'
NON-COMPLIANCE WITH COURT'S AUGUST 20, 2008 CONTEMPT ORDER AND
REQUEST FOR ADDITIONAL SANCTIONS

On September 23, 2008, Petitioner, the United States of America ("Government"), filed a notice of Respondents' non-compliance with this Court's August 20, 2008 order finding Respondents, Cherie J. Bright and Benjamin K. Bright, in contempt and a request for additional sanctions. On September 30, 2008, this Court referred the matter to Magistrate Judge Kevin S. Chang. On December 23, 2008, he entered findings and a recommendation ("F&R") that this Court grant the Government's request in part ("Dec. 23, 2008 F&R"). On January 5, 2009, the Government, Ms. Bright, and Mr. Bright each filed objections to the December 23, 2008 F&R. For the reasons that follow, this Court adopts the F&R as modified and grants the Government's request for additional sanctions in part.

## BACKGROUND

### I.    The Summonses

On June 19, 2007, an Internal Revenue Service ("IRS") Agent, Debra Tsuha, served attested copies of IRS summonses ("Summonses") on Respondents.  The Summonses directed Respondents to appear on July 5, 2006 to provide testimony and fifteen categories of documents relating to their federal income tax liability for 2002 and 2003.  Broken down by paragraph, the Summonses' required that Respondents produce the following:

> Paragraph 1:   All records for the years beginning January 1, 2001 to the date of the Summonses relating to credit cards issued by MasterCard ending in 7755 and 0496 and any other offshore credit cards, including (a) card applications, (b) monthly or periodic charge statements, (c) charge receipts, (d) cash advance confirmations, (d) payments and/or funds transferred to pay for balances due, and (e) correspondence

> Paragraph 4:  For each loan made or obtained during 2001 to the date of the Summonses, or that was in existence during 2001 to the date of the Summonses, all documents evidencing the terms and performance, including (a) loan applications, (b) correspondence, and (c) loan documents received from Colony Mortgage Company Limited ("Colony Mortgage"), dated May 22, 2002, as well as any other documents from the entity

> Paragraph 9:  A list of credit cards used by third parties and (a) credit card statements, (b) names or persons using cards, and (c) a schedule of amounts reimbursed, detailing dates, amounts, and documentation for reimbursements made

Paragraph 10:  Concerning the claim information for payments received from Asia Pacific Mutual Insurance Company, Ltd. ("Asia Pacific"), (a) applications for insurance, (b) all insurance policies, (c) correspondence, (d) claims for insurance reimbursement, and (e) insurance company settlement reports

Paragraph 11:  All documentation relating to scholarships, grants, or other financial aid received or paid on behalf of Respondents' family, including payments from Collin Chaffe, Wealthshare Foundation ("Wealthshare"), and Maestro Management, Limited ("Maestro Management")

Respondents did not appear before Agent Tsuha on July 5, 2006.

## II.  Prior Proceedings

On June, 9, 2007, the Government responded by filing a petition to enforce the Summonses.  On July 24, 2007, Judge Chang issued findings and a recommendation that this Court grant the petition to enforce the Summonses.  On September 11, 2007, this Court issued an order adopting as modified the F&R ("Summons Order").

On September 19, 2007, Respondents moved for reconsideration of the Summons Order.  On October 23, 2007, this Court issued an order denying the motion for reconsideration and coordinating timing of compliance with Summonses to avoid conflict with discovery in a separate civil action.  On October 30, 2007, Respondents appealed both the Summons Order and the October 23, 2007 order to the Ninth Circuit.

On January 24, 2008, Respondents received a letter from Agent Tsuha informing them that they must produce the outstanding documents requested in the Summonses by February 1, 2008 and appear for an interview on February 8, 2008.  On February 1, 2008, Respondents moved to stay the Summons Order pending the resolution of their appeal to the Ninth Circuit.  On February 7, 2008, this Court denied Respondents' motion for a stay pending appeal, but stayed enforcement of the Summonses for five days to allow Respondents to seek a stay with the Ninth Circuit.  On February 14, 2008, the Ninth Circuit denied Respondents' emergency motion to stay the Summons Order.

On March 12, 2008 the Government filed a motion asking this Court to adjudge Respondents in contempt and order appropriate sanctions.  On June 2, 2008, Magistrate Judge Chang issued an F&R, finding that Respondents were in contempt of the Summons Order and recommending that a daily fine of $500 be imposed until Respondents comply.  He additionally recommended that the Government be awarded its reasonable fees and costs incurred in connection with the motion and its efforts to obtain Respondents' compliance.  On June 12, 2008, Judge Chang issued a supplement to the F&R.  On August 20, 2008, this Court entered an order adopting Judge Chang's F&R and its supplement ("Contempt Order").  This Court imposed on Respondents a coercive sanction of $500 per calendar day, beginning August 27, 2008, until they

4

fully complied with the Summons Order or established that they in good faith exercised all reasonable efforts but could not obtain the outstanding documents.  This Court also imposed a compensatory sanction of $11,593.59 payable to the United States by September 1, 2008.

On August 27, 2008, Respondents appealed the Contempt Order to the Ninth Circuit.  The same day, Respondents filed a joint motion for a stay of the Contempt Order or alternatively for a continuance of the sanction payments with this Court and the Ninth Circuit.  This Court denied the motion on September 2, 2008, and the Ninth Circuit denied the motion on September 10, 2008.

## III. The Government's Notice and Request

On September 23, 2008, the Government filed a notice of Respondents' non-compliance with the Contempt Order and a request for additional sanctions.  On September 30, 2008, this Court referred the matter to Judge Chang.

On December 1, 2008, the Government filed a supplemental brief ("Gov't Suppl. Br."), asserting that Respondents remained in contempt of the Summons Order in relation to paragraphs 1, 4, 9, 10, and 11 of the Summonses.  It therefore requested an increase in the coercive sanction to a $1,000 per day fine and incarceration.  On December 8, 2008, Ms. Bright filed an opposition ("Ms. Bright Opp'n") along with a declaration

5

("Ms. Bright Decl.").  Mr. Bright filed a separate response to
the Government's brief the same day ("Mr. Bright Resp.").  On
December 18, 2008, Ms. Bright filed a supplement to her
opposition.  On December 19, 2008, Judge Chang held a hearing on
the matter.

