IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Petitioner,<br><br>vs.<br><br>CHERIE J. BRIGHT and BENJAMIN K. BRIGHT,<br><br>Respondents. | ) | CIVIL NO. 07-00311 ACK-KSC<br><br>FINDINGS AND RECOMMENDATION REGARDING EVIDENTIARY HEARING HELD ON MAY 13, 2009, AND ORDER DENYING RESPONDENT CHERI BRIGHT'S MOTION TO PURGE CONTEMPT (Doc. No. 159) |

ORDER REGARDING EVIDENTIARY HEARING HELD ON MAY 13, 2009, AND DENYING RESPONDENT CHERI BRIGHT'S MOTION TO PURGE CONTEMPT

## I. Introduction

Respondent Cheri Bright filed a Motion to Purge Contempt on May 7, 2009. This Court held an evidentiary hearing on May 13, 2009, regarding Respondents Cheri and Benjamin Bright's efforts to purge their contempt. Because the Court finds that the Brights have done almost nothing to comply with the contempt order since the district court last addressed this issue, this Court DENIES Cheri Bright's Motion to Purge Contempt. The Brights have thirty days from the issuance of this order to pay the overdue fines and satisfy their burden of production. If they fail to do so, the Government may seek to forfeit their assets to satisfy the arrearage and move to incarcerate the Brights until they satisfy their burden of production.

II. Background

The events leading to this motion are discussed in detail in United States v. Bright, No. 07-00311, 2009 U.S. Dist. LEXIS 15915 (D. Haw. Feb. 27, 2009), and will not be repeated here. In Bright, Judge Alan C. Kay modified and adopted this Court's Findings and Recommendation regarding the Notice of Respondents' Non-Compliance with Court's August 20, 2008 Contempt Order and Request for Additional Sanctions filed by Petitioner United States of America ("Government"). Judge Kay found that the Brights largely remained in contempt of his earlier order enforcing two Internal Revenue Service summonses. He found that the Brights had neither produced the documents requested in paragraphs 1, 4, 9, 10, and 11 of the summonses nor adequately explained why they were unable to produce responsive documents. Per this Court's recommendation, Judge Kay increased the daily fine he imposed on Cheri Bright to $750 from $500. He declined to determine whether imprisonment was an appropriate sanction, as this Court had scheduled an evidentiary hearing on the matter.

On May 7, 2009, Cheri Bright filed a Motion to Purge Contempt.

The Court held the evidentiary hearing on May 13, 2009. Both parties submitted numerous exhibits and stipulated that the exhibits would be admissible only for the purpose of showing Ms. Bright's state of mind as to whether she willfully complied with

the Court’s order. In addition to this evidence, the Court heard testimony from Ms. Bright. Mr. Bright did not testify. At the Court’s request, the parties submitted written closing arguments on May 20, 2009.

## III. Discussion

### A. Civil Contempt

Civil contempt occurs when a party disobeys a specific and definite court order by failing to take all reasonable steps within the party's power to comply. In re Dual-Deck Video Cassette Recorder Antitrust Litig., 10 F.3d 693, 695 (9th Cir. 1993). A party may purge its contempt by demonstrating its present inability to comply with the order in question, United States v. Rylander, 460 U.S. 752, 757 (1983), or that it has substantially complied with the order. In re Dual Deck Video, 10 F.3d at 695 (citations omitted). The party seeking to purge the contempt bears the burden of production. United States v. Ayres, 166 F.3d 991, 994 (9th Cir. 1999).

Judge Kay explained that in order to establish one’s present inability to comply, a party must show that it has taken all reasonable steps in context to comply:

> [A] contemnor must come forward with evidence that he has taken all reasonable steps within his power to comply. However, such evidence must be credible under the circumstances, for a contemnor cannot satisfy his burden of production by evidence or by his own denials which the court finds incredible in context. He is not worthy of belief unless he can show categorically and in detail why he is unable to comply. In other words, his explanation

> must be sufficiently specific such that his inability clearly appears.

Bright, 2009 U.S. Dist. LEXIS 15915, at *13-14 (internal quotation marks and citations omitted). This is for good reason: "If his explanation for noncompliance is not articulated with adequate breadth or particularity, a court simply cannot determine with any real certainty whether he has carried his burden of producing evidence showing that he has taken all reasonable steps to comply." Id. (citations omitted).

