IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Petitioner,<br><br>    vs.<br><br>CHERIE J. BRIGHT and<br>BENJAMIN K. BRIGHT,<br><br>        Respondents. | )  Civ. No. 07-00311 ACK-KSC<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

ORDER ADOPTING AS MODIFIED THE MAGISTRATE JUDGE'S FINDINGS AND
RECOMMENDATION TO GRANT IN PART AND DENY IN PART THE UNITED
STATES'S MOTION FOR FURTHER CIVIL CONTEMPT SANCTIONS

BACKGROUND

On February 27, 2009, the Court issued an order finding
that Respondents, Cherie J. Bright and Benjamin K. Bright,
largely remained in contempt of its prior order, entered
September 11, 2007 ("Summons Order"),[1] enforcing two Internal
Revenue Service ("IRS") summonses ("Summonses").  United States
v. Bright ("Bright I"), Civ. No. 07-00311 ACK-KSC, 2009 U.S.
Dist. LEXIS 15915, at *17-*39 (D. Haw. Feb. 27, 2009).  The
Summonses required Respondents to produce documents relating to
their federal income tax liability for 2002 and 2003.  Id. at *2.

_____

[1] United States v. Bright, Civ. No. 07-00311 ACK-KSC, 2007
U.S. Dist. LEXIS 67306 (D. Haw. Sept. 11, 2007) (Summons Order).
The Court initially found that Respondents were in contempt of
the Summons Order on August 20, 2008 ("Contempt Order").  United
States v. Bright, Civ. No. 07-00311 ACK-KSC, 2008 U.S. Dist.
LEXIS 64219, at *8-*24 (D. Haw. Aug. 20, 2008).

They were originally served on June 19, 2007.  <u>Id.</u>  In the February 27, 2009 order, the Court found that Respondents had neither produced documents requested in certain paragraphs of the Summonses nor adequately explained why they were unable to produce such documents.  <u>Id.</u> at *17-*39.  Accordingly, the Court increased the daily fine on Ms. Bright from $500 to $750, retained Mr. Bright's daily fine of $500, and awarded Petitioner, the United States of America, compensatory sanctions.  <u>Id.</u> at *39-*46.

On May 13, 2009, Magistrate Judge Kevin S.C. Chang held an evidentiary hearing.  On June 4, 2009, he entered a findings and recommendation ("F&R") indicating that Respondents remained in contempt of the Summons Order.  <u>United States v. Bright</u> <u>("Bright II")</u>, Civ. No. 07-00311 ACK-KSC, 2009 U.S. Dist. LEXIS 70911, at *5-*18 (D. Haw. Jun. 4, 2009).  He explained that they were in arrears of their monetary sanctions.  <u>Id.</u> at *20-*21. Judge Chang therefore recommended that the United States seek to forfeit Respondents' assets to satisfy the arrearage if they failed to pay the overdue fines within thirty days.  <u>Id.</u> at *21. He noted that, if they failed to do so, the United States could request that the Brights be incarcerated.  <u>Id.</u>  He also recommended that Respondents' daily fines remain at their current level during the thirty-day period.  <u>Id.</u>  On June 24, 2009, this Court adopted the F&R.

On July 9, 2009, the United States filed a motion for further civil contempt sanctions ("U.S.'s Mot."), requesting that the Court order Respondents' incarceration and reinstate daily fines until they produce the remaining outstanding documents under the Summonses or meet their burden of showing that they have a present inability to comply.  U.S.'s Mot. 1-3.  The United States also asked that the Court continue to impose compensatory sanctions against Respondents in the form of its reasonable attorney's fees and costs incurred as a result of attempting to obtain compliance with the Summons Order.  Id. at 3.  Also on July 9, 2009, Judge Chang set the hearing on the motion for August 10, 2009.

Four days before the hearing, on August 6, 2009, Ms. Bright filed a supplemental declaration ("Ms. Bright's Decl.") along with a number of exhibits.  The next day, Mr. Bright filed a supplemental declaration ("Mr. Bright's Decl.") accompanied by a number of exhibits.[2/]  On August 10, 2009, Judge Chang held a hearing on the United States's motion as to Ms. Bright.  He had to continue the hearing as to Mr. Bright to the next day because Mr. Bright's counsel failed to appear at the hearing.  On August 11, 2009, Judge Chang held a hearing as to Mr. Bright and thereafter issued an F&R ("8/11/09 F&R") indicating that

---

[2/] As Judge Chang observed in his August 7 and 10, 2009 minute orders, Respondents' last-minute submissions are completely unacceptable.

