IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Civ. No. 07-00311 ACK-KSC |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CHERIE J. BRIGHT and | ) | |
| BENJAMIN K. BRIGHT, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

## ORDER AFFIRMING THE MAGISTRATE JUDGE'S ORDER GRANTING IN PART AND DENYING IN PART RESPONDENT CHERIE BRIGHT'S MOTION TO PURGE CONTEMPT AND REJECTING THE MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION TO INCARCERATE RESPONDENT CHERIE BRIGHT

### BACKGROUND

On February 27, 2009, the Court issued an order finding that Respondents Cherie J. Bright ("Ms. Bright" or "Respondent") and Benjamin K. Bright,[1] largely remained in contempt of its prior order, entered September 11, 2007 ("Summons Order"),[2] enforcing two Internal Revenue Service ("IRS") summonses ("Summons"). United States v. Bright ("Bright I"), Civ. No. 07-00311 ACK-KSC, 2009 U.S. Dist. LEXIS 15915, at *17-*39 (D.

---

[1] The instant objection is only by Respondent Cherie Bright.

[2] United States v. Bright, Civ. No. 07-00311 ACK-KSC, 2007 U.S. Dist. LEXIS 67306 (D. Haw. Sept. 11, 2007) (Summons Order). The Court initially found that Respondents were in contempt of the Summons Order on August 20, 2008 ("Contempt Order"). United States v. Bright, Civ. No. 07-00311 ACK-KSC, 2008 U.S. Dist. LEXIS 64219, at *8-*24 (D. Haw. Aug. 20, 2008).

Haw. Feb. 27, 2009).  The Summons required Respondent to produce documents relating to her federal income tax liability for 2002 and 2003.  Id. at *2.  Respondent was originally served on June 19, 2007.  Id.

On May 13, 2009, Magistrate Judge Kevin S.C. Chang held an evidentiary hearing.  On June 4, 2009, he entered a findings and recommendation ("6/4/09 F&R") indicating that Respondent remained in contempt of the Summons Order.  United States v. Bright ("Bright II"), Civ. No. 07-00311 ACK-KSC, 2009 U.S. Dist. LEXIS 70911, at *5-*18 (D. Haw. Jun. 4, 2009).

On July 9, 2009, Petitioner United States of America ("Petitioner" or "United States") filed a motion for further civil contempt sanctions ("U.S.'s July 9 Mot."), requesting that the Court order Respondent's incarceration and reinstate[3] daily fines until she produces the remaining outstanding documents under the Summons or meets her burden of showing that she has a present inability to comply.  U.S.'s July 9 Mot. at 1-3.  On August 10, 2009, Judge Chang held a hearing on the U.S.'s July 9 Mot. as to Respondent.  On August 11, 2009, Judge Chang issued an F&R ("8/11/09 F&R") to grant in part and deny in part the U.S.'s

---

[3] Although Petitioner requested that the Court reinstate the daily fines against Respondent, the Court observed in its 9/15/09 Order that the coercive daily fines were never discontinued and therefore the Petitioner was actually requesting that the Court continue to impose coercive daily fines.  See 9/15/09 Order at 22.

July 9 Mot., recommending that this Court reinstate[4/] the daily fines against Respondent, continue to impose compensatory sanctions, and incarcerate Respondent.  8/11/09 F&R at 8-11.  On August 21, 2009, Respondent objected to Judge Chang's 8/11/09 F&R.

On September 15, 2009, this Court issued an Order Adopting as Modified Judge Chang's 8/11/09 F&R ("9/15/09 Order"). In its 9/15/09 Order, the Court determined that Respondent had not purged her contempt with respect to paragraphs 1, 4, 10, and 11 of the Summons.  The Court observed that, "[w]hile it appears that [Respondent] is in the process of taking additional steps to produce outstanding documents, she has yet to produce those documents."  9/15/09 Order at 10.  With regard to the monetary sanctions, the Court held that "the daily coercive sanctions of $750 as to Ms. Bright . . . remain[s] appropriate," and that "continuing compensatory sanctions is proper."  Id. at 23.  As to incarceration, the Court remarked that "incarceration is not appropriate at this time.  However, Ms. Bright should understand that the Court will not countenance piecemeal performance, especially where records could and should have been produced a long time ago."  Id. at 24.  The Court concluded by noting that

---

[4/] As noted above, the Court never discontinued coercive daily fines and therefore Judge Chang was recommending that the Court continue to impose coercive daily fines.  See 9/15/09 Order at 22.

"[t]he United States may move for an order of incarceration if Ms. Bright does not achieve compliance or establish a present inability comply within twenty days from the date of this order." Id.

On September 29, 2009, Respondent filed a Motion to Purge Contempt ("Motion").  On September 30, 2009, Ms. Bright filed a First Supplemental Declaration.  On October 1, 2009, Ms. Bright filed a Second Supplemental Declaration.  On October 27, 2009, Petitioner filed a response to the Motion.  Respondent filed a Third Supplemental Declaration on November 5, 2009.  On November 12, 2009, Petitioner filed a Response to the Third Supplemental Declaration, as directed by Judge Chang.  Also on November 12, 2009, Respondent filed a Fourth Supplemental Declaration.  By way of Entering Order, Judge Chang informed Respondent that he would not consider this submission due to the untimeliness of the filing.  See Doc. No. 219.

On November 16, 2009, Judge Chang held a hearing on the Motion.  Later that day, Judge Chang issued an order granting in part, and denying in part, Respondent's Motion, as well as a findings and recommendation to incarcerate Respondent. ("11/16/09 F&R").  Judge Chang found that "Ms. Bright has purged her contempt as to 1) the credit cards ending in 7755, 0496, 0690; 2) the Asia Pacific documents; and 3) the Colony Mortgage documents.  She remains in contempt with respect to 1) the credit

4

card ending in 7763 and 2) Scholarship, financial aid, and grant documents." 11/16/09 F&R at 12.[5/]  With regard to sanctions, Judge Chang first observed that "Ms. Bright has failed to demonstrate an inability to pay the past due and current fines." Id. at 13.[6/]  He therefore held that a daily sanction of $750

---

[5/] Judge Chang further remarked:

> The Court is open to entertaining future motions
> to purge, but cautions Ms. Bright that it reserves
> the right to decline to hold a hearing until the
> request is adequately supported with concrete,
> admissible evidence that would support purgation.

11/16/09 F&R at 12 (citing United States v. Liddell, Civil No.
07-00310 SOM-KSC, docket no. 135).