On December 23, 2008, Judge Chang entered an F&R
regarding the Government's notice and request.  As will be
discussed in detail below, he found that, for the most part,
Respondents remain in contempt of the Summons Order.  Based on
his finding of contempt, Judge Chang recommended that, as to Ms.
Bright, the coercive sanction be increased to $750 per calendar
day, until Respondents fully comply with the Summons Order by
producing all responsive documents requested in paragraphs 1, 4,
9, 10, and 11 of the Summonses or until they satisfactorily
explain why they are unable to do so.  Judge Chang declined to
increase Mr. Bright's previously-imposed $500 per calendar day
fine, because of the current uncertainty as to Mr. Bright's
involvement and responsibility.  With respect to the Government's
request for incarceration, Judge Chang deferred his decision
until further hearing on the matter.  Lastly, he found that the
Government is entitled to additional continuing compensatory
sanctions in the form of attorneys' fees and costs for its
considerable efforts to obtain compliance.

On January 5, 2009, the Government, Ms. Bright, and Mr. Bright each filed objections to the December 28, 2008 F&R (respectively, "Gov't Objs.," "Ms. Bright Objs.," and "Mr. Bright Objs."). On January 15, 2009, the Government filed its response to Ms. Bright's objections ("Gov't Resp. to Ms. Bright Objs."). On January 20, 2009, Ms. Bright and Mr. Bright each filed a response to the Government's objections (respectively, "Ms. Bright Resp. to Gov't Objs." and "Mr. Bright Resp. to Gov't Objs."). Ms. Bright included a new declaration in her response.

On February 13, 2009, the Government filed a status report ("Gov't Status Rpt.") explaining that, on February 2, 2009, Agent Tsuha had interviewed Mr. Bright. Based on the interview and all of the previous evidence and briefs filed in this matter, the Government stated that it is no longer seeking to hold Mr. Bright in civil contempt of the Summons Order with respect to the documents requested in paragraph 1 of the Summonses regarding offshore credit cards. (Gov't Status Rpt. 3.) Also on February 13, 2009, Ms. Bright filed a declaration, and, on February 24, 2009, the Government filed a response.

**STANDARD OF REVIEW**

A district court reviews de novo those portions of a magistrate judge's F&R to which an objection is made and may accept, reject, or modify, in whole or in part, the findings and recommendation made by the magistrate judge. 28 U.S.C.

§ 636(b)(1); Fed. R. Civ. P. 72(b); Local Rule 74.2 of the Local Rules of Practice of the United States District Court for the District of Hawaii ("Local Rules").  The district court may receive further evidence or recommit the matter to the magistrate judge with instructions.  28 U.S.C. § 636(b)(1).  It may also consider the record developed before the magistrate judge.  Local Rule 74.2.  The district court must arrive at its own independent conclusion about those portions of the magistrate judge's report to which objections are made, but a de novo hearing is not required.  United States v. Remsing, 874 F.2d 614, 618 (9th Cir. 1989).

Although the Government and Mr. Bright have requested an evidentiary hearing, this Court finds that such a hearing is neither necessary nor inappropriate.  See Local Rule 74.2; (Gov't Objs. 17; Mr. Bright Resp. to Gov't Objs. 3-5).  In addition, this Court will not consider any new evidence submitted after the parties filed their objections to the December 23, 2008 F&R and the responses thereto, except for the Government's status report to the extent that it states that the Government is no longer seeking to hold Mr. Bright in civil contempt with respect to the documents requested in paragraph 1 of the Summonses regarding offshore credit cards.  See 28 U.S.C. § 636(b)(1); (Gov't Status Rpt. 3).

## DISCUSSION

I.   **Civil Contempt**

Respondents object to Magistrate Judge Chang's findings insofar as he determined that they have not purged their contempt of the Summons Order because they failed to establish their present inability to comply,[1] whereas the Government contests certain instances in which he found that Respondents have, in fact, purged their contempt on that basis.  This Court will first set forth the applicable legal standards and then address the parties' objections.

A.   **Legal Standards**

Civil contempt occurs when a party disobeys a specific and definite court order by failing to take all reasonable steps within the party's power to comply.  <u>Reno Air Racing Ass'n v. McCord</u>, 452 F.3d 1126, 1130 (9th Cir. 2006).  He may purge his contempt by producing evidence of his present inability to comply.  <u>See</u> <u>United States v. Drollinger</u>, 80 F.3d 389, 393-94 (9th Cir. 1996) (per curiam).[2]  This is known as the

---

[1] Mr. Bright joins Ms. Bright's objections where applicable.  (Mr. Bright Objs. 5.)

[2] A contemnor may not contest an enforcement order during the contempt proceeding on the basis that he lacked possession and control of the records at the time the enforcement order was issued, but he may defend the contempt charge by producing evidence that he is then unable to comply because he lacks possession and control.  <u>United States v. Rylander</u>, 460 U.S. 752, 756-57 (1983).  Contrary to what Respondents' suggest, Judge
(continued...)

"impossibility" defense.  Federal Trade Comm'n v. Affordable

Media, LLC, 179 F.3d 1228, 1240 (9th Cir. 1999).

In order to establish the defense, a contemnor must

come forward with evidence that he has taken all reasonable steps

within his power to comply.  Cf. Reno Air Racing, 452 F.3d

at 1130.  However, such evidence must be credible under the

circumstances, for a contemnor cannot satisfy his burden of

production "by evidence or by his own denials which the court

finds incredible in context."  Maggio v. Zeitz, 333 U.S. 56,

75-76 (1948); accord Huber v. Marine Midland Bank, 51 F.3d 5, 10

(2d Cir. 1995); United States v. Sorrells, 877 F.2d 346, 349 (5th

Cir. 1989); cf. Commodity Futures Trading Comm'n v. Wellington

Precious Metals, Inc., 950 F.2d 1525, 1530 (11th Cir. 1992) (per

---

[2]/(...continued)
Chang correctly applied this principle in his F&R.  (See Dec. 23,
2008 F&R 10-11, 37-38.)
    Respondents' also object to Judge Chang's analysis of
whether their inability to comply is self-induced.  (Ms. Bright
Objs. 5-8.)  Although a self-induced inability to comply is not a
defense to a charge of compensatory civil contempt, it is a
complete defense to a charge of coercive civil contempt.  See
Falstaff Brewing Corp. v. Miller Brewing Co., 702 F.2d 770, 782
n.7 (9th Cir. 1983).  This Court notes that Judge Chang in his
recommendations, while finding Respondents have the ability to
comply, makes some reference to Respondents' alleged inability to
comply as having been self-induced.  (See Dec. 23 F&R 16-17,
20-21, 24; Ms. Bright Objs. 7-8.)
    Nevertheless, this Court does not reach the question of
whether Respondents' alleged present inability to comply is self-
induced, because that question presupposes that they have shown a
present inability to comply in the first instance.  As discussed
below, this Court finds that, with few exceptions, Respondents
have not made that showing.  See infra Discussion Sections I.B &
C.

curiam).  He is not worthy of belief unless he can show

"'categorically and in detail' why he is unable to comply."