B. Outstanding Documents

Ms. Bright makes several general arguments regarding the contempt order and the outstanding documents. She contends that the contempt order is improperly based on speculation that she may be able to produce more documents. She asserts that requiring her to testify regarding her relationship with Colin Chaffe and several corporate entities is (1) an improper extension of the summonses and the order enforcing them, (2) an unnecessary burden on her Fifth Amendment rights, and (3) a misallocation of the burden of production. She notes that Judge Kay refused to consider certain evidence that she submitted, leading her to believe that the Court is focusing on her past mistakes instead of her present ability to comply. The Court finds that these arguments have little merit and will address each in turn before considering her more specific contentions regarding each category of the outstanding documents.

Despite Ms. Bright's contention, the contempt order is based on the gaping holes in Ms. Bright's production of evidence, rather than speculation. As noted by Judge Kay, Ms. Bright has failed to explain, among other things, how she obtained the credit cards at issue, how the bills were paid, and her relationship with Colin Chaffe and the corporations related to the outstanding documents. It is difficult, if not impossible, to determine whether Ms. Bright has taken all reasonable steps to comply with the Court's order without an adequate answer to these questions. Accordingly, for Ms. Bright to show categorically and in detail why she is unable to comply with the summonses, she will likely need to provide a satisfactory explanation of these issues.

Ms. Bright's argument that requested testimony exceeds the scope of summonses and enforcement order is not well taken. The summonses explicitly required the Brights to testify regarding their tax liability. (Pet. to Enforce IRS Summons Ex. 2, 3.) The summonses also mentioned Colin Chaffe, the credit cards at issue, and many of the entities in question, albeit in the context of document production. (Pet. to Enforce IRS Summons Ex. 2, 3.) Accordingly, the Brights should have been aware that the Internal Revenue Service or the Court might request their testimony on these issues. But more important, neither the Internal Revenue Service nor the Court is obligated to specify with particularity the testimony it seeks in the initial stages

of the proceedings; notifying the Brights of their duty to testify was sufficient.

The Court fails to see how this testimony places an "unnecessary" burden on the Ms. Bright's Fifth Amendment rights. As the Supreme Court stated in a similar context in Rylander, "[t]hat the defendant faces such a dilemma demanding a choice between complete silence and presenting a defense has never been thought an invasion of the privilege against compelled self-incrimination." United States v. Rylander, 460 U.S. 752, 758 (1983) (citing Williams v. Florida, 399 U.S. 78, 83-84 (1970)) (emphasis removed).

Ms. Bright's argument that the Court has misplaced the burden of proof assumes that she has satisfied her burden of production. For the reasons discussed below, she has not. The onus is still on her to produce sufficient evidence that she has taken all reasonable steps within her power to comply.

Finally, the Court notes that it has considered all of the evidence submitted by Ms. Bright, including the declarations not considered by Judge Kay. Therefore, her contention that the Court has ignored the evidence she has provided is without merit.

1. Offshore Credit Cards

Judge Kay found that Mr. Bright has purged his contempt regarding the offshore credit cards. Bright, 2009 U.S. Dist. LEXIS 15915, at *18. The only remaining issue is whether Ms. Bright has also purged her contempt. Before addressing this

question, the Court will provide the relevant context for each card.

a. Butterfield Bank Credit Card Ending in 0496

Judge Kay found that Ms. Bright had not carried her burden of production regarding (1) statements for June through October 2003 and February and September of 2004 and (2) the credit card application. Bright, 2009 U.S. Dist. LEXIS 15915, at *18-19, 22. Ms. Bright has subsequently produced statements for October 2003 and February 2004. (Supplemental Decl. Cherie J. Bright, March 13, 2009 Ex. 2.) The Government notes that she has not, however, produced the card application or statements for June through September 2003 and September 2004. (United States' Closing Argument Regarding the May 13, 2009 Evidentiary Hr'g 6.)

Ms. Bright argues that all of the available records concerning this card have been produced. She claims that Butterfield Bank informed her that it had records for October 2003 and February 2004 and she promptly requested these records. (Mot. to Purge Contempt 17-18.) She submitted these records to the Court on March 13, 2009. (Supplemental Decl. Cherie J. Bright, March 13, 2009 Ex. 2.) Accordingly, she believes that she has satisfied her burden of production.

b. Hallmark Credit Card Ending in 7755 and Eco Financial Credit Card Ending in 0690.

Judge Kay found that Ms. Bright had not produced any documents relating to these credit cards. Bright, 2009 U.S.