Respondents remained in contempt of the Summons Order.  8/11/09 F&R 6-8.  He recommended that this Court reinstate the daily fines against Respondents, continue to impose compensatory sanctions, and incarcerate Ms. Bright but not Mr. Bright.  Id. at 8-11.[3]

On August 20, 2009, Mr. Bright filed objections to the August 11, 2009 F&R ("Mr. Bright's Objs.").  On August 21, 2009, Ms. Bright filed objections to the F&R ("Ms. Bright's Objs.").  On August 27, 2009, the United States filed responses to Respondents' objections (respectively, "U.S.'s Resp. to Ms. Bright's Objs." and "U.S.'s Resp. to Mr. Bright's Objs.").[4]

---

[3] Judge Chang noted that, if Mr. Bright requests the Court to purge his contempt, he should file an appropriately supported motion seeking relief under the circumstances.  8/11/09 F&R 9 n.5.  Mr. Bright has consequently filed a motion for purgation.

[4] The Court notes that, in her objections, Ms. Bright requests purgation.  The Court has reviewed the evidence that was before Judge Chang and has determined that she is not entitled to purgation.  Nevertheless, on September 8, 2009, Ms. Bright filed a reply in which she provides additional evidence in support of her request for purgation.  Thereafter, the United States filed response to her reply and she filed a reply to the United States's response.  The Court declines to review any additional evidence at this juncture.  28 U.S.C. § 636(b)(1).  If Ms. Bright feels that she is entitled to purgation in light of the additional evidence, she should file a separate motion.

## STANDARD OF REVIEW

A district court reviews de novo those portions of a magistrate judge's F&R to which an objection is made and may accept, reject, or modify, in whole or in part, the findings and recommendation made by the magistrate judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Rule 74.2 of the Local Rules of Practice of the United States District Court for the District of Hawaii ("Local Rules"). The district court may receive further evidence or recommit the matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1). It may also consider the record developed before the magistrate judge. Local Rule 74.2. The district court must arrive at its own independent conclusions about those portions of the magistrate judge's report to which objections are made, but a de novo hearing is not required. United States v. Remsing, 874 F.2d 614, 618 (9th Cir. 1989). The Court finds that a hearing in this matter is neither necessary nor appropriate.

## DISCUSSION

### I.   Civil Contempt

Respondents object to Judge Chang's finding that they remain in contempt of the Summons Order. The Court will first set out the legal standards governing civil contempt and then consider whether Respondents have purged their contempt.

5

## A.    Legal Standards

Civil contempt occurs when a party disobeys a specific and definite court order by failing to take all reasonable steps within his power to comply.  Reno Air Racing Ass'n v. McCord, 452 F.3d 1126, 1130 (9th Cir. 2006).  He may purge his contempt by demonstrating that he has substantially complied with the order, see In re Dual-Deck Video Cassette Recorder Antitrust Litig., 10 F.3d 693, 695 (9th Cir. 1993), or by producing evidence of a present inability to comply, see United States v. Drollinger, 80 F.3d 389, 393-94 (9th Cir. 1996) (per curiam).  The latter showing is known as the "impossibility" defense.  Federal Trade Comm'n v. Affordable Media, LLC, 179 F.3d 1228, 1240 (9th Cir. 1999).

In order to establish the defense, a contemnor must come forward with evidence that he has taken all reasonable steps within his power to comply.  Cf. Reno Air Racing, 452 F.3d at 1130.  Such evidence must be credible under the circumstances, for a contemnor cannot satisfy his burden of production "by evidence or by his own denials which the court finds incredible in context."  Maggio v. Zeitz, 333 U.S. 56, 75-76 (1948); accord Huber v. Marine Midland Bank, 51 F.3d 5, 10 (2d Cir. 1995); United States v. Sorrells, 877 F.2d 346, 349 (5th Cir. 1989); cf. Commodity Futures Trading Comm'n v. Wellington Precious Metals, Inc., 950 F.2d 1525, 1530 (11th Cir. 1992) (per curiam).  He is

6

not worthy of belief unless he can show "'categorically and in detail' why he is unable to comply." <u>Affordable Media</u>, 179 F.3d at 1241 (quoting <u>Nat'l Labor Relations Bd. v. Trans Ocean Export Packing, Inc.</u>, 473 F.2d 612, 616 (9th Cir. 1973)).  In other words, his explanation must be sufficiently specific such that his inability clearly appears.  <u>See</u> <u>Cutting v. Van Fleet</u>, 252 F. 100, 102 (9th Cir. 1918), <u>cited in</u> <u>Trans Ocean Export Packing</u>, 473 F.2d at 616.[5/]

**B.   Outstanding Documents**

With the foregoing principles in mind, the Court will now conduct a de novo review of whether Respondents remain in contempt of the Summons Order.  <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Local Rule 74.2.  The Court will structure its analysis around the paragraphs of the Summonses for which documents remain outstanding.