[6/] As noted earlier, Judge Chang indicated that he would not
consider Ms. Bright's Fourth Supplemental Declaration.  Further,
in his 11/16/09 F&R, he explained:

> Even if the Court considered this supplemental
> declaration the ruling herein would not differ.
> Exhibit A to the declaration is comprised of
> documents, including but not limited to credit
> card, bank, and retirement account statements, tax
> liens, and property assessment.  These documents
> fall well short of establishing a true picture of
> Ms. Bright's financial situation, and her
> corresponding ability (or inability) to pay the
> monetary fines.  Of note, the submission lacks any
> evidence of Ms. Bright's income.  Considering her
> mortgage and the sizeable balances on the credit
> card statements provided, it would be critical to
> ascertain how Ms. Bright is able to pay these
> balances.  Ms. Bright has also failed to provide
> evidence of any attempts to secure funds to pay
> the outstanding fines.

11/16/09 F&R at 13 n.4.

continued to be appropriate.[7]   Moreover, because Ms. Bright has

not fully purged her contempt, Judge Chang again recommended that

Ms. Bright be incarcerated until she purges her contempt.   Id. at

14.   He reasoned that the long history of this case, in which Ms.

Bright has attempted to engage in piecemeal compliance, along

with her continued failure to produce the documents required

under the Summons, warrants incarceration.[8]   Judge Chang

explained in detail his reasons for recommending incarceration:

> This case has dragged on for over 2 years, during
> which the Court has provided numerous and repeated
> opportunities for Ms. Bright to comply and clear
> instruction regarding the steps she must take to
> purge her contempt.   Judge Kay declined to
> incarcerate Ms. Bright in part because she was
> taking steps to comply.   This Court acknowledges
> that some of Ms. Bright's efforts have resulted in
> purgation as to certain requested documents.
> However, it must be noted that her efforts still
> fall short, as she has yet to fully purge her
> contempt.   Under applicable law, it is not enough
> for Ms. Bright to engage in piecemeal compliance.
> Both this Court and Judge Kay have expended a
> substantial amount of time enforcing the Summons
> Order as a direct result of Ms. Bright's dilatory
> actions.   Her continued failure is inexcusable,
> and can only be addressed through incarceration.

---

[7] Respondent stated that Judge Chang "recommended that this
Court reinstate a coercive daily fine sanction from $500 . . . ."
Objections at 2.   As previously explained, in its 9/15/09 Order,
the Court observed that the coercive daily fines were never
discontinued and thus Judge Chang is not reinstating the coercive
daily fine, but rather holding that the coercive daily fine
continues to remain in effect.   9/15/09 Order at 22.

> Ms. Bright is delinquent on her monetary fine, and
> the imposition of the fine alone has been
> ineffective at obtaining her compliance.  Thus,
> incarceration, although a last resort, is
> necessary.  It is this Court's belief that Ms.
> Bright will not truly understand the seriousness
> and urgency of resolving this matter unless she is
> incarcerated, as the mere threat of incarceration
> has apparently failed to motivate her full
> compliance.

11/16/09 F&R at 15-16.

On November 25, 2009, Respondent filed objections to Judge Chang's 11/16/09 F&R ("Objections").  Respondent's Objections were accompanied by a declaration by Ms. Bright's son, Kalani Bright, regarding the scholarship funds ("Kalani Declaration").  On December 7, 2009, the United States filed a response to Respondent's objections ("Response").

## STANDARD OF REVIEW

Judge Chang's decision is comprised of an order on a non-dispositive matter (purging contempt) and a findings and recommendation (incarceration).  The standard of review for each is set forth below.

## I.   Non-Dispositive Pretrial Matters

Any party may appeal from a magistrate judge's order determining a non-dispositive pretrial matter or, if a reconsideration order has issued, the magistrate judge's reconsideration order on such a matter.  The district judge shall consider the appeal and shall set aside any portion of the magistrate judge's order found to be clearly erroneous or

7

contrary to law.  See D. Haw. Local Rule 74.1; see also 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).  The district judge may also reconsider sua sponte any matter determined by a magistrate judge.  See D. Haw. Local Rule 74.1.  "The clearly erroneous standard applies to the magistrate judge's factual findings while the contrary to law standard applies to the magistrate judge's legal conclusions, which are reviewed de novo." Columbia Pictures, Inc. v. Bunnell, 245 F.R.D. 443, 446 (C.D. Cal. 2007). Under the "clearly erroneous" standard, the magistrate judge's ruling must be accepted unless, after reviewing the entire record, this Court is "left with the definite and firm conviction that a mistake has been committed." United States v. Silverman, 861 F.2d 571, 576-77 (9th Cir. 1998).  The district judge may not simply substitute his or her judgment for that of the magistrate judge.  See Grimes v. City & County of San Francisco, 951 F.2d 236, 241 (9th Cir. 1991).  "'A decision is contrary to law if it applies an incorrect legal standard or fails to consider an element of the applicable standard.'" Na Pali Haweo Cmty. Ass'n v. Grande, 252 F.R.D. 672, 674 (D. Haw. 2008).  The decision to bifurcate a trial is reviewed for an abuse of discretion.  M2 Software, Inc. v. Madacy Entm't, 421 F.3d 1073, 1088 (9th Cir. 2005).

## II.   Findings and Recommendations

A district court reviews de novo those portions of a magistrate judge's findings and recommendation to which an objection is made and may accept, reject, or modify, in whole or in part, the findings and recommendation made by the magistrate judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); D. Haw. Local Rule 74.2.  The district court may accept those portions of the findings and recommendation that are not objected to if it is satisfied that there is no clear error on the face of the record. Stow v. Murashige, 288 F. Supp. 2d 1122, 1127 (D. Haw. 2003). The district court may receive further evidence or recommit the matter to the magistrate judge with instructions.  28 U.S.C. § 636(b)(1).  It may also consider the record developed before the magistrate judge.  D. Haw. Local Rule 74.2.  The district court must arrive at its own independent conclusions about those portions of the magistrate judge's report to which objections are made, but a de novo hearing is not required.  United States v. Remsing, 874 F.2d 614, 618 (9th Cir. 1989).

The Court finds that a hearing in this matter is neither necessary nor appropriate.  See D. Haw. Local Rule 7.2(d).

## DISCUSSION

### I.   Civil Contempt

Respondent appeals from Judge Chang's finding that she remains in contempt of the Summons Order.  The Court will first set out the legal standards governing civil contempt and then consider whether Respondent has purged her contempt.