Affordable Media, 179 F.3d at 1241 (quoting Nat'l Labor Relations

Bd. v. Trans Ocean Export Packing, Inc., 473 F.2d 612, 616 (9th

Cir. 1973)).  In other words, his explanation must be

sufficiently specific such that his inability clearly appears.

See Cutting v. Van Fleet, 252 F. 100, 102 (9th Cir. 1918), cited

in Trans Ocean Export Packing, 473 F.2d at 616.[3]

---

[3/] Of course, the degree of detail required in the
contemnor's explanation will vary with the circumstances.  Where,
for example, a contemnor claims that he cannot presently comply
with a court order by reason of memory loss, he may meet his
burden of production simply by testifying that he does not
remember.  See In re Battaglia, 653 F.2d 419, 422 (9th Cir.
1981).  At that point, the contemnor has "offered as clear and
detailed an explanation as possible for his inability to comply
without exceeding the limits of faulty memory."  Id. at 422 n.1.
But, where, as here, there is no claim of memory loss, the
contemnor is to be expected to have much more to say about why he
cannot comply with a court order.  Significant gaps in his
testimony suggest that he has not met his burden of offering "as
clear and detailed an explanation as possible for his inability
to comply."  See id.  Thus, contrary to what Respondents have
suggested, a finding that a contemnor has failed to meet his
burden of production in light of gaping holes in his proof does
not, as a general matter, improperly shift the burden of
persuasion to the contemnor.  See Cutting, 252 F. at 102-03;
Wellington Precious Metals, 950 F.2d at 1530; (Ms. Bright
Objs. 9-10).
     If the Contemnor meets his burden of production, then the
complaining party who initially sought a finding of contempt must
carry the burden of persuasion by establishing that the contemnor
is actually able to comply with the court order.  See Battaglia,
653 F.2d at 423; see also Wellington, 950 F.2d at 1529.  At that
point, the complaining party must do more than simply rely on
gaps in the contemnor's proof.  See Battaglia, 653 F.2d at 423.
The complainant must establish by clear and convincing evidence
that the contemnor's claimed inability to comply is not credible.
                                        (continued...)

For example, in <u>Cutting</u>, a party was held in contempt for his failure to pay a debt pursuant to a court order.  252 F. at 101-02.  He argued that, by virtue of his affidavit, he had shown his financial inability to comply with the order because, in the affidavit, he stated that he did not have sufficient financial means to make the payment.  <u>Id.</u> at 102.  The Ninth Circuit held that the party had not discharged his burden, reasoning that he had failed to state that he owned no property out of which the payment could be realized or that he had no property that had been concealed or transferred to others out of which he might pay the required sum.  <u>Id.</u> at 102-03; <u>see also</u> <u>United States v. Clough</u>, No. 90-16625, 1991 U.S. App. LEXIS 24467, at *5-*6 & n.4 (9th Cir. Oct. 9, 1991) (unpublished opinion) (affirming a district court's order finding that the defendant failed to meet his burden of coming forward with credible evidence that he had a present inability to comply with an order to repatriate money, particularly in light of certain issues that he had failed to explain);[4] <u>In re Byrd Coal Co.</u>, 83 F.2d 256, 256 (2d Cir. 1936) (per curiam) (relying on <u>Cutting</u>, 252 F. at 102, and holding that a person could not be held in

---

[3]/(...continued)
<u>Id.</u>

[4]/ Pursuant to U.S. Ct. of App. 9th Cir. Rule 36-3, this Court does not rely on <u>Clough</u> as precedent, but it does find the opinion illustrative.

12

contempt of a court order to make a monetary payment for money that he had wrongfully taken from an individual who was prospectively bankrupt if it appears that the person has nothing with which to pay, but that the person's efforts to purge himself of contempt were not sufficiently explicit because he had failed to "categorically and in detail" testify to the extent of his present financial resources of all kinds, not merely from his profession, and because he had not shown what became of the money that he had wrongfully taken from the bankrupt individual), cited in Trans Ocean Export Packing, 473 F.2d at 616.

In short, Cutting teaches that a contemnor does not carry his burden of production where the evidence that he adduces fails to account for why he did not take reasonable steps that were within his power in order to comply with the order. See 252 F. at 102-03. This requirement that the contemnor produce evidence showing that he has taken all reasonable steps to comply illustrates why his explanation for noncompliance must be categorical and detailed: If his explanation for noncompliance is not articulated with adequate breadth or particularity, a court simply cannot determine with any real certainty whether he has carried his burden of producing evidence showing that he has taken all reasonable steps to comply. Cf. id.; Affordable Media, 179 F.3d at 1241.

13

**B.    Outstanding Documents**

In the case at hand, Magistrate Judge Chang found that, by and large, Respondents remain in contempt of the Summons Order.  He structured his analysis in light of the paragraphs of the Summonses for which documents remain outstanding.  His findings as to each paragraph are reviewed de novo in the following subsections to extent that they are contested by the parties.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); LR 74.2.

**1.    Paragraph 1:  Offshore Credit Cards**

Paragraph 1 of the Summonses required that Respondents produce all records for the years beginning January 1, 2001 to the date of the Summonses relating to credit cards issued by MasterCard ending in 7755 and 0496 and any other offshore credit cards, including (a) card applications, (b) monthly or periodic charge statements, (c) charge receipts, (d) cash advance confirmations, (d) payments and/or funds transferred to pay for balances due, and (e) correspondence.  This paragraphs also covers certain credit cards ending in 7763 and 0690.  (Dec. 23, 2008 F&R 13, 18.)  Judge Chang determined that Ms. Bright remained in contempt of the Summonses Order with respect to all four cards, but that Mr. Bright only remained in contempt with respect to the card ending in 7763.  (Id. at 18, 20-21.)