Dist. LEXIS 15915, at *20, 22. The Government points out that Ms. Bright still has not done so. (United States' Closing Argument Regarding the May 13, 2009 Evidentiary Hr'g 6-7.)

Regarding the Hallmark card, Ms. Bright alleges that she requested responsive documents from Hallmark Bank, but the bank refused to produce any documents without authorization from a corporate officer. (Mot. to Purge Contempt 20-21.) She claims that her attempts to identify an authorized party were unsuccessful. (Mot. to Purge Contempt 21.) She also notes that Colin Chaffe initially agreed to assist her in obtaining these records but later changed his mind and refused to cooperate. (Mot. to Purge Contempt 22.)

Ms. Bright claims that her efforts to obtain documents related to card ending in 0690 were also unsuccessful. She alleges that she sent letters requesting responsive documents to Marisa Matthews, Colin Chaffe, Colony Mortgage, and the International Society of Business Professionals. (Mot. to Purge Contempt 19.) According to Ms. Bright, Ms. Matthews would not turn over any additional records because Mr. Chaffe refused to authorize the release of the records. (Mot. to Purge Contempt 19.) She again notes that Mr. Chaffe rebuffed her requests that he authorize the release of these records. (Mot. to Purge Contempt 19-20.) These efforts, she argues, demonstrate that she has done all that she can to obtain the requested records.

c. Asia Pacific Credit Card Ending in 7763

Judge Kay also found that Ms. Bright had failed to turn over any documents relating to this card. Bright, 2009 U.S. Dist. LEXIS 15915, at *20-22. Ms. Bright claims that has now produced credit card statements for January 2002 through October 2003. (Supplemental Decl. Cherie J. Bright, February 13, 2009 2.) The Government contends that she is still in contempt because she has not stated under oath that no charges were made after October 2003 nor has she produced the credit card application. (United States' Closing Argument Regarding the May 13, 2009 Evidentiary Hr'g 6.)

In response, Ms. Bright argues that a letter she received from Hallmark Bank (Hallmark Bank apparently issued this card) states that it has no additional documents for this account. (Mot. to Purge 18.) Therefore, she feels that she has purged her contempt regarding this card.

d. Ms. Bright has Not Purged Her Contempt Regarding the Offshore Credit Cards

Judge Kay found that Ms. Bright had not carried her burden of producing evidence that shows categorically and in detail why she cannot produce responsive documents regarding these cards. This finding appears to be based in large part on her failure to adequately explain her relationship with Mr. Chaffe, Maestro Management, Eco-Finance Corp., Asia Pacific, and the offshore credit cards. See Bright, 2009 U.S. Dist. LEXIS

15915, at *22-25. He also noted that she failed to "explain how the offshore credit cards work, how they came into her possession, how the bills were paid, or who was responsible for paying the bills." Id. at *22.

Ms. Bright claims that she does not know who pays the credit card bills, what their limits are, or how to resolve a dispute regarding charges made to the cards. (Tr. of Evidentiary Hr'g 78-82 .) The Court finds it implausible that Ms. Bright routinely used these credit cards and yet is unaware of such basic information about the cards. Moreover, Ms. Bright has not explained her connection to Mr. Chaffe, Maestro Management, Eco-Finance Corp., Asia Pacific, and the offshore credit cards. In short, Ms. Bright is, for the most part, in the same position she was before Judge Kay issued the Bright decision. Thus, the Court finds that Ms. Bright has not purged her contempt with respect to the offshore credit cards.

2. Colony Mortgage and Other Loans

Paragraph 4 of the summonses requires Cheri and Benjamin Bright to produce, among other things, loan documents received for the Colony Mortgage Company Limited loan dated May 22,2002. Judge Kay found that the Brights did not produce sufficient evidence showing categorically and in detail why they are unable to produce these loan documents Bright, 2009 U.S. Dist. LEXIS 15915, at *26. The Government argues that the Brights have still not produced the outstanding documents, and

that they have not explained her relationship with Colin Chaffe and Colony Mortgage. (United States' Closing Argument Regarding the May 13, 2009 Evidentiary Hr'g 7-8.) In response, the Brights contend that they have provided a detailed list of the payments she received from Colony Mortgage before May 22, 2002, as part of her declaration of June 13, 2008. (Cheri Bright's Closing Argument 5.)