**1.   Paragraph 1:  Offshore Credit Cards**

In paragraph 1 of the Summonses, the IRS asked Respondents to produce all records for the years beginning January 1, 2001 to the date of the Summonses relating to credit cards issued by MasterCard ending in 7755 and 0496 and any other offshore credit cards, including (a) card applications, (b) monthly or periodic charge statements, (c) charge receipts, (d)

---

[5/] For further discussion of civil contempt standards, see <u>Bright I</u>, 2009 U.S. Dist. LEXIS 15915, at *13-*17.

cash advance confirmations, (d) payments and/or funds transferred to pay for balances due, and (e) correspondence.  Bright I, 2009 U.S. Dist. LEXIS 15915, at *2, *17.  This paragraph also covers certain credit cards ending in 7763 and 0690.  Id. at *17–*18.  Mr. Bright has purged his contempt regarding these cards.  Bright II, 2009 U.S. Dist. LEXIS 70911, at *8.  The question is whether Ms. Bright has likewise purged her contempt.

The credit card ending in 0496 was issued by Butterfield Bank.  Id. at *8.  In the June 4, 2009 F&R, Judge Chang found that Ms. Bright had not produced (1) credit card statements for June through September of 2003 and September of 2004 and (2) the credit card application.  Id.  Ms. Bright has testified that she has contacted Butterfield Bank in an attempt to obtain records.  Ms. Bright's Decl. ¶ 11.  She has produced an e-mail message dated June 29, 2009, in which she requested the missing statements and application.  Id., Ex. J at 2–3.  By letter dated August 3, 2009, Butterfield Bank sent a credit card statement for September 2004.  Id., Ex. K at 1, 4.  The bank explained that it was unable to provide statements for June through September 2003 because there was no activity on the card and its system does not generate statements when there is no activity on a card.  Id. at 1.  Based on Ms. Bright's most recent production, the only item that remains outstanding regarding the credit card ending in 0496 would appear to be the credit card

8

application.  The United States does not argue otherwise.  <u>See</u> U.S.'s Resp. to Ms. Bright's Objs. 7-9.

The credit cards ending in 7755 and 0690 were issued by Hallmark Bank and Trust Ltd. ("Hallmark Bank").  Ms. Bright's Decl., Ex. B at 1.  In addition, although the credit card ending in 7763 was previously thought to have been issued by Asia Pacific Mutual Insurance Company ("Asia Pacific"), it now appears that the card was issued by Hallmark Bank.  <u>Compare</u> Ms. Bright's Decl., Ex. B, <u>with</u> Ms. Bright's Objs., Ex. A.  In his June 4, 2009 F&R, Judge Chang found that Ms. Bright had not produced any documents relating to the credit cards ending in 7755 and 0690.  <u>Bright II</u>, 2009 U.S. Dist. LEXIS 70911, at *9-*10.  He further found that Ms. Bright had only produced credit card statements for the card ending in 7763 from January 2002 through October 2003.  <u>Id.</u> at *10.  However, she had not produced statements after October 2003 or the credit card application.  <u>Id.</u> at *10-*11.  In her objections, Ms. Bright notes that Hallmark Bank uses an intermediate processor called Fiserve.  Ms. Bright's Objs. 2 n.1.  She has subpoenaed records from Fiserve and is awaiting its production.  <u>Id.</u>  By e-mail dated August 19, 2009, Fiserve indicated that it has located documents for the credit cards ending in 7755, 0690, and 7763 and that it will be in a position to produce the information.  <u>See id.</u>, Exs. A & B.  The

United States reports that Ms. Bright has yet to produce such
documents.  U.S.'s Resp. to Ms. Bright's Objs. 7.