### A.   Legal Standards

Civil contempt occurs when a party disobeys a specific and definite court order by failing to take all reasonable steps within his power to comply.  Reno Air Racing Ass'n v. McCord, 452 F.3d 1126, 1130 (9th Cir. 2006).  He may purge his contempt by demonstrating that he has substantially complied with the order, see In re Dual-Deck Video Cassette Recorder Antitrust Litig., 10 F.3d 693, 695 (9th Cir. 1993), or by producing evidence of a present inability to comply, see United States v. Drollinger, 80 F.3d 389, 393-94 (9th Cir. 1996) (per curiam).  The latter showing is known as the "impossibility" defense.  Federal Trade Comm'n v. Affordable Media, LLC, 179 F.3d 1228, 1240 (9th Cir. 1999).

In order to establish the defense, a contemnor must come forward with evidence that he has taken all reasonable steps within his power to comply.  Cf. Reno Air Racing, 452 F.3d at 1130.  Such evidence must be credible under the circumstances, for a contemnor cannot satisfy his burden of production "by

evidence or by his own denials which the court finds incredible in context." Maggio v. Zeitz, 333 U.S. 56, 75-76 (1948); accord Huber v. Marine Midland Bank, 51 F.3d 5, 10 (2d Cir. 1995); United States v. Sorrells, 877 F.2d 346, 349 (5th Cir. 1989); cf. Commodity Futures Trading Comm'n v. Wellington Precious Metals, Inc., 950 F.2d 1525, 1530 (11th Cir. 1992) (per curiam).  He is not worthy of belief unless he can show "'categorically and in detail' why he is unable to comply." Affordable Media, 179 F.3d at 1241 (quoting Nat'l Labor Relations Bd. v. Trans Ocean Export Packing, Inc., 473 F.2d 612, 616 (9th Cir. 1973)).  In other words, his explanation must be sufficiently specific such that his inability clearly appears.  See Cutting v. Van Fleet, 252 F. 100, 102 (9th Cir. 1918), cited in Trans Ocean Export Packing, 473 F.2d at 616.

**B.    Outstanding Documents**

With the foregoing principles in mind, the Court will review Judge Chang's determination that Respondent remains in contempt of the Summons Order to ascertain whether Judge Chang's decision is clearly erroneous or contrary to law.  See D. Haw. Local Rule 74.1; see also 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).  The Court will structure its analysis around the paragraphs of the Summons for which documents remain outstanding.

### 1.   Paragraph 1:  Offshore Credit Cards

In paragraph 1 of the Summons, the IRS asked Respondent
to produce all records for the years beginning January 1, 2001,
to the date of the Summons relating to credit cards issued by
MasterCard ending in 7755 and 0496 and any other offshore credit
cards, including (a) card applications, (b) monthly or periodic
charge statements, (c) charge receipts, (d) cash advance
confirmations, (e) payments and/or funds transferred to pay for
balances due, and (f) correspondence.  Bright I, 2009 U.S. Dist.
LEXIS 15915, at *2, *17.  This paragraph also covers certain
credit cards ending in 7763 and 0690.  Id. at *17–*18.[9/]  The
credit card ending in 0496 was issued by Butterfield Bank.  Id.
at *8.  The credit cards ending in 7755, 0690, and 7763 were
issued by Hallmark Bank and Trust Ltd. ("Hallmark Bank").
9/15/09 Order at 8.  In its 9/15/09 Order, the Court determined

---

[9/]  Respondent asserts that the card ending in 7763 was not
listed in her original summons and therefore she cannot be held
in contempt with regard to that card.  Further, she calls
attention to the Court's Order on August 20, 2008 ("8/20/08
Order"), in which the Court stated, "even if it were to modify
the F&R to exclude the [card ending in 7763] as a basis for
finding contempt, the ultimate finding of contempt would remain
undisturbed," because all of the other documents Respondent had
yet to produce.  8/20/09 F&R at 14-15.  Respondent argues that
now that the other documents have been mostly produced, the
reasoning behind the Court's previous Order is invalid.
Respondent fails to recognize, however, that the Court's
statement that excluding the 7763 card would be inconsequential
was merely an alternative basis for the Court's decision.  The
Court first concluded that the card ending in 7763 was included
in the Summons because the Summons requested documents regarding
"any other offshore credit cards."  Id. at 13.

that Ms. Bright had not purged her contempt with respect to paragraph 1.  Id. at 8-9.  Specifically, the Court noted that the application appeared to be the only outstanding item regarding the card ending in 0496, and that Ms. Bright was apparently taking additional steps to produce documents for the cards ending in 7755, 0690, and 7763.  Id.

Since the Court's 9/15/09 Order, Ms. Bright has obtained credit card statements and applications by subpoenaing Fiserv.[10/]  Motion, Exs. A & B; see also 11/16/09 F&R at 3. Thereafter, Respondent produced these documents to Petitioner. Id.  Respondent has also submitted an application from Butterfield bank for the card ending in 0496.  First Supplemental Declaration at ¶ 3, Ex. A.  Petitioner acknowledges receipt of

---

[10/] Respondent describes her search as follows:

> Ms. Bright had her counsel consult counsel in the Turks and Caicos Islands to determine the best way to obtain those records. Turks and Caicos counsel suggested the records could be obtained by a subpoena to MasterCard. Counsel served MasterCard with a subpoena for those records, but obtained nothing.  When following up on why the subpoena to Mastercard was unsuccessful, counsel learned that Fiserv, an American company, handled the credit card processing for Hallmark Bank and Trust and asked Ms. Bright to authorize another subpoena, to Fiserv . . . In response to that subpoena, counsel received the vast majority of the offshore credit card records sought and sent those records to the government the same day they were received.

Objections at 3-4 (citations omitted).

13

some documents requested in paragraph 1 of the Summons.  11/16/09 F&R at 4.  However, Petitioner and Judge Chang observed that there are "deficiencies with the production related to the card ending in 7763."  Id.  Because Respondent has submitted several of the requested documents, including the application from the Butterfield bank, and because Petitioner has acknowledged receipt of these documents, Judge Chang found that Respondent has purged her contempt with respect to the cards ending in 0469, 7755, and 0690.  Id. at 5.  The Court agrees with Judge Chang that contempt should be purged with respect to the cards ending in 0469, 7755, and 0690.  Because Judge Chang found that Respondent has not purged her contempt with respect to the card ending in 7763, the Court will review Judge Chang's decision to determine whether it was clearly erroneous or contrary to law.

With respect to the card ending in 7763, the most recent statement that has been produced is a credit card statement dated October 21, 2003, which indicates a negative "New Balance" of $17,098.63, and charges/debits totaling $22,744.31.  11/16/09 F&R at 4.  Respondent has not produced a final statement to document the closing date of the account or verification that no charges have been made since October 21, 2003.[11/]  Id.