14

The Government has stated that, based on its interview with Mr. Bright, it is no longer seeking to hold him in civil contempt with respect to the four credit cards. (Gov't Status Rpt. 3.) As such, this Court finds that Mr. Bright has purged his contempt in that regard. The remaining question is whether Ms. Bright has purged her contempt. This Court will first provide some background as to each card and then address whether Ms. Bright has met her burden of production.

a.    **Butterfield Bank credit card ending in 0496**

Magistrate Judge Chang observed that, in connection with the credit card ending in 0496, Ms. Bright has not produced (1) statements for the periods of June through October of 2003 and February and September of 2004 and (2) the credit card application. (Dec. 23, 2008 F&R 13-14.) Ms. Bright does not dispute this finding, but asserts that she has produced all of the documents in her possession regarding the credit card ending in 0496, which was issued by Butterfield Bank. (See Ms. Bright Objs. 18-19.) She further contends that Butterfield Bank has refused to produce any documents without authorization from the company at whose request the card was issued. Certain credit card statements reflect that the card was requested by Maestro Management, which is run by Colin Chaffe. (Id. at 18.) Ms. Bright asserts that Mr. Chaffe has ceased responding to her requests for information. (Id. at 17-18.)

15

She notes that her business associate, Morgan Liddell, has requested similar information from Mr. Chaffe regarding off-shore credit cards in connection with a petition to enforce an IRS summons before District Judge Susan Oki Mollway in <u>United States v. Liddell</u>, Civ. No. 07-00310 SOM-KSC (D. Haw.).  (Ms. Bright Objs. 18.)  In that proceeding, Ms. Bright explains, Mr. Chaffe refused to disclose any additional Maestro Management documents beyond the ones he has already provided on the grounds that Maestro Management is his personal consulting company and that the documents are totally private.  (<u>Id.</u>)  Ms. Bright makes much of the fact that, during a teleconference, Mr. Chaffe hung up on Judge Mollway.  (<u>Id.</u> at 9-12, 18.)

### b.   Hallmark credit cards ending in 7755 and 0690

Judge Chang found that Ms. Bright has not produced any documents related to the credit cards ending in 7755 and 0690, which were issued by Hallmark Bank and Trust Ltd. ("Hallmark Bank").  (Dec. 23, 2008 F&R 18-20.)  Ms. Bright does not contest this finding, but argues that she has taken all reasonable steps to comply with the Summons.  (Ms. Bright Objs. 19-20.)  She explains that she requested the documents concerning the cards ending in 0690 and 7755 from Hallmark Bank, Mr. Chaffe, and Eco-Finance Corp. and that she attempted to access the documents through the internet.  (<u>Id.</u> at 19.)  She asserts that Hallmark Bank has refused to produce the documents without authorization

16

from an authorized corporate officer and did not reposed to her second request for information. (Id.) Ms. Bright states that the credit card ending in 0690 appears to have been issued to Eco-Finance Corp., yet another company controlled by Mr. Chaffe. (Id.) She reiterates that Mr. Chaffe has ceased communicating and cooperating with her in this matter ever since he hung up on Judge Mollway in the Liddell matter. (Id.)

### c.  Asia Pacific credit card ending in 7763

Judge Chang found that Ms. Bright has not produced any documents relating to the credit card ending in 7763, which was issued by Hallmark Bank. (Dec. 23, 2008 F&R 21.) Again, Ms. Bright does not dispute this finding, but contends that she has taken all reasonable steps to comply with the Summons with respect to this card. (Ms. Bright Objs. 20-21.) She explains that the card was issued to Asia Pacific and that, by letter dated April 13, 2008, she requested the summonsed documents from Asia Pacific. (Id. at 20.) The company responded that it did not possess the documents but had requested them from overseas. (Id.) Ms. Bright states that she made numerous follow-up calls to Asia Pacific, but did not receive any documents. (Id.) She asserts that Asia Pacific's former CEO, Lindsay Barrett, informed her that he had made multiple requests for the credit card statements, but had not received any. (Id.) Ms. Bright explains that, by letter dated November 26, 2008, she made another follow-

17

up request to Asia Pacific.  (Id. at 20-21.)  She notes that Asia responded that Mr. Barrett had indeed made numerous requests, that it had conducted a thorough search but had not located any responsive documents, and that it was unable to do anything further.  (Id. at 21; Ms. Bright Opp'n, Ex. 20.)

### d.  Analysis

This Court finds that Ms. Bright has not carried her burden of producing evidence that shows categorically and in detail why she is unable to produce the outstanding documents relating the Butterfield Bank credit card ending in 0496 and the Hallmark Bank credit cards ending in 7755, 0690, and 7763.  See Affordable Media, 179 F.3d at 1241.  Even assuming (1) that Mr. Chaffe is unwilling to cooperate with Ms. Bright in obtaining records from Butterfield Bank and Hallmark Bank and (2) that Asia Pacific has made unsuccessful efforts to obtain records from Hallmark Bank, Ms. Bright's explanation of her connection with Mr. Chaffe, Maestro Management, Eco-Finance Corp., Asia Pacific, and the offshore credit cards is simply insufficient.  As the Government observes, she does not explain how the offshore credit cards work, how they came into her possession, how the bills were paid, or who was responsible for paying the bills.  (Gov't Resp. to Ms. Bright Objs. 10.)  Details as to those issues are crucial because they would likely illustrate further reasonable steps

that Ms. Bright may take to obtain the records that she must produce.

Furthermore, Ms. Bright does not explain her relationship with Mr. Chaffe, Maestro Management, Eco-Finance Corp., or Asia Pacific. Such testimony would probably illustrate additional avenues that Ms. Bright may have to obtain the information that she must produce.[5] Finally, Ms. Bright has not asserted that she cannot obtain, at a minimum, the charge slips that she signed using the offshore credit cards from the various vendors at which she used the cards. Accordingly, this Court adopts Judge Chang's finding that Ms. Bright remains in contempt of the Summons Order with respect to the credit cards ending in

---

[5] Ms. Bright claims that she has no authority over, ability to control, or leverage to assert against Mr. Chaffe, the companies that he controls, or Asia Pacific. (Ms. Bright Objs. 13.) She has not submitted sworn testimony to that effect; argument by counsel is all that is presently before this Court. (See Ms. Bright Decl. ¶¶ 1–42.) More importantly, even if Ms. Bright had provided testimony in support of her claim, it is impossible for this Court to know with any real certainty whether she has any leverage or authority over Mr. Chaffe, the companies that he controls, or Asia Pacific, because she has not provided a detailed explanation of her relationship with those individuals. See Affordable Media, 179 F.3d at 1241. This Court finds it likely that Ms. Bright has some form of legal relationship with Mr. Chaffe in light of their countless business transactions. (See Ms. Bright Decl. ¶¶ 5–8, 12–13, 18–19, 24–25, 33–41.) If that is the case, then she may well have to explore and pursue her legal avenues in order to obtain the documents that she must produce. See United States v. Hays, 722 F.2d 723, 725–26 (11th Cir. 1984) (per curiam); United States v. Aruda, Civ. No. 05-00751 DAE-KSC, 2006 U.S. Dist. LEXIS 49363, at *9–*10 (D. Haw. 2006).