The Brights have done nothing to purge their contempt in this regard. They still have not provided the outstanding loan documents and have failed to provide any additional evidence that shows categorically and in detail whey they are unable to produce the loan documents in question. Moreover, as discussed above, they still have not adequately explained their relationship with Mr. Chaffe or Colony Mortgage. Accordingly, the Court finds that they have not purged their contempt regarding the outstanding loan documents.

3. Third-party Credit Card Payments for American Express Accounts

The Government has withdrawn its request that the Brights be held in contempt regarding third-party payments for American Express Accounts. (United States' Closing Argument Regarding the May 13, 2009 Evidentiary Hr'g 2.) Accordingly, the Court finds that the Brights are no longer in contempt with regard to these documents.

4. Asia Pacific Insurance Claim

Judge Kay found that the Brights remain in contempt regarding the insurance application and their correspondence with Asia Pacific. Bright, 2009 U.S. Dist. LEXIS 15915, at *33. He found that Ms. Bright had not explained what steps, if any, she had taken to verify her claim that did not possess a copy of the insurance application. Id. At *31-32. He further noted that Asia Pacific's former CEO, Lindsay Barrett, stated that it had no relevant correspondence. Id. at *32. Judge Kay found that this statement implied that some correspondence existed and ordered the Brights to obtain this correspondence. Id.

The Brights believe that the Government conceded at the hearing that they are in compliance with this portion of the summonses. (Cheri Bright's Closing Argument 1.) The Government, however, argues that the Brights are still in contempt because they have not produced the insurance application or their correspondence with Asia Pacific. (United States' Closing Argument Regarding the May 13, 2009 Evidentiary Hr'g 7.)

The Court finds that the Brights are still in contempt regarding the outstanding Asia Pacific documents. During the evidentiary hearing, Ms. Bright gave a cursory and wholly unsatisfactory account of her efforts to verify that she did not have a copy of the insurance application. (Tr. of Evidentiary Hr'g 64-66.) Without more, the Court finds that she has not satisfied her burden in this regard.

In addition, Ms. Bright admitted that she has not requested the Asia Pacific correspondence. (Tr. of Evidentiary Hr'g 67-68.) Bright appears to disagree with Judge Kay's interpretation of Mr. Barrett's statement. She seems to believe that Mr. Barrett stated that no correspondence exists. (Tr. of Evidentiary Hr'g 67.) Regardless, Ms. Bright is required to take all reasonable steps within her power to comply. Requesting correspondence from Mr. Barrett is certainly within her power, and her disagreement with Judge Kay's interpretation of Mr. Barrett's statement does not excuse her from making this request. Therefore, she has not purged her contempt regarding the outstanding Asia Pacific correspondence.

5. Scholarships and Other Financial Aid

Judge Kay found that the Brights did not satisfy their production burden regarding scholarships, grants, and other financial aid they received from Colin Chafree, Wealthshare, Maestro Management, and the International Society of Business Professionals. Bright, 2009 U.S. Dist. LEXIS 15915, at *36-37. He again found that the Brights failed to sufficiently explain their relationship with Mr. Chaffe, Wealthshare, Maestro Management, and the International Society of Business Professionals. Id. at *37.

Here too, the Brights contend that the Government conceded at the hearing that they are in compliance. (Cheri Bright's. Closing Argument 1.) The Government again disagrees.

The Government argues that the Brights have not shown categorically and in detail why they cannot produce the outstanding documents. (United States' Closing Argument Regarding the May 13, 2009 Evidentiary Hr'g 8-9.) The Government points out that Ms. Bright did not discuss her relationship with Colin Chaffe, Wealthshare, Maestro Management, and the International Society of Business Professionals. Id.

Yet again, the Brights have done little to purge their contempt since Judge Kay issued his latest order in this matter on Feb. 27, 2009. The Brights still have not produced responsive documents or explained their relationships with the relevant parties. Because the Brights have made no new efforts to satisfy their burden of production, the Court has little trouble finding that they have not purged their contempt with regard to these documents.

C. Mr. Bright's Arguments

Mr. Bright notes that, in regard to the Colony Mortgage documents, Judge Kay found that the Brights had not carried their burden in part because they had not adequately explained their relationship to Mr. Chaffe or Colony Mortgage. (Benjamin Bright's Written Argument Related to the Purgation Hr'g Held on May 13, 2009 2-3.) Mr. Bright argues that because Ms. Bright testified that he does not know Mr. Chaffe, he does not have the ability to comply with the summonses in this respect. (Benjamin Bright's Written Argument 3.)