    The Court finds that Ms. Bright remains in contempt of
the Summons Order with respect to the offshore credit card
records.  While it appears that she is in the process of taking
additional steps to produce outstanding documents,[6] she has yet
to produce those documents.  U.S.'s Resp. to Ms. Bright's
Objs. 7-8.  Furthermore, the fact that Ms. Bright is in the
process of taking those steps illustrates that she has not taken
all reasonable steps within her power to comply.  Thus, she has

_____

    [6] The Court notes that Ms. Bright has testified that she
has taken additional steps to produce the credit card documents.
She asserts that, on July 2, 2009, she authorized one of her
attorneys to retain counsel in the Turks and Caicos Islands to
obtain credit card records.  Ms. Bright's Decl. ¶ 5.  Her counsel
in the Turks and Caicos advised that, given the local laws
regarding financial privacy, the most productive way to obtain
records would be to subpoena them directly from MasterCard.  Id.
She therefore subpoenaed the Hallmark Bank records that are at
issue in this case from MasterCard.  Id.  By letter dated July
28, 2009, MasterCard informed Ms. Bright that it does not
maintain accounts or have individual customer relationships with
cardholders who hold MasterCard-branded cards issued by banks and
that such information is maintained by the banks that issued the
cards.  Id., Ex. C.
    In addition, Ms. Bright testified that she went through all
of the credit card statements that she had previously produced
and obtained the names of all merchants with whom she had
transactions.  Ms. Bright's Decl. ¶ 6.  She made a list of those
merchants, sent out letters to all of the ones for whom she was
able to find addresses, and requested copies of all charge slips
on all credit cards that are at issue here.  Id.  Ms. Bright
received written responses from a few merchants and telephone
calls from others.  Id.  She testified that, due to the age of
the transactions, the merchants were unable to provide her with a
list of additional potential transactions.  Id.

not purged her contempt of the Summons Order with respect to paragraph 1 of the Summonses.

### 2.   Paragraph 4:  Colony Mortgage and Other Loans

Paragraph 4 of the Summonses required Respondents to produce, for each loan made or obtained during 2001 to the date of the Summonses or that was in existence during 2001 to the date of the Summonses, all documents evidencing the terms and performance, including (a) loan applications, (b) correspondence, and (c) loan documents received from Colony Mortgage Company Limited dated May 22, 2002, as well as any other documents from the entity.  Bright I, 2009 U.S. Dist. LEXIS 15915, at *24.  Ms. Bright has explained that Colony Mortgage is a company operated by Colin Chaffe.  Id. at *25.  She previously claimed that she had a present inability to comply in part because Mr. Chaffe had refused to cooperate in her efforts to obtain documents and ceased responding to her requests for information.  See id. at *19-*21.  The United States explains that the outstanding documents relate to monies Respondents received prior to the purported loan dated May 22, 2002.  U.S. Resp. to Mr. Bright's Objs. 3.

By e-mail dated June 12, 2009, Ms. Bright contacted Trident Corporate Services regarding the Colony Mortgage loan documents.  Ms. Bright's Decl., Ex. G at 1.  She has produced a letter dated June 22, 2009 from Mr. Chaffe, in which he stated

11

that he had previously provided all loan documentation regarding loans made by Colony Mortgage to Respondents. <u>Id.</u>, Ex. H at 1. He further explained that he had searched all of Colony Mortgage's company records and found no loan applications, correspondence, or other documents. <u>Id.</u> Mr. Chaffe noted that Colony Mortgage probably lost or misplaced executed loan documents. <u>Id.</u> at 1-2. He suggested that Ms. Bright contact Gary Shigemura to request a copy of documents because Mr. Shigemura was previously responsible for drafting Colony Mortgage loan documents. <u>Id.</u> at 2. Finally, Mr. Chaffe asked Ms. Bright if she would agree to sign new mortgage documents regarding the loan. <u>Id.</u> With respect to Mr. Bright, Mr. Chaffe noted that Mr. Bright was not a party to any loan documents prior to May 22, 2002. <u>Id.</u> at 1. Ms. Bright states that, after receiving Mr. Chaffe's letter, she contacted Mr. Shigemura to see whether he has any documents. Ms. Bright's Decl. ¶ 9.