---

[11/] Although Respondent has not produced documents verifying that no charges have been made since October 21, 2003, Respondent notes that she has made some effort to confirm that no further charges have been made on this card, such as following up with
(continued...)

Petitioner contends that Ms. Bright has failed to produce an explanation as to why no further statements can be produced, such as a final statement to document the closing date of the account, or produce any verification that no charges have been made since October 21, 2003.[12/]  Id.  Judge Chang was equally unpersuaded that there were no further documents relating to the card ending in 7763 as he remarked, "Ms. Bright's mere attestation that there are no further documents to produce, that

_____

[11/](...continued)
merchants listed on the credit card statements, as requested by the Court in its 9/15/09 Order.  Respondent explains:

> [W]hen Ms. Bright received the Hallmark records for the account ending in -7763 . . . [Respondent] went through all of the credit card statements she had obtained and made a list of all of those merchants with which she had transactions and sent out letters to all of the merchants she could locate, requesting copies of all charge slips on the credit cards listed in the Court's Orders. That effort did not result in the discovery of any new charges on the card ending in -7763.

Objections at 5.  Although this evidences some effort on the part Respondent to verify that no further charges have been made on the card ending in 7763 since October 21, 2003, the Court observes that this effort would only reveal charges on the card with a select group of merchants with which Respondent had already transacted.  In other words, Respondent's effort does not do enough to establish that no further charges were made on the card after October 21, 2003.

[12/] Petitioner further contends that, "[g]iven Ms. Bright's previous representation that Lindsay Barrett provided the necessary authorization for Hallmark Bank to release all requested documents regarding card 7763, Petitioner questions why Hallmark Bank cannot produce the remaining statements for this card, when it is clear that the card was not closed as of October 21, 2003."  11/16/09 F&R at 4-5.

she does not know if any charges were made in the months for which statements have not been produced, and that she does not know how to obtain the missing records, is unavailing, given the history of this case." Id. at 5.  Judge Chang emphasized the long history of this matter in which Respondent has at times produced documents she previously claimed were unavailable.  To this end, Judge Chang remarked that "[a]ny declaration from Ms. Bright claiming that she has taken all reasonable steps is therefore viewed with the utmost scrutiny." Id. at 6.  Judge Chang further observed, "it is difficult to believe that an account with a sizeable negative balance of $17,098.63 would have no further documented activity, and that no entity or individual would possess records of the same."[13/] Id. at 7.

The Court finds that Ms. Bright remains in contempt of the Summons Order with respect to credit card ending in 7763.

---

[13/] Judge Chang explained how Respondent could purge her contempt with respect to the card ending in 7763 when he stated:

> If Ms. Bright wishes to purge her contempt with respect to the card ending in 7763, she must provide concrete and credible documentation, by declaration or otherwise, from herself, Fiserv, Hallmark Bank, or other source with knowledge, that no charges were made after the October 21, 2003 statement date; if the card was closed, the date of closing; and/or provide satisfactory evidence that Hallmark Bank or another entity or individual cannot produce the remaining statements.

11/16/09 F&R at 7.

The Court agrees with Judge Chang that it is difficult to believe that there is no further documented activity, whether it be further charges or documentation of the closing of the account, on a card with a negative of balance of $17,098.63.[14/]  Given the history of this case, Ms. Bright's assertions must be carefully scrutinized, and her assertion that no further documentation exists with respect to the card ending in 7763 does not pass this

---

[14/] Respondent notes that she has purged her contempt with respect to other credit cards in which she has been unable to produce certain monthly statements, and therefore argues that she should similarly be purged with respect to the card ending 7763. Specifically, Respondent argues:

> Moreover, as previously indicated with respect to another card, the Butterfield Bank card ending in -0496, it may well be that the reason there are no additional records is that there were no additional charges.  As a representative of Butterfield Bank stated: "We are unable to provide you with credit card statements for the following months June 2003 through September 2003 as there was no activity on the card.  The system does not generate statements if there was no activity on the card."

Defendants objections at 5 n.1 (citing Exhibit K to Declaration filed August 6, 2009, Docket No. 183).  In that instance, however, Butterfield Bank was able to produce statements for October 2003, February 2004, and September 2004.  Id.  In other words, Respondent was able to produce subsequent statements that indicated the balance on the credit card, which was $145.60 in September 2004, and Butterfield Bank stated that there was no activity on the card for the months in which Respondent was unable to produce monthly billing statements.  Id.  With respect to the card ending in 7763, Respondent has produced a statement with a negative balance of $17,098.63, and has not provided the Court with any monthly statements after that date, or any documents demonstrating that the credit card account has been closed.

heightened level of scrutiny for the reasons discussed below.

Respondent's Third Supplemental declaration relies on a previously produced letter from Marisa Matthews stating that, upon review of Ms. Bright's request and subsequent records search, only statements between January 2002 and October 2003 are available.  Third Supplemental Declaration ¶ 5.  Judge Chang noted that the Court had already considered the letter from Marisa Matthews and concluded that she had not purged her contempt.  11/16/09 F&R at 5 n.1.  In any event, the letter is deficient because it does not explain why there are no statements after October 2003, and it does not assist Respondent in establishing that no charges or other transactions were made on this card after the October 21, 2003 statement.[15/]  See id.; see also Response at 3-4.

Although Respondent has taken some steps to acquire the necessary documents and these steps have led to the purgation of her contempt with respect to the other credit cards, she simply has not done enough to purge her contempt with respect to the card ending in 7763.[16/]  Respondent has refused to declare under

---

[15/] As Petitioner points out, this is "especially important given that Ms. Bright's other offshore credit cards appear to have been closed in 2006 and there has been no evidence produced establishing when this offshore credit card was closed, if ever. In addition, the last produced statement for this card clearly indicates that the account was not closed."  Response at 4.