0496, 7755, 0690, and 7763.  (<u>See</u> Dec. 23, 2008 F&R 13-14, 18-21.)

    **2.**    **Paragraph 4:  Colony Mortgage and Other Loans**

        Paragraph 4 of the Summonses required Respondents to produce, for each loan made or obtained during 2001 to the date of the Summonses, or that was in existence during 2001 to the date of the Summonses, all documents evidencing the terms and performance, including (a) loan applications, (b) correspondence, and (c) loan documents received from Colony Mortgage Company Limited, dated May 22, 2002, as well as any other documents from the entity.  Ms. Bright explains that Colony Mortgage is another company operated by Colin Chaffe.  (Ms. Bright Decl. ¶ 8.)  With respect to the May 22, 2002 loan documents, she states that she received $12,000 from Colony Mortgage and made a $6,342.72 payment to the company, but that she does not recall exactly what the payments were for.  (<u>Id.</u> ¶ 26.)

        Judge Chang found that Respondents have established that there were no loan applications and that there was no correspondence.  (Dec. 23, 2008 F&R 21-23.)[6]  However, he also found that they remain in contempt of the Summons Order with respect to the loan documents received from Colony Mortgage dated

---

[6] The Government does not challenge this finding.  (Gov't Resp. to Ms. Bright Objs. 16.)

May 22, 2002. (<u>Id.</u> at 24-25.)[7]   Respondents contend that they have a present inability to comply with the Summons Order as it pertains to the those documents. (Ms. Bright Objs. 21-22.)   Ms. Bright explains that she has requested documents concerning pre-May 22, 2002 payments from Colony Mortgage, but that no response has been forthcoming. (<u>Id.</u> at 21.)   She states that she is unaware of anyone through whom to contact Colony Mortgage other than Colin Chaffe. (<u>Id.</u> at 21-22.)

This Court finds that Respondents have not carried their burden of producing evidence that shows categorically and in detail why they are unable to produce the loan documents received from Colony Mortgage dated May 22, 2002. <u>See</u> <u>Affordable Media</u>, 179 F.3d at 1241.   Even assuming that Mr. Chaffe is unwilling to produce documents, Respondents do not adequately explain their relationship with Mr. Chaffe or Colony Mortgage. Such testimony would probably illustrate additional avenues that

---

[7/]   In the F&R, Judge Chang noted that, the day before the hearing, Respondents faxed the Government new documents in connection with paragraph 10 of the Summonses. (Dec. 23, 2008 F&R 28.)   Judge Chang explained that, until the Government informs him that the late submission fully or partially satisfies all or any part of paragraph 10, he would find that Respondents remain in contempt with respect to paragraph 10, with the exception of the application and correspondence documents. (<u>Id.</u> at 29.)   It appears that the Government has taken the position that the new documents do not satisfy the remaining aspects of paragraph 10 because, in its response to Ms. Bright's objections, the Government continues to assert that Respondents remain in contempt of the Summons Order as to paragraph 10, except as to the loan application and correspondence documents. (Gov't Resp. to Ms. Bright Objs. 16-17.)

Respondents may have to obtain the information that they must produce.  Accordingly, this Court adopts Judge Chang's finding that Respondents remain in contempt of the Summons Order with respect to the loan documents received from Colony Mortgage dated May 22, 2002, but that they have purged their contempt as to the loan applications and correspondence.  (<u>See</u> Dec. 23, 2008 F&R 24-25.)

### 3.   Paragraph 9:  Third-Party Payment for American Express Accounts

Paragraph 9 of the Summonses requires that Respondents produce a list of credit cards used by third parties and (a) credit card statements, (b) names or persons using cards, and (c) a schedule of amounts reimbursed, detailing dates, amounts, and documentation for reimbursements made.  The Government has said (1) that it would be satisfied with respect to paragraph 9 if Respondents declared under oath that they had identified and produced all third-party payments, but (2) that Respondents have previously declined to do so.  (Gov't Suppl. Br. 15.)  Ms. Bright has now declared she "did not receive any payments from Colony Mortgage and Asia Pacific to [her] American Express accounts in addition to the ones [she] had already identified."  (Ms. Bright Decl. ¶ 27.)  She has also disclaimed any knowledge of any third-party payments made on any credit cards.  (<u>Id.</u>)  Judge Chang found that, although Ms. Bright has now declared that she did not receive any payments other than those already identified, she has

not provided any information about what steps she took to verify that her representation is accurate.  (Dec. 23, 2008 F&R 25-26.)  He therefore concluded that Respondents remain in contempt of the Summonses Order with respect to paragraph 9 of the Summonses.  (Id. at 26.)

Ms. Bright asserts that, because Judge Chang and the Government previously suggested that she could satisfy her burden of production by stating under oath that the third-party payments that she had identified were all that existed, it is unfair for Judge Chang to now require her to explain the steps that she took to verify her representation.  (Ms. Bright Objs. 22.)  This Court disagrees.  The standards for purgation of contempt are well-settled.  See supra Discussion Section I.A.  In relation to paragraph 9 of the Summonses, Respondents must come forward with evidence that shows categorically and in detail why they are unable to produce the outstanding documents under the paragraph.  Accordingly, this Court adopts Judge Chang's finding that Respondents remain in contempt of the Summonses Order with respect to paragraph 9 of the Summonses.  (See Dec. 23, 2008 F&R 25-26.)

### 4.    Paragraph 10:  Asia Pacific Insurance Claim

#### a.    Background

Paragraph 10 of the Summonses concerns the claim information for payments received from Asia Pacific and requires production of (a) applications for insurance, (b) all insurance

23

policies, (c) correspondence, (d) claims for insurance
reimbursement, and (e) insurance company settlement reports.  Ms.
Bright has testified that she has produced an insurance policy
and a $15,000 check that she received as an advance on the claim.
(Ms. Bright Decl. ¶ 28.)  She states that she does not possess
any other responsive documents.  (Id.)  She further states that
she requested summonsed documents from Asia Pacific, but has not
received any documents in response to her request.  (Id. ¶ 29.)
She explains that she does believe that she filled out an
insurance application, but that neither she nor Asia Pacific has
a copy.  (Id. ¶ 30.)