The Court disagrees. From Ms. Bright’s testimony at the hearing and his written closing arguments, the Court gathers that Mr. Bright has chosen to abdicate his responsibility in this regard to his wife because he feels she is more capable of producing responsive documents. He has apparently made no independent effort to obtain these documents. This is simply insufficient to purge his contempt. Mr. Bright signed the mortgage and is therefore equally liable for it. Accordingly, he must make inquiries and efforts to obtain the requested documents. Even assuming that he does not know Mr. Chaffe, Mr. Bright still must make some effort to comply with the summonses (e.g., contacting Colony Mortgage and related entities, exploring any legal remedies he may have against Colony Mortgage, etc.).

With regard to the Asia Pacific documents, Mr. Bright argues that a letter that the Court accepted into the record at the hearing and Ms. Bright’s testimony established that he is not a policyholder of the Asia Pacific insurance policy. (Benjamin Bright’s Written Argument Related to the Purgation Hr’g Held on May 13, 2009 3-4.) The Court notes that this letter was presented into evidence at the hearing only for the purpose of showing Ms. Bright’s state of mind, not for its factual content. Therefore, it carries little weight. Moreover, the Court found Ms. Bright’s testimony incredible and self-serving. Because Mr. Bright presents no further evidence or argument regarding this

issue, the Court finds that he has not purged his contempt regarding these documents.

D. Civil Contempt Sanctions

Because the Court finds that the Brights are still in contempt, the Court now turns to the issue of fashioning an appropriate sanction to coerce their compliance. Courts have the inherent power to enforce their orders by imposing civil contempt sanctions. Shillitani v. United States, 384 U.S. 364, 370 (1966). A court may use civil contempt sanctions "for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." United States v. United Mine Workers, 330 U.S. 258, 303-04 (1947) (citation omitted). When compliance is intended, courts "must consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." Id. at 304.

The paradigmatic civil contempt sanction "involves confining a contemnor indefinitely until he complies with an affirmative command." Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 828 (1994). "Imprisonment for a fixed term similarly is coercive when the contemnor is given the option of earlier release if he complies." Id. (citation omitted). Another common civil contempt sanction "is a per diem fine imposed for each day a contemnor fails to comply with an

affirmative court order." United States v. Ayres, 166 F.3d 991, 995 (9th Cir. 1999) (citation omitted).

The Government asks that the Court incarcerate the Brights until they either produce the outstanding documents or satisfy their burden of showing a present inability to comply. The Government also asks that the Court continue the daily fines and impose compensatory sanctions.

The Brights have consistently said that they will do whatever the Court asks to obtain responsive documents. Just as consistently, the Brights have failed to live up to their word. Monetary sanctions have not coerced the Brights to comply so far, and at this point the Court doubts that any sanction short of incarceration will coerce the Brights to comply.

Before recommending that the district court imprison the Brights, the Court finds that an intermediate step is appropriate. The Government calculates that Cherie and Benjamin Bright are $57,750 and $34,500 in arrears, respectively, for the period of March 6 through May 13, 2009. (United States' Closing Argument Regarding the May 13, 2009 Evidentiary Hr'g 10.) The Government also calculates that the Brights jointly owe an additional $45,000. (United States' Closing Argument Regarding the May 13, 2009 Evidentiary Hr'g 10.) The Court suggests that the Government seek to forfeit the Brights' assets to satisfy the arrearage if they fail to pay the overdue fines within thirty days of the issuance of this order. Should the Brights fail

satisfy their burden of production within this period, the Government may again request that the Brights be incarcerated. The Brights' fines shall stay at their current level during this period.

IV. Conclusion

Based on the foregoing, the Court DENIES Cheri Bright's Motion to Purge Contempt. The Brights have thirty days from the issuance of this order to pay the overdue fines and satisfy their burden of production. If they fail to do so, the Government may seek to forfeit their assets to satisfy the arrearage and move to incarcerate the Brights until they satisfy their burden of production.

IT IS SO FOUND AND RECOMMENDED.

Dated: Honolulu, Hawaii, June 4, 2009.




Kevin S.C. Chang
United States Magistrate Judge

CIVIL NO. 07-00311 ACK-KSC; USA vs. CHERIE J. BRIGHT and BENJAMIN K. BRIGHT; FINDINGS AND RECOMMENDATION REGARDING EVIDENTIARY HEARING HELD ON MAY 13, 2009, AND ORDER DENYING RESPONDENT CHERI BRIGHT'S MOTION TO PURGE CONTEMPT (Doc. No. 159)