The United States reports that Ms. Bright has yet to produce the pre-May 22, 2002 loan documents. U.S.'s Resp. to Ms. Bright's Objs. 9-10. It notes that Ms. Bright has not provided any newly-signed loan documents or disclosed whether she has rejected Mr. Chaffe's offer. <u>Id.</u> at 10. The United States also points out that Ms. Bright has not provided any response from Mr. Shigemura. <u>Id.</u> The Court finds that Ms. Bright remains in contempt of the Summons order with respect to the Colony Mortgage

loan documents.  She has not come into compliance, but she is in the process of attempting to do so.  The fact that she is currently taking additional steps to achieve compliance demonstrates that she has yet to take all reasonable steps within her power to produce the documents.  Accordingly, Ms. Bright has not purged her contempt of the Summons Order with respect to paragraph 4 of the Summonses.

With respect to Mr. Bright, the United States notes that, if Mr. Chaffe's statement that Mr. Bright was not a party to any loan documents prior to May 22, 2002 proves to be true, then he should be deemed to have satisfied his burden.  U.S.'s Resp. to Mr. Bright's Objs. 4.  However, the United States asserts that, because none of the documents regarding the pre-May 22, 2002 loan have been produced to verify that he was not a party to it, he should still be responsible for the documents until he can be proven that he has no ability to obtain them. Id.

The Court finds that the letter from Mr. Chaffe does tend to show that Mr. Bright has a present inability to produce the pre-May 22, 2002 Colony Mortgage documents.  However, the United States objects to the letter on the ground that it is unauthenticated and contains hearsay.  Id. at 3 n.1. Nevertheless, even if the letter is inadmissible, Mr. Bright has testified in his December 8, 2008 declaration that, although he

13

signed a promissory note and mortgage with Colony Mortgage (the May 22, 2002 loan), that was the extent of his involvement with Colony Mortgage.  The Court finds that Mr. Bright has purged his contempt with respect to the pre-May 22, 2002 Colony Mortgage documents.

### 3.   Paragraph 10:   Asia Pacific Insurance Claim

Paragraph 10 of the Summonses concerns insurance claim information for payments received from Asia Pacific and requires production of (a) applications for insurance, (b) all insurance policies, (c) correspondence, (d) claims for insurance reimbursement, and (e) insurance company settlement reports. Bright I, 2009 U.S. Dist. LEXIS 15915, at *3.  Asia Pacific is presently in liquidation.  Ms. Bright's Decl., Ex. A.  In his June 4, 2009 F&R, Judge Chang found that Respondents had not produced the insurance application or correspondence.  Bright II, 2009 U.S. Dist. LEXIS 70911, at *14-*15.

With respect to the correspondence, this Court previously found that a letter from Asia Pacific's former CEO, Lindsay Barrett, indicated that Asia Pacific does not have a copy of Ms. Bright's insurance application and that "there is no relevant correspondence in relation to the policy." Bright I, 2009 U.S. Dist. LEXIS 15915, at *32.  This statement implied that there might be some correspondence, so the Court found that Respondents should obtain all correspondence from Asia Pacific.

14

Id.  Consequently, Ms. Bright has made a request to Mr. Barrett regarding correspondence.  Ms. Bright's Decl. ¶ 4.  Mr. Barrett responded that his use of the word "relevant" was not meant to imply that there were "further correspondence" and that "[t]here simply is none."  Id., Ex. A.  In addition, Asia Pacific's liquidator sent Ms. Bright a letter dated July 3, 2009, stating that "[w]e have reviewed all the company files on hand and confirm that apart from the copies of correspondence that Mr. Barrett had already sent to you, we have no other correspondence in relation to your insurance policy."  Id., Ex. F.  The United States correctly observes that these letters indicate that Mr. Barrett has previously provided Ms. Bright with correspondence regarding her insurance policy.  U.S.'s Resp. to Ms. Bright's Objs. 11–12.  The United States asserts that Ms. Bright has yet to produce any correspondence from Asia Pacific.  Id. at 12.  The Court finds that Respondents must produce the correspondence or establish that none exists.

    With respect to the insurance application, Ms. Bright testified that she cannot locate a copy of the application and that she has contacted Asia Pacific regarding the matter.  Ms. Bright's Decl. ¶ 7.  By letter dated July 3, 2009, Asia Pacific explained that it had searched through all of the company records on hand and in storage, but that it could not find the application.  Id., Ex. F.  It did, however, provide Ms. Bright