[16/] Respondent argues that she should be purged of her
(continued...)

oath that there were no purchases or other transactions made with this card after those identified in the October 21, 2003 statement.  Response at 3.  As Judge Chang observed, Respondent must provide concrete and credible documentation, by declaration or otherwise, from herself, Fiserv, Hallmark Bank, or other source with knowledge, that no charges were made after the

---

[16]/(...continued)
contempt with respect to all of the credit cards because "there is a parallel proceeding regarding Ms. Bright's business partner in which the same records credit card records [sic] were sought, and Judge Mollway has determined that business partner, Morgan Liddell, has done all he can do to produce the records sought." Objections at 2.  The Court observes, however, that Mr. Liddell was first incarcerated for failure to produce, among other things, the documents relating to the card ending in 7763, and that a condition of Mr. Liddell's release from custody was to pay the deficiency of the $1,000 a day monetary sanction.  See United States v. Liddell, Civ. No. 07-00310 SOM-KSC, docket no. 142 (Petitioner arguing that Mr. Liddell remained in contempt with respect to the card ending in 7763); id. at docket no. 146 (Order granting Mr. Liddell's release from custody upon the payment of any deficiency of the monetary sanctions).  In addition, Mr. Liddell, who also had identical offshore cards as Ms. Bright that were issued by Hallmark Bank and purportedly issued at the direction of Colin Chaffe, submitted a declaration stating that the use of his credit cards was supposed to have been completely confidential and thus he did not keep any receipts or other documents relating to the credit card charges because he thought they could not be detected.  See id. at docket no. 139-3 ("The credit card payments were supposed to be completely confidential. I was assured there was no way the transactions could every be traced to me.  For this reason, I completely disregarded conventional record-keeping associated with business transactions."); see also Response at 5 n.3.  Although Judge Chang's decision that Respondent had not purged her contempt with respect to the card ending in 7763 was not clearly erroneous, the Court agrees, as discussed below, that Mr. Liddell's release and purgation must be considered in deciding whether to incarcerate Ms. Bright.

October 21, 2003 statement date.[17]   Id. at 7.   In the event that the card was closed, Respondent must provide the date of closing; and/or provide satisfactory evidence that Hallmark Bank or another entity or individual cannot produce the remaining statements.[18]   Id.   Judge Chang's decision to deny Respondent's Motion to Purge Contempt with respect to the card ending in 7763, therefore, was not clearly erroneous or contrary to law.

In view of the foregoing, the Court finds that Respondent has purged her contempt with respect to the cards ending in 0469, 7755, and 0690, but not with respect to the card ending in 7763.

### 2.   Paragraph 4:  Colony Mortgage and Other Loans

Paragraph 4 of the Summons required Respondent to produce, for each loan made or obtained during 2001 to the date of the Summons or that was in existence during 2001 to the date of the Summons, all documents evidencing the terms and performance, including (a) loan applications, (b) correspondence,

---

[17] Although Petitioner has informed Respondent that, if she produces the monthly billing statements for the card ending in 7763 she would not have to produce the remaining information identified in the Summons, Petitioner never informed Respondent that if she did not produce the monthly billing statements she would only have to produce the other identified items in the Summons.  See Response at 3 n.1.  Because Respondent has not produced any statements after October 21, 2003, she has not complied with paragraph 1 of the Summons.

[18] For all of the other credit cards with which Respondent has purged her contempt, she has produced documentation evidencing the closing of those accounts.

and (c) loan documents received from Colony Mortgage Company Limited dated May 22, 2002, as well as any other documents from the entity.  Bright I, 2009 U.S. Dist. LEXIS 15915, at *24.  Ms. Bright has explained that Colony Mortgage is a company operated by Colin Chaffe.  Id. at *25.  In its 9/15/09 Order, the Court recognized that Ms. Bright was in the process of attempting to come into compliance regarding the Colony Mortgage documents, but concluded that she remained in contempt insomuch as she had not taken all reasonable steps within her power to produce the documents.  9/15/09 at 12-13.

Ms. Bright now argues that she should be purged of contempt because she has signed a new promissory note, as recommended by Colin Chaffe in his letter dated June 22, 2009, and contacted Gary Shigemura, Esq. and Martin Schainbaum, Esq., who did not have in their possession responsive documents.  Motion Exs. E & F.  11/16/09 F&R at 8.  Petitioner affirms that no documents remain outstanding with respect to the Colony Mortgage.  Id.  As such, Judge Chang found that "Ms. Bright has purged her contempt with respect to paragraph 4."  Id.

In view of the foregoing, the Court finds that Respondent has purged her contempt with respect to paragraph 4 of the Summons.

### 3.    Paragraph 10:  Asia Pacific Insurance Claim

Paragraph 10 of the Summons concerns insurance claim information for payments received from Asia Pacific and requires production of (a) applications for insurance, (b) all insurance policies, (c) correspondence, (d) claims for insurance reimbursement, and (e) insurance company settlement reports. Bright I, 2009 U.S. Dist. LEXIS 15915, at *3.

Ms. Bright argues that she should be purged of contempt as to the application and correspondence.  Motion at 3-5.  At the hearing before Judge Chang, Petitioner acknowledged that this matter should be considered resolved.  11/16/09 F&R at 8; see also Second Response at 5.  Accordingly, Judge Chang found that "Ms. Bright has purged her contempt as to the Asia Pacific documents."  11/16/09 F&R at 8-9.

In view of the foregoing, the Court finds that Respondent has purged her contempt with respect to paragraph 10 of the Summons.

### 4.    Paragraph 11:  Scholarships, Grants, and Other Financial Aid

Paragraph 11 of the Summons required that Respondent produce all documentation relating to scholarships, grants, or other financial aid received or paid on behalf of her family, including payments from Mr. Chaffe, Wealthshare Foundation ("Wealthshare"), and Maestro Management, Limited ("Maestro Management").  Bright I, 2009 U.S. Dist. LEXIS 15915, at *34.  It

22

appears that both companies are operated by Mr. Chaffe.  Id.

at *19, *34-*35; see also 9/15/09 Order at 17-18.  In his 6/4/09

F&R, Judge Chang found that documents remain outstanding with

respect to this paragraph.  Bright II, 2009 U.S. Dist. LEXIS

70911, at *16-*17.  In its 9/15/09 Order, the Court found that

Respondent was still in contempt with respect to paragraph 11.

Specifically, the Court suggested that "Respondent[] should

contact Mr. Chaffe as well as Ms. Jordan to request additional

documents regarding their son's Wealthshare scholarship records."

9/15/09 Order at 19.

    Respondent argues that she complied with the Court's

request in the 9/15/09 Order as Respondent "has again continued

to communicate with Mr. Chaffe and Ms. Jordan to see if there are

any other documents . . . [and] Nicola Jordan has responded that

she, [International Society of Business Professionals ("ISBP")],

Wealthshare and Maestro Management do not have any more records."