        By letter dated April 15, 2008, Asia Pacific's former
CEO, Mr. Barrett, stated that Asia Pacific does not have a copy
of Ms. Bright's insurance application and that "there is no
relevant correspondence in relation to the policy." (Ms. Bright
Opp'n, Ex. 9.)  With respect to claims for reimbursement, Mr.
Barrett stated that he has written a check on a claim for Ms.
Bright's roof leak and related damages.  (Id.)  He explained that
the request was verbal and a written claim form was not received,
but has been expected.  (Id.)  With respect to settlement
reports, Mr. Barrett noted that there were no settlement reports
as to the claim, because the claim was still open pending receipt
of a written claim and receipts of Ms. Bright's expenses.  (Id.)
She has testified that Asia Pacific has filed a notice of

dissolution, necessitating that she file a claim.  (Ms. Bright
Decl. ¶ 10.)  She states that she has consequently begun to
assemble a claim.  (Id.)

Judge Chang found that paragraph 10 was satisfied as to
the insurance application and correspondence, but that they
otherwise remained in contempt because they have failed to
complete and submit a written claim in order to settle their
claim with Asia Pacific.  (Dec. 23, 2008 F&R 27-29.)

### b.   The Government's objections

The Government objects to Judge Chang's finding that
paragraph 10 was satisfied with respect to the insurance
application and correspondence.  (Gov't Objs. 11-12.)  As to the
application, the Government asserts that:  (1) the April 14, 2008
letter should not be credited because it was not produced until
December 8, 2008 as part of Ms. Bright's supplemental brief; (2)
the letter's statement that the application is not in Asia
Pacific's files is not satisfactory because it does not state
that it is the company's policy not to keep such applications or
that there was a vigorous search to locate the document; (3) it
is not believable that Respondents do not have a copy of the
application.  (Id.)  Respondents counter by reiterating Ms.
Bright's statement that she does not have a copy of the insurance
application.  (Ms. Bright Resp. to Gov't Objs. 5.)

25

This Court agrees with the Government's third argument and finds that Respondents have not carried their burden of producing evidence that shows categorically and in detail why they are unable to produce the insurance application.  Ms. Bright has not provided any information about what steps she took to verify that her representation of non-possession is accurate.  See Affordable Media, 179 F.3d at 1241.

The Government additionally objects to Judge Chang's finding that paragraph 10 was satisfied with respect to the correspondence.  (Gov't Objs. 13.)  It observes that Mr. Barrett simply stated that "there is no relevant correspondence in relation to the policy."  (Id.)  Mr. Barrett's statement implies that Asia Pacific is in possession of some correspondence between itself and Respondents.  (See id.)  This Court therefore agrees with the Government that Respondents should obtain the correspondence that does exist so that they can review it and make an initial determination as to whether or not it is, in fact, "relevant."  (See id. at 13 n.2.)  As such, this Court finds that Respondents remain in contempt of the Summons Order as to the insurance application and correspondence in paragraph 10.

### c.   Respondents' objections

Respondents object to Judge Chang's finding that they remain in contempt of paragraph 10 with respect to claims for insurance reimbursement and insurance company settlement reports.

(Ms. Bright Objs. 23-24.)   They observe that Ms. Bright has produced the claim she filed with Asia Pacific on December 17, 2008.  (Id. at 23.)  They argue that there are no other claims for insurance reimbursement and that there are no settlement reports.  (Id.)  In light of Mr. Barrett's April 15, 2008 letter, this Court finds that Respondents have purged their contempt with respect to these items.  (See Ms. Bright Opp'n, Ex. 9.)  The letter shows that, apart from what the Government already has in its possession, no other claims for insurance reimbursement and settlement reports exist.  (See id.)  However, if such documents subsequently come into being, then Respondents must produce those documents pursuant to the Summonses.

In summary, this Court finds that, with respect to paragraph 10 of the Summons, Respondents have purged their contempt of the Summons Order as to claims for insurance reimbursement and insurance company settlement reports, but that they remain in contempt as to the insurance application and correspondence.  Consequently, this Court rejects Judge Chang's findings with respect to paragraph 10 of the Summonses.  (See Dec. 23, 2008 F&R 27-29.)

### 5.    Paragraph 11:  Scholarships, Grants, and Other Financial Aid

Paragraph 11 of the Summonses required that Respondents produce all documentation relating to scholarships, grants, or other financial aid received or paid on behalf of Respondents'

family, including payments from Mr. Chaffe, Wealthshare, or
Maestro Management.  Ms. Bright has testified that this paragraph
requests documents concerning financial aid and scholarship
payments from Colin Chaffe, Wealthshare Foundation, and Maestro
Management to the Art Institute of California for her son, Kalani
Bright.  (Ms. Bright Decl. ¶ 33.)  She states that she has never
been an accountant for Wealthshare, Maestro Management, or Mr.
Chaffe personally.  (Id. ¶ 34.)

        With respect to Wealthshare, she states that the
company was a foundation that issued educational scholarships and
that no one in her family, other than her son, received any
scholarships.  (Id. ¶ 35.)  She explains that all of her contacts
with Wealthshare have been through Mr. Chaffe and that she is
unaware of any person through whom to contact Wealthshare other
than Mr. Chaffe.  (Id. ¶ 36.)  Ms. Bright asserts that, in an
effort to obtain documents responsive to the Summonses, she
requested that Mr. Chaffe provide her with documents concerning
tuition payments from Wealthshare to the Art Institute of
California.  (Id. ¶ 37.)  By letter dated April 10, 2008, Mr.
Chaffe informed her that Wealthshare had dissolved and that the
information that she had requested was unavailable.  (Ms. Bright
Opp'n, Ex. 13.)  He recommended that she contact the school
directly to determine the amount and timing of payments made by
Wealthshare.  (Id.)  Ms. Bright has testified that she contacted

28

the school and that she has produced the documents that she received from the school to the Government. (Bright Decl. ¶ 38.) She asserts that she does not possess any other responsive documents. (Id.)