with a copy of the form used for applications.  Id., Ex. E.  The
United States observes that, in this Court's February 27, 2009
order, it directed Ms. Bright to provide a specific explanation
of what steps, if any, she has taken to locate any insurance
application to verify the accuracy of her representation that she
is not in possession of the application.  U.S.'s Resp. to Ms.
Bright's Objs. 10-11; Bright I, 2009 U.S. Dist. LEXIS 15915,
at *27.  The United States asserts that Ms. Bright has failed to
do so even though she had the opportunity at the May 13, 2009
evidentiary hearing as well as in subsequent declarations.  U.S.
Resp. to Ms. Bright's Objs. 11; see also Bright II, 2009 U.S.
Dist. LEXIS 70911, at *15 ("During the evidentiary hearing, Ms.
Bright gave a cursory and wholly unsatisfactory account of her
efforts to verify that she did not have a copy of the insurance
application.  Without more, the Court finds that she has not
satisfied her burden in this regard."); Ms. Bright's Decl. ¶¶ 7-8
(stating that Ms. Bright could not find her Asia Pacific
insurance application and noting that Mr. Bright could not find a
copy of the application in his records, but not setting out the
steps that Ms. Bright has herself taken to locate the
application).  The Court agrees with the United States that Ms.
Bright has not established a present inability to comply with
respect to the insurance application.

For his part, Mr. Bright contends that a letter from Mr. Barrett that was "accepted into the record" at the May 13, 2009 evidentiary hearing shows that he is not a policy holder regarding the Asia Pacific insurance policy.  Mr. Bright's Objs. 6.  Mr. Bright also points out that Ms. Bright testified at the hearing that she was the sole applicant for the policy.  Id. However, in his June 4, 2009 F&R, Judge Chang explained that the letter was admitted only for the purpose of showing Ms. Bright's state of mind, not for its factual content.  Bright II, 2009 U.S. Dist. LEXIS 70911, at *18.  He further found Ms. Bright's testimony incredible and self-serving.  Id.  Mr. Bright did not object to Judge Chang's June 4, 2009 F&R and it was thereafter adopted by this Court.  If he wishes to clarify these issues, he should do so by filing a motion to purge his contempt with appropriate supporting documentation.  In view of the foregoing, the Court finds that Respondents have not purged their contempt with respect to paragraph 10 of the Summonses.

### 4.    Paragraph 11:  Scholarships, Grants, and Other Financial Aid

Paragraph 11 of the Summonses required that Respondents produce all documentation relating to scholarships, grants, or other financial aid received or paid on behalf of their family, including payments from Mr. Chaffe, Wealthshare Foundation ("Wealthshare"), and Maestro Management, Limited ("Maestro Management").  Bright I, 2009 U.S. Dist. LEXIS 15915, at *34.  It

17

appears that both companies are operated by Mr. Chaffe.  Id. at *19, *34-*35.  In his June 4, 2009 F&R, Judge Chang found that documents remain outstanding with respect to this paragraph. Bright II, 2009 U.S. Dist. LEXIS 70911, at *16-*17.

Ms. Bright has provided a declaration by her son, Kalani Bright, because he was the only scholarship recipient. Ms. Bright's Decl. ¶ 10.  In his declaration, Kalani Bright stated that he received scholarships during his time as a student at the Art Institute of California, but he had no records of those scholarships.  Id., Ex. I at 2.  He stated that he authorized the Art Institute to turn all of his financial records over to his attorney, Christopher Cannon, who is also Ms. Bright's attorney.  Id.  Ms. Bright notes that she knows of no one other than Mr. Chaffe, Nicola Jordan, and Wealthshare who would have access to her son's Wealthshare Scholarship records. Ms. Bright's Decl. ¶ 10.  By letter dated June 6, 2009, Mr. Bright asked Mr. Chaffe to provide documents relating to Kalani Bright's Wealthshare scholarship.  Mr. Bright's Decl., Ex. B.  In response, he received copies of Wealthshare checks dated July 9, 2003, November 3, 2003, and November 18, 2004.  Id., Ex. I. However, Mr. Bright did not explain how or when Mr. Chaffe responded to his request.

The United States asserts that the checks that Mr. Bright has produced were previously provided to the government.