Motion at 9.  Respondent included a letter received by Ms. Jordan

in her First Supplemental Declaration in which Ms. Jordan

handwrote "No" next to seven questions, six of which are relevant

to the Wealthshare scholarship, that Respondent had asked in the

letter.  First Supplemental Declaration Ex. E.  The six relevant

questions were (1) Do you have records regarding Wealthshare, (2)

Does ISBP have Wealthshare records, (3) Does Maestro Management

have Wealthshare records, (4) Do you know anyone besides Kalani's

school that would have the records, (5) Do you have authority to
request the records from the bank, and (6) Do you know of anyone
that might have the records?  Id.[19/]   Judge Chang, however, held
that Respondent did not comply with this Court's request as the
questions asked Ms. Jordan were overly broad and did not address
the specific type of documents at issue such as applications,
acceptance letters, and promotional materials related to the
Wealthshare scholarship.  11/16/09 F&R at 9 n.2.  The Court
agrees with Judge Chang that it is difficult to conceive how a
letter, drafted by Respondent, in which Ms. Jordan allegedly
handwrote "No" next to seven vaguely worded questions, complies
with the Court's request in its 9/15/09 Order.  The Court,
therefore, does not view Respondent's First Supplemental
Declaration as satisfying the Court's request in its 9/15/09
Order, and the Court will instead examine whether Respondent has
complied with paragraph 11 of the Summons, or demonstrated a
present inability to comply, in view of the totality of what has
been produced by Respondent.

     Respondent maintains that the documents at issue were
already produced to the government in June 2005 when she turned
over documents from Total Bank.  Objections at 11.  Judge Chang
was not persuaded that the 2005 production purges Ms. Bright of

_____

     [19/] The only other handwriting on the letter provided by Ms.
Jordan was her job title, secretary, and her name and signature
at the bottom.  First Supplemental Declaration Ex. E.

contempt with respect to paragraph 11.  11/16/09 F&R 8-9.

Specifically, Judge Chang observed that, although Petitioner may

have in its possession Total Bank records for Wealthshare and

ISBP, these documents are not presently at issue.  Id. at 9-10.

Instead, the documents requested in the summons concern

scholarships, grants, or other financial aid, included but not

limited to, "documents offering the scholarship or financial aid,

or describing the qualifications or eligibility requirements or

other criteria for selecting recipients, all scholarships or

financial aid applications, and all correspondence between you

and any family member and any person with respect to the

scholarship or financial aid."  Id. at 10; Summons ¶ 11.

The Court agrees with Judge Chang that the 2005

production does not, in and of itself, purge Ms. Bright's

contempt with respect to paragraph 11, because there are other

documents requested by paragraph 11 of the Summons that were not

produced in 2005.  As Judge Chang observed, "other than the

checks that [she] produced representing payment for the alleged

scholarships, the documents produced by Ms. Bright (Total Bank

records) are not responsive to the summons, at least with respect

to the documents currently outstanding."  11/16/09 F&R.  Thus,

the issue before the Court presently is whether Respondent has

produced the applications, acceptance letters, or promotional

materials related to the Wealthshare scholarship.

In her First Supplemental Declaration, and in her Third Supplemental Declaration, Ms. Bright states that she has no further documentation related to the Wealthshare scholarship. First Supplemental Declaration at ¶ 7; Third Supplemental Declaration at ¶ 17.  Respondent has not produced the application for the scholarship or any promotional materials relating to the scholarship.[20]  She claims these documents do not exist because Mr. Chaffe orally informed her about the scholarship and, thus, did not provide her with an application or any promotional materials.[21]  Third Supplemental Declaration at ¶ 15.  To support this assertion, Respondent included the declaration of her son, Kalani Bright ("Kalani"), in her instant Objections.  Kalani states that he did not have to fill out a formal application for the Wealthshare scholarship, that he never saw any promotional materials for that scholarship, and that he never received a letter informing him of the conditions of the scholarship. Kalani Declaration at 2.  Kalani further states that he received the scholarship after a conversation with Colin Chaffe about his

---

[20] At the hearing on the Motion before Judge Chang, Petitioner asserted that Mr. Liddell stated, in his interview, that there was an application for the Wealthshare scholarship.

[21] The Court acknowledges that Respondent has now declared, under oath, that her son did not fill out an application and that all discussions regarding the Wealthshare scholarship were oral.  See Third Supplemental Declaration at ¶ 15.  For the reasons discussed in this Order, however, the Court does not find this declaration credible.

education.  Id.

    As Judge Chang observed, Petitioner challenges the veracity of these statements and submits that Ms. Bright must provide a credible explanation why these materials do not exist. 11/16/09 F&R at 11.  "According to Petitioner, the IRS has learned that other children who received scholarships from Wealthshare completed applications."[22/]  Id.  Judge Chang agreed with Petitioner "that it is not believable that no promotional materials, application, or correspondence exist, and that Ms. Bright should offer an explanation why documents that would ordinarily be expected to exist do not exist in this case."  Id. at 11-12 n.3.  Judge Chang therefore concluded, "[u]ntil Ms. Bright produces the documents requested in the summons (i.e., applications, promotional materials, etc.), or verifies the non-existence of the same and offers a credible explanation why these documents do not exist, she will remain in contempt as to paragraph 11."  Id. at 11-12.

    Judge Chang's factual determination that Respondent or Kalani likely filled out an application for the Wealthshare

_____

    [22/] Respondent asserts that the "government's claim that some other scholarship recipients had to fill out an application does not mean that Ms. Bright's son Kalani had to do so."  Objections at 14 n.5.  The Court acknowledges that this is not conclusive proof that Kalani filled out an application as well, and recognizes that Petitioner has not presented evidence to substantiate the IRS's alleged statement, but this does cast doubt on the credibility of Respondent's and Kalani's declarations.

scholarship, and that there were likely promotional materials received by Respondent in connection with the Wealthshare scholarship, is reviewed under the clearly erroneous standard. In other words, Judge Chang's ruling must be affirmed unless, after reviewing the entire record, this Court is "left with the definite and firm conviction that a mistake has been committed." Silverman, 861 F.2d at 576-77. In view of this standard and the record of this case, the Court concludes that Respondent remains in contempt with respect to paragraph 11 of the Summons because the Court is not convinced by Respondent's assertion that no promotional materials, applications, or correspondence exist, especially because documents have been produced in this case that Respondent previously claimed were unavailable. See 11/16/09 F&R at 6.