As to Collin Chaffe and Maestro Management, Ms. Bright states that the company is a captive management company owned by Mr. Chaffe and that the company administers the many foundations, corporations, and entities associated with him. (Id. ¶ 39.) She contends that she is not aware of any person through whom to contact Maestro Management other than Colin Chaffe. (Id.) Ms. Bright also addresses the International Society of Business Professionals ("ISBP"), which she claims is an affinity organization run by Mr. Chaffe. (Id. ¶ 40.) She states that membership in the ISBP is required to be eligible for Asia Pacific insurance policies. (Id.) She states that she does not know any other person who would have ISBP records other than Colin Chaffe. (Id.) Ms. Bright asserts that, by letter dated June 11, 2008, she requested the summonsed documents from Mr. Chaffe, Maestro Management, ISBP, and Wealthshare, but that she has not received a response. (Id. ¶ 41.)

Judge Chang found that Respondents have purged their contempt with respect to Wealthshare documents in light of the April 10, 2008 letter, but not with respect to documents relating to Mr. Chaffe, Maestro Management, or the ISBP. (Dec. 23, 2008

F&R 30-31.)   The Government objects to the former finding,
whereas Respondents contest the latter.   (Gov't Objs. 14-15; Ms.
Bright Objs. 24-25.)

This Court finds that Respondents have not carried
their burden of producing evidence that shows categorically and
in detail why they are unable to produce the outstanding
documents relating to the scholarships, grants, and other
financial aid from Mr. Chaffe, Wealthshare, Maestro Management,
and the ISBP.   It appears that Mr. Chaffe controls Wealthshare,
Maestro Management, and the ISBP.   Even assuming that Mr. Chaffe
is unwilling to produce documents, Respondents do not
sufficiently explain their relationship with Mr. Chaffe,
Wealthshare, Maestro Management, and the ISBP.   Such testimony
would likely illustrate additional avenues that Respondents may
have to obtain the information that they must produce.
Accordingly, this Court finds that Respondents remain in contempt
of the Summons Order with respect to paragraph 11 of the
Summonses.   Consequently, this Court (1) adopts Judge Chang's
finding of Respondents' contempt with respect to the documents
relating to Mr. Chaffe, Maestro Management, and the ISBP, but (2)
rejects his purgation finding as to Wealthshare documents.   (See
Dec. 23, 2008 F&R 30-31.)[8]

─────────────────

[8/] Respondents argue that the passage of the five months
that they have been in contempt of the Summons Order constitutes
(continued...)

C.   **Mr. Bright's Objections**

Mr. Bright asserts that the record sufficiently demonstrates his lack of involvement as to the matters at issue in the Summons Order.  (Mr. Bright Objs. 2.)  He explains that he has provided his own declaration as well as a declaration from Mr. Liddell.  (<u>Id.</u> at 3; Mr. Bright Resp., Exs. A, B.)  He asserts that the declarations confirm that he was not involved in the business dealings of Ms. Bright, did not handle the bulk of the family's business, and did not have access to the items being sought by the Government.  (Mr. Bright Objs. 3.)

This Court agrees with Judge Chang and finds that Mr. Bright signed the promissory note and mortgage as to the loan documents from Colony Mortgage, which is operated by Mr. Chaffe.  (<u>See</u> Dec. 23, 2008 F&R 24 n.10; Mr. Bright's Resp., Ex. A ¶ 12.)  Mr. Bright is therefore equally liable for the mortgage and note as Ms. Bright.  (<u>See</u> Dec. 23, 2008 F&R 24 n.10.)  His legal obligation on the note and mortgage clearly entitles him to make inquires and efforts to obtain the documents.  (<u>Id.</u>)  Furthermore, with respect to the Asia Pacific insurance

---

[8]/(...continued)
evidence of their inability to comply.  (Ms. Bright Objs. 15-16.)  While the passage of time is one consideration, it is accorded little weight here given that Respondents have yet to explain categorically and in detail why they have a present inability to comply.  This Court also notes that Respondents' have ceased all payment of the coercive monetary sanctions for the last two months.

documents, Mr. Bright does not dispute Judge Chang's finding that he is a named insured on the Asia Pacific insurance policy. (<u>Id.</u> at 27 n.12.)  Consequently, he has equal power and ability to make relevant inquires of the company concerning the policy. (<u>Id.</u>)  Under the circumstances, this Court finds Mr. Bright's and Mr. Liddell's conclusory declarations that Mr. Bright was not involved in his wife's business dealings and that he does not have access to the requested documents to be incredible in context.  <u>See Maggio</u>, 333 U.S. at 75-76.

## II.  Sanctions

Because Respondents remain in contempt of Summons Order, the question becomes whether the coercive and compensatory sanctions recommended by Judge Chang are proper in this case.[9]

### A.  Coercive Sanctions

"'[C]ivil contempt sanctions, or those penalties designed to compel future compliance with a court order, are considered to be coercive and avoidable through obedience.'" <u>United States v. Ayres</u>, 166 F.3d 991, 995 (9th Cir. 1999) (quoting <u>Int'l Union, United Mine Workers of Am. v. Bagwell</u>, 512 U.S. 821, 827 (1994)); <u>see also</u> <u>Koninklijke Philips v. KXD Tech.,</u>

_____

[9] Magistrate Judge Chang decided to defer his decision as to whether to impose the coercive sanction of imprisonment until further hearing.  (Dec. 23, 2008 F&R 38-39.)  The Government objects to that decision.  (Gov't Objs. 16.)  Given that a hearing before Judge Chang on the matter of imprisonment is currently set for March 4, 2009, this Court overrules the Government's objection.

32

Inc., 539 F.3d 1039, 1042 (9th Cir. 2008). To determine the size and duration of coercive sanctions, the court must consider the "'character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired.'" Whittaker Corp. v. Execuair Corp., 953 F.2d 510, 517 (9th Cir. 1992) (quoting United States v. United Mine Workers of Am., 330 U.S. 258, 303-04 (1947)). "One of the paradigmatic civil contempt sanctions 'is a per diem fine imposed for each day a contemnor fails to comply with an affirmative court order.'" Ayres, 166 F.3d at 995 (quoting Bagwell, 512 U.S. at 827).

In this case, this Court previously imposed a daily fine of $500 per calendar day upon Respondents. In his December 23, 2008 F&R, Judge Chang explained that, in light of the current uncertainty as to Mr. Bright's involvement and responsibility, he would only recommend increased sanctions as to Ms. Bright. (Dec. 23, 2008 F&R 37.) Judge Chang thus implicitly recommended that Mr. Bright's coercive sanction remain at $500 per calendar day. (See id.) With respect to Ms. Bright, Judge Chang recommended that this Court increase the daily fine to $750, due per calendar day, until Ms. Bright and/or Respondents fully comply with the Summons Order or they satisfactorily explain why they are unable

33

to do so.  (<u>Id.</u> at 37–38.)[10]  This recommendation is assailed from both sides.