18

U.S.'s Resp. to Mr. Bright's Objs. 6.  Given that Respondents have not produced any new documents, it would appear that they have yet to achieve compliance with respect to the scholarship documents.  Nor have they established a present inability to comply.  While Mr. Chaffe has previously refused to respond to Ms. Bright's requests for information, see Bright I, 2009 U.S. Dist. LEXIS 15915, at *19, he recently replied to her request for information regarding Colony Mortgage by letter dated June 22, 2009, see Ms. Bright's Decl., Ex. H at 1, and he also responded to Mr. Bright's request for information regarding the scholarship documents by producing checks, Mr. Bright's Decl., Ex. I. Respondents should contact Mr. Chaffe as well as Ms. Jordan to request additional documents regarding their son's Wealthshare scholarship records.[7/]  The Court finds that Respondents have not

_____

[7/] If Mr. Chaffe refuses to provide documents in response to Respondents' requests as he has done in the past, then Ms. Bright may have to explain her relationship with Mr. Chaffe and his entities.  See Bright I, 2009 U.S. Dist. LEXIS 15915, at *24 n.5. As the United States observes, the reason for such testimony is not that it was requested as part of the Summonses, but that it is a way for Ms. Bright to potentially meet her burden of showing that she has a present inability to comply.  U.S.'s Resp. to Ms. Bright's Objs. 9 n.3.  In addition, Ms. Bright may have to explore and pursue her legal avenues in order to obtain the documents that she must produce as she has done with respect to the outstanding credit card documents.  See Bright I, 2009 U.S. Dist. LEXIS 15915, at *24 n.5; see supra note 3.  It is presently unclear whether Mr. Bright has any relationship with Mr. Chaffe or his entities, see Mr. Bright's Objs. 3-4, but the Court need not decide that question at this time because Mr. Chaffe appears to have been responsive to Mr. Bright's most recent request for information, see Mr. Bright's Decl., Ex. I.

purged their contempt with respect to paragraph 11 of the Summonses.

## II.  Sanctions

Having found that Respondents remain in contempt of Summons Order, the question becomes whether the coercive and compensatory sanctions recommended by Judge Chang are appropriate.

"'[C]ivil contempt sanctions, or those penalties designed to compel future compliance with a court order, are considered to be coercive and avoidable through obedience.'" United States v. Ayres, 166 F.3d 991, 995 (9th Cir. 1999) (quoting Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 827 (1994)); see also Koninklijke Philips v. KXD Tech., Inc., 539 F.3d 1039, 1042 (9th Cir. 2008).  To determine the size and duration of coercive sanctions, the court must consider the "'character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired.'"  Whittaker Corp. v. Execuair Corp., 953 F.2d 510, 517 (9th Cir. 1992) (quoting United States v. United Mine Workers of Am., 330 U.S. 258, 303-04 (1947)).  "One of the paradigmatic civil contempt sanctions 'is a per diem fine imposed for each day a contemnor fails to comply with an affirmative court order.'"  Ayres, 166 F.3d at 995 (quoting Bagwell, 512 U.S. at 827).  Courts also have the

20

authority to order a contemnor's imprisonment to coerce compliance.  See Bagwell, 512 U.S. at 829.  "Generally, the minimum sanction necessary to obtain compliance is to be imposed."  Whittaker, 953 F.2d at 517; A.V. by Versace, Inc. v. Gianni Versace, S.p.A., 279 F. Supp. 2d 341, 355 (S.D.N.Y. 2003) (indicating that, where coercive fines have proven ineffective, the stronger sanction of imprisonment may be appropriate).

In addition to imposing coercive sanctions, a court may award compensatory sanctions "to compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior."  Gen. Signal Corp. v. Donallco, Inc., 787 F.2d 1376, 1380 (9th Cir. 1986).  The amount of compensatory sanctions is governed by the actual losses sustained by the moving party as a result of the contemptuous resistance.  Id.; see also United Mine Workers of Am., 330 U.S. at 304 (noting that a compensatory fine must "be based upon evidence of complainant's actual loss").

In his August 11, 2009 F&R, Judge Chang noted that Respondents have yet to pay their overdue fines[8] or satisfy their burden of production.  8/11/09 F&R 5.  He therefore concluded that the imposition of further sanctions was both necessary and appropriate.  Id.  With respect to monetary

_____

[8] In his June 4, 2009 F&R, Judge Chang explained that the United States calculated that Ms. and Mr. Bright were $57,750 and $34,500 in arrears, respectively, for the period of March 6 through May 13, 2009.  Bright II, 2009 U.S. Dist. LEXIS 70911, at *20.

sanctions, in his June 4, 2009 F&R, Judge Chang recommended that Respondents' daily fines "stay at their current level."  Bright II, 2009 U.S. Dist. LEXIS 70911, at *21.  At that point, Ms. Bright had a daily fine of $750 and Mr. Bright had a daily fine of $500.  Bright I, 2009 U.S. Dist. LEXIS 15915, at *44-*45.  In its motion for further sanctions, the United States requested that the Court "reinstate the daily fines against [R]espondents," U.S.'s Mot. 3, and Judge Chang consequently recommended that this Court reinstate the daily fines, 8/11/09 F&R 8.  Judge Chang also recommended that the Court continue to impose compensatory sanctions incurred by the United States that have resulted from its efforts to obtain compliance.  Id.  To this Court's knowledge, the coercive daily fines were never discontinued.