In order for Respondent to purge her contempt with respect to paragraph 11, she must provide a credible explanation as to why the aforementioned documents do not exist. Respondent does not credibly explain how her son received a scholarship without (1) having to apply for one, (2) receiving any acceptance letter establishing the parameters of the scholarship such as qualifications or amounts,[23] or (3) any promotional materials

---

[23] At the hearing on the Motion before Judge Chang, Respondent argued that she produced a letter detailing the terms of the Wealthshare scholarship in her June 13, 2009, objections to Judge Chang's 6/4/09 F&R. See 6/13/09 Objections Ex. 12. The (continued...)

regarding the scholarship, though the Court observes that Respondent has produced her son's financial aid file with the Art Institute of California which includes payments made by Wealthshare.  <u>See</u> Response at 7.  As Petitioner aptly put it, "[s]cholarships are not just given out of thin air with no application."  <u>Id.</u> at 6.  Further, although not conclusive, the fact that the IRS has learned that other recipients of Wealthshare scholarships filled out an application to receive the scholarship calls into question the veracity of Respondent's and Kalani's declarations.

In sum, the Court is not left with a definite and firm conviction that Judge Chang erred in finding that an application, promotional materials, or acceptance letter for the Wealthshare scholarship likely existed, because Respondent has not provided the Court with a credible explanation why those documents did not exist.[24/]  Accordingly, the Court finds that Respondent has not

---

[23/] (...continued)
letter is written by Mr. Chaffe and states that Kalani has been awarded a full tuition scholarship along with rental assistance in the amount of $850 a month.  <u>Id.</u>  This letter, however, was written to the Art Institute of California for purposes of inclusion in his financial aid file, and therefore was not the type of letter Petitioner is presently seeking, namely an acceptance letter sent to Kalani explaining the parameters of the scholarship.

[24/] Respondent has not met her burden of showing that she has a present inability to comply with paragraph 11 of the Summons. The simple fact that Respondent made a trip to the office of Martin Schainbaum, an attorney who was previously involved in
(continued...)

purged her contempt with respect to paragraph 11 of the Summons.

## II.  Sanctions

Having found that Respondent remains in contempt of the Summons Order, the question becomes whether the incarceration sanction recommended by Judge Chang is appropriate.  The Court will review Judge Chang's recommendation to incarcerate Respondent de novo.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); D. Haw. Local Rule 74.2.

"'[C]ivil contempt sanctions, or those penalties designed to compel future compliance with a court order, are considered to be coercive and avoidable through obedience.'" United States v. Ayres, 166 F.3d 991, 995 (9th Cir. 1999) (quoting Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 827 (1994)); see also Koninklijke Philips v. KXD Tech., Inc., 539 F.3d 1039, 1042 (9th Cir. 2008).  To determine the size and duration of coercive sanctions, the court must consider the "'character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired.'"  Whittaker Corp. v. Execuair Corp., 953 F.2d 510, 517 (9th Cir. 1992) (quoting United States v. United Mine Workers of Am., 330 U.S. 258, 303-04

---

24/(...continued)
related matters, to review Mr. Schainbaum's files does not mean Respondent has done all that she could do to retrieve the missing documents.  See Objections at 10.

(1947)).  "One of the paradigmatic civil contempt sanctions 'is a per diem fine imposed for each day a contemnor fails to comply with an affirmative court order.'"  Ayres, 166 F.3d at 995 (quoting Bagwell, 512 U.S. at 827).  Courts also have the authority to order a contemnor's imprisonment to coerce compliance.  See Bagwell, 512 U.S. at 829.  "Generally, the minimum sanction necessary to obtain compliance is to be imposed."  Whittaker, 953 F.2d at 517; A.V. by Versace, Inc. v. Gianni Versace, S.p.A., 279 F. Supp. 2d 341, 355 (S.D.N.Y. 2003) (indicating that, where coercive fines have proven ineffective, the stronger sanction of imprisonment may be appropriate).

In addition to imposing coercive sanctions, a court may award compensatory sanctions "to compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior."  Gen. Signal Corp. v. Donallco, Inc., 787 F.2d 1376, 1380 (9th Cir. 1986).  The amount of compensatory sanctions is governed by the actual losses sustained by the moving party as a result of the contemptuous resistance.  Id.; see also United Mine Workers of Am., 330 U.S. at 304 (noting that a compensatory fine must "be based upon evidence of complainant's actual loss").

In its 9/15/09 Order, the Court concluded that daily coercive sanctions of $750, and continuing compensatory sanctions were appropriate.  9/15/09 Order at 23.  Respondent did not assert an inability to comply with the coercive or compensatory

fines in her Motion.  Judge Chang noted, however, that Respondent

asserts in her Fourth Supplemental Declaration that she is unable

to pay daily fines.[25/]  11/16/09 F&R at 13.  By way of Entering

Order, Judge Chang informed Respondent that he would not consider

this submission due to the untimeliness of the filing.[26/]  <u>Id.</u>

---

[25/] Respondent also briefly raised this argument in her
Objections by stating that "[t]his litigation has exhausted Ms.
Bright's financial resources, and as she declared under penalty
of perjury, she does not have the ability to pay a fine.  In
response to the government's claim that her financial information
was insufficiently detailed, she submitted a detailed [Fourth
Supplemental] Declaration describing her financial state and
offered to answer questions regarding her finances."  Objections
at 13.

[26/] The Entering Order reads, in relevant part, that:

> The Court will not consider this filing in ruling
> on the Motion to Purge based on the following: Ms.
> Bright's deadline to submit any filings to the
> Court regarding her Motion expired on November 5,
> 2009, the day after she filed her Third
> Supplemental Declaration.  She did not seek leave
> to file any further documents.  This is another
> example of Ms. Bright's pattern and practice of
> disregard of the applicable deadlines and rules.
> The Court has reminded and chastised Ms. Bright on
> countless occasions throughout the course of these
> proceedings about her dilatory actions, yet she
> continues to violate deadlines, even with legal
> representation.  This late filing is flagrant and
> particularly inexcusable because Ms. Bright has
> known, since August 11, 2009, that the daily
> monetary fine would remain in effect until she
> provided concrete evidence of an inability to pay.
> She has had ample opportunity to gather and
> provide the Court with information concerning her
> financial situation.  In was only in her Third
> Supplemental Declaration that she asserted an
> inability to pay.  It is unreasonable for Ms.
> Bright to expect the Court to review and consider
> (continued...)