### 1.  Respondents' Objections

Respondents level a number of objections against Judge Chang's recommendation with respect to sanctions.  First, they contend that the bulk of the documents in this contempt proceeding have only marginal and cumulative relevance to the IRS audit, because the Summonses were issued in connection with an IRS audit of their income tax returns for the years 2002 and 2003.  (Ms. Bright Objs. 1 n.1.)  On that basis, they assert that, even if they are in contempt, the sanctions that Judge Chang has recommended are unduly harsh, as the judge did not consider the character and magnitude of harm in determining the appropriate sanction.  (<u>Id.</u>)

Respondents' argument appears to be a thinly-veiled attempt to relitigate the underlying Summons Order.  They may not contest the relevancy of the documents or whether the documents are cumulative at this stage in the proceedings.  The time for such objections has past.  <u>See</u> <u>United States v. Rylander</u>, 460 U.S. 752, 756–57 (1983).  Respondents must now either produce the documents or show that they have a present inability to comply

---

[10]/ The Government does not object to Judge Chang's recommendation that the increased sanction only apply to Ms. Bright.

with the order.  A number of documents remain outstanding and, as stated previously, Respondents have failed to make that showing.

Second, Respondents assert that coercive sanctions are inappropriate because it is unclear as to what additional steps they can take to purge their contempt.  (Ms. Bright Objs. 4.) This Court disagrees.  As this Court has stated repeatedly above, Respondents must explain categorically and in detail as to why they cannot comply with the Summonses.  See Affordable Media, 179 F.3d at 1241.  Moreover, this Court and Judge Chang have each set forth several steps by which Respondents may purge their contempt.  (See Dec. 23, 2008 F&R 38.)

Third, Ms. Bright states that, if there is anything else that she must do to purge her contempt, she will do it and that she would sign a blank authorization to the Government or anyone else it designates, providing the Government with authority to ask for anything.  (Ms. Bright Objs. 4-5.)  She therefore asserts that coercive sanctions are unnecessary.  (Id.) Ms. Bright misunderstands her burden of production.  The burden is on her, and not the Government, to come forward with evidence that explains categorically and in detail why she is presently unable to comply with the Summons Order.  See Affordable Media, 179 F.3d at 1241.  Furthermore, this Court is unmoved by Ms. Bright's representation that coercive sanctions are unnecessary. Judge Chang found that "Respondents have repeatedly failed to

comply with court orders and have wasted the Court and Petitioner's time with the same meritless arguments and excuses, even when previously rejected." (Dec. 23, 2008 F&R 36.)  He further explained that he has "repeatedly addressed these issues and dealt with Respondents' refusal, denial, and/or delay." (Id. at 37.)  This Court shares Judge Chang's concerns and agrees that coercive sanctions are necessary in this case to obtain Respondents' compliance with the Summons Order. (See id. at 36-37.)

### 2.   The Government's Objections

The Government asserts that Judge Chang's recommendation to increase the monetary sanction by only $250 per day is insufficient to command Respondents' obedience with the Summons Order. (Gov't Objs. 15.)  The Government asserts that Respondents have had ample time to comply, but they have chosen to do virtually nothing. (Id.)  In addition, the Government notes that Respondents have failed to pay the current $500 daily fine on a timely basis and that they are currently $15,500 in arrears of the sanction. (Id. at 15-16.)  The Government therefore concludes that the increased sanction must be severe enough to bring about immediate obedience with the order and that a $1,000 per calendar day fine is more likely to produce the desired obedience than a smaller increase to only $750 per calendar day. (Id. at 16.)

36

This Court finds that a coercive sanction of $750 per calendar day as to Ms. Bright is warranted and would, at this time, be as effective as an increased fine of $1,000.  Ms. Bright is to begin paying this increased fine starting seven (7) calendar days after this Order is issued.[11]  This Court also agrees with Judge Chang that the coercive sanction as to Mr. Bright should remain at its current level of $500 per calendar day.  Finally, given that Respondents have stopped paying the monetary sanctions, this Court agrees with Judge Chang that imprisonment may be both necessary and appropriate, but that the questions of whether to impose such a sanction and whether this Order results in compliance by Respondents warrant careful consideration.  (See Dec. 23, 2008 F&R 28.)  He will address that issue in the near future.

**B.    Compensatory Sanctions**

A court may award compensatory sanctions "to compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior." Gen. Signal Corp. v. Donallco, Inc., 787 F.2d 1376, 1380 (9th Cir. 1986).  The amount of compensatory sanctions is governed by the actual losses sustained by the moving party as a result of the contemptuous resistance. Id.; see also United Mine Workers, 330 U.S. at 304 (noting that a

---

[11] This Court therefore modifies the commencement date of December 23, 2008 for the increased monetary sanctions that Judge Chang set in his F&R.  (See Dec. 23, 2008 F&R 40.)

compensatory fine must "be based upon evidence of complainant's actual loss").

In this case, Magistrate Judge Chang recommended that the Government be awarded its reasonable fees and costs incurred in connection with the request and its efforts to obtain Respondents' compliance. (Dec. 23, 2008 F&R 39.)  He directed that the Government's counsel may either submit a declaration in conformance with Local Rule 54.3(d) to support his request for fees and costs in obtaining compliance from the last award of fees and costs to date, or he may wait until compliance is finally obtained, if ever. (<u>Id.</u>)  To date, counsel has not filed such a declaration.

Respondents do not address Judge Chang's recommendation to award compensatory sanctions in their objections.  Finding the recommendation appropriate, this Court adopts Judge Chang's recommendation to award the Government compensatory sanctions, subject to the procedure that he set forth in the F&R.  (<u>See id.</u>)

## CONCLUSION

This Court has made a de novo review of all the parties' objections and, to the extent that Magistrate Judge Chang's findings are not explicitly otherwise modified in this Order and based on this Court's independent review and assessment, agrees with his findings.  Therefore, this Court adopts as modified hereinabove Judge Chang's December 23, 2008

F&R and grants in part the Government's request for additional sanctions.

IT IS SO ORDERED

Dated:  Honolulu, Hawai'i, February 27, 2009



_____
Alan C. Kay
Sr. United States District Judge

United States v. Bright, Civ. No. 07-00311 ACK-KSC:  Order Adopting as Modified the Magistrate Judge's Findings and Recommendation Regarding United States' Notice of Respondents' Non-compliance with Court's August 20, 2008 Contempt Order and Request for Additional Sanctions