Judge Chang noted that Respondents asserted in their supplemental declarations that they were unable to pay daily fines.  8/11/09 F&R 8-9; Ms. Bright's Decl. ¶ 14; Mr. Bright's Decl. ¶ 17.  However, he concluded that Respondents have not submitted any documentation to substantiate their bald conclusory statements regarding their purported indigence.  8/11/09 F&R 9. He also determined that Respondents have not provided any evidence of any attempts they have made to secure funds to pay their outstanding fines.  Id.  He therefore recommended that, until Respondents submit additional concrete evidence of their inability to pay the daily fines, the fines remain in effect.

22

Id.  The Court concludes that the daily coercive sanctions of $750 as to Ms. Bright and $500 as to Mr. Bright remain appropriate.  The Court also agrees with Judge Chang that continuing compensatory sanctions is proper.[9/]

Judge Chang also recommended that the Court order Ms. Bright's incarceration.  8/11/09 F&R 9-11.  He perceived this sanction to be a last resort, but noted that an increase in the daily fine would be futile, because Ms. Bright has stopped paying the fine.  Id. at 10.  He also observed that, even faced with the possibility of incarceration, Ms. Bright continued to ignore her obligations.  Id.  The Court agrees that incarceration should be a last resort and shares Judge Chang's frustration with the dilatory piecemeal responses by Respondents in an apparent endeavor to delay this proceeding as long as possible. Nevertheless, the Court believes that Ms. Bright has made some

---

[9/] Ms. Bright argues in effect that the Court should stay any sanctions pending her appeal of the Summons Order and the Contempt Order.  Ms. Bright's Mem. 10-11.  Ms. Bright previously filed a motion to stay this Court's order adopting Judge Chang's June 4, 2009 F&R.  Judge Chang denied the motion on July 14, 2009, and Ms. Bright did not appeal that decision to this Court. Nevertheless, Ms. Bright essentially maintains that the contempt sanctions should be stayed while her appeal is pending since her case has been scheduled for oral argument before the Ninth Circuit this coming October.  Yet she does not explain how the pendency of the oral argument would warrant a stay under the applicable legal standard.  See California Pharmacists Ass'n v. Maxwell-Jolly, 563 F.3d 847, 849-50 (9th Cir. 2009).  For that reason and for the reasons set forth in Judge Chang's July 14, 2009 order, the Court finds that Ms. Bright has not established that a stay of the contempt sanctions would be appropriate.

progress towards achieving compliance.  For example, since Judge
Chang issued his June 4, 2009 F&R, Ms. Bright has attempted to
obtain Hallmark Bank credit card documents from Fiserve and has
contacted and obtained a response from Mr. Chaffe regarding the
Colony Mortgage documents.  It appears that Mr. Chaffe is
somewhat cooperative in responding to Ms. Bright's request,
contrary to his earlier negative responses.  <u>See</u> <u>supra</u> Discussion
Section I.  Accordingly, the Court does not believe that
incarceration is appropriate at this time.  However, Ms. Bright
should understand that the Court will not countenance piecemeal
performance, especially where records could and should have been
produced a long time ago.  The United States may move for an
order of incarceration if Ms. Bright does not achieve compliance
or establish a present inability to comply within twenty days
from the date of this order.

<u>**CONCLUSION**</u>

        The Court has made a de novo review of Respondents'
objections and, to the extent that Judge Chang's findings are not
explicitly otherwise modified in this Order and based on this
Court's independent review and assessment, agrees with his
findings.  Therefore, the Court adopts as modified hereinabove
Judge Chang's August 11, 2009 F&R and grants in part the United
States's motion for additional sanctions insofar as the United
States requests continuing monetary sanctions.

24

IT IS SO ORDERED.

Dated:  Honolulu, Hawaiʻi, September 15, 2009.



_____
Alan C. Kay
Sr. United States District Judge

United States v. Bright, Civ. No. 07-00311 ACK-KSC:  Order Adopting as Modified the Magistrate Judge's Findings and Recommendation to Grant in Part and Deny in Part the United States's Motion for Further Civil Contempt Sanctions