Even if he were to have considered the Fourth Supplemental Declaration, however, Judge Chang observed that the documents submitted by Respondent "fall well short of establishing a true picture of Ms. Bright's financial situation." <u>Id.</u> at n.4.   Judge Chang came to this conclusion because "the submission lacks any evidence of Ms. Bright's income," which would be critical to determine how Respondent paid her debts.   <u>Id.</u>

The Court concurs with Judge Chang that the Fourth Supplemental Declaration was untimely filed and thus need not be considered by the Court.   The Court further agrees with Judge Chang that, even if the Court were to consider the Fourth Supplemental Declaration, its position would be unchanged because the declaration is incomplete as it lacks all of the relevant information necessary to determine whether Respondent has an inability to comply.   In order to demonstrate a present inability to comply, Respondent must disclose all sources of her income, including payments by any third party for any reason.[27/]   The

---

[26/](...continued)
    this late-filed evidence the business day before
    the hearing, particularly where, as here, she has
    had 3 months to submit the same.  As the Court has
    noted in the past, this untimely filing also
    prejudices the Government, which will not have
    reasonable time to review the filing and respond
    in advance of the hearing.

Doc. No. 219.

[27/] Petitioner asserts that Respondent has failed to disclose
                                                    (continued...)

Court therefore holds that a compensatory sanction in favor of the United States and a coercive daily fine of $750 per day remains appropriate and continues to be in effect until Respondent purges her contempt.

In the 8/11/09 F&R, Judge Chang recommended that Respondent be incarcerated until she purges her contempt. Again in the 11/16/09 F&R, after the Court declined to incarcerate Respondent in its 9/15/09 Order, Judge Chang recommended that Respondent be incarcerated until she purges her contempt. Judge Chang observed that the imposition of fines and threat of incarceration has been insufficient to induce Respondent to produce the documents. 8/11/09 F&R at 10; 11/16/09 F&R at 16. Judge Chang, therefore, believed that "Ms. Bright will not truly understand the seriousness and urgency of resolving this matter unless she is incarcerated." 11/16/09 F&R at 16.

In its 9/15/09 Order, the Court shared Judge Chang's "frustration with the dilatory piecemeal responses by Respondent[] in an apparent endeavor to delay this proceeding as long as possible." 9/15/09 Order at 23. Nevertheless, because Respondent had made some progress towards achieving compliance, the Court declined to adopt Judge's Chang recommendation of

---

[27]/(...continued)
certain third party payments. For example, Petitioner claims that it "has learned that at least through 2008, Colony Mortgage and/or Asia Pacific was paying her legal fees." Response 8-9.

incarceration at that time.[28]   Id. at 24.

The Court shall review Judge Chang's recommendation to incarcerate Ms. Bright de novo.  Because Mr. Liddell has been purged with respect to the card ending in 7763 and released from custody, and because the Court finds that Respondent has taken additional steps since the Court's 9/15/09 Order to produce the requested documents, the Court does not believe that incarceration is appropriate at this time.

The Court observes that Mr. Liddell has been released from incarceration after having purged his contempt with respect to the card ending in 7763, even though he has not produced any more documents than Respondent with respect to that card.[29] United States v. Liddell, Civil No. 07-00310 SOM-KSC, docket no. 146.  Although the Court has concluded that Judge Chang's determination that Respondent remains in contempt with respect to the card ending in 7763 was not clearly erroneous, the Court does not believe it would be appropriate to incarcerate Respondent for failure to purge her contempt with respect to the card ending in

_____

[28] The Court cautioned, however, that "[t]he United States may move for an order of incarceration if Ms. Bright does not achieve compliance or establish a present inability to comply within twenty days from [September 15, 2009]."  9/15/09 Order at 24.

[29] Judge Chang may have been unaware that Mr. Liddell had been purged with respect to the card ending in 7763 and released from custody as this information was not provided in the papers or hearing before Judge Chang.

7763, when Mr. Liddell has been purged with respect to this card in a parallel proceeding.  See analogous policy under 18 U.S.C. § 3553(a)(6) (noting that courts should "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.")[30/]  Although Respondent is also in contempt with respect to the Wealthshare scholarship, the Court does not believe it is necessary to incarcerate Respondent for failure to produce an application, acceptance letter, or promotional materials with respect to the Wealthshare scholarship, because Respondent has produced her son's entire financial aid file, which includes the payments made by Wealthshare to the Art Institute of California.

Further, Respondent has taken additional steps to acquire the necessary documents since the Court's 9/15/09 Order. Since that Order, Respondent has come into compliance with respect to (1) the credit cards ending in 7755, 0496, 0690, (2) the Asia Pacific documents, and (3) the Colony Mortgage documents.  In addition, Respondent has attempted to come into compliance with the paragraphs for which she remains in contempt by issuing a subpoena on Fiserv to obtain the credit card statements for the card ending in 7763 and by submitting declarations under oath (by both Respondent and Kalani) that

---

[30/] The Court recognizes that Sentencing Guidelines are only advisory.  See United States v. Booker, 543 U.S. 220 (2005).

neither Respondent nor Kalani filled out a formal application for the Wealthshare scholarship.  Although, for the reasons discussed above, these efforts have not led to Respondent's purgation with respect to paragraphs 1 and 11, these submissions demonstrate an attempt by Respondent to come into compliance with the Summons Order.  In other words, the coercive daily fines and compensatory sanctions appear to be motivating Respondent to produce the required documents.

The Court has issued clear instructions as to how Respondent may purge her contempt with respect to the remaining documents.  As to the card ending in 7763, Respondent must provide concrete and credible documentation, by declaration or otherwise, from herself, Fiserv, Hallmark Bank, or other source with knowledge, that no charges were made after the October 21, 2003 statement date; if the card was closed, the date of closing; and/or provide satisfactory evidence that Hallmark Bank or another entity or individual cannot produce the remaining statements.  As to the Wealthshare scholarship, Respondent must produce promotional materials, applications, or correspondence related to the Wealthshare scholarship, or provide a <u>credible</u> explanation why these documents do not exist.  Until Respondent complies with these instructions, coercive and compensatory sanctions will continue to be imposed.

Accordingly, the Court rejects Judge Chang's Findings

and Recommendation to incarcerate Respondent Cherie Bright.

## CONCLUSION

For the foregoing reasons and for the reasons set forth in the Magistrate's 11/16/09 F&R, the Court affirms Judge Chang's order granting in part, and denying in part, Respondent Cherie Bright's motion to purge contempt.  However, the Court rejects Judge Chang's Findings and Recommendation to incarcerate Respondent Cherie Bright.

IT IS SO ORDERED.

Dated:  Honolulu, Hawai'i, December 22, 2009.



_____
Alan C. Kay
Sr. United States District Judge


United States v. Bright, Civ. No. 07-00311 ACK-KSC:  Order Affirming the Magistrate Judge's Order Granting in Part and Denying in Part Respondent Cherie Bright's Motion to Purge Contempt and Rejecting the Magistrate Judge's Findings and Recommendation to Incarcerate Respondent Cherie